**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **SARA SAIDMAN and JESSICA CHEATHAM,** | **CASE NO. 4:20-CV-02193** |
| *Plaintiffs* | |
| **v.** | |
| **SCHLUMBERGER TECH. CORP.,** | |
| *Defendant* | |

**DEFENDANT SCHLUMBERGER TECH. CORP'S BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................. 1

II.  NATURE AND STAGE OF PROCEEDING ..................................................... 2

III. STATEMENT OF THE ISSUES........................................................................ 2

IV.  SUMMARY OF THE ARGUMENT ................................................................ 5

V.   FIRST AMENDED COMPLAINT ALLEGATIONS ........................................ 7

VI.  ADMINISTRATIVE PROCEEDINGS ............................................................. 9

VII. LEGAL ARGUMENT ....................................................................................... 11

   A.  Plaintiffs Did Not Meet the Mandatory Requirement to Timely
       Submit the Class Allegations (And the Legal Theories They Are Based On)
       To The EEOC. ...................................................................................... 11

       1. Saidman's 2017 EEOC Charge Did Not Exhaust the First Amended
          Complaint's Class Claims. .............................................................. 13

       2. Saidman's Untimely 2018 Letter Did Not Exhaust the Class Claims Because
          It Did Not Relate Back to the 2017 Charge. ..................................... 14

       3. Cheatham and Putative Class Members Cannot "Piggyback" on Saidman's
          2017 Charge. ................................................................................... 17

   B.  Plaintiffs Did Not Exhaust A Disparate Impact Claim. ............................. 19

   C.  The First Amended Complaint Does Not Plausibly Allege Facts to Maintain A
       Rule 23(b)(3) Class Action. ..................................................................... 20

       1. Plaintiffs Cannot Establish Rule 23(a)(2) Commonality. ...................... 21

          a  Plaintiffs' Count Two Hostile Environment Claim Presents No Common
             Questions. ................................................................................... 22

          b. Plaintiffs' Count One Discrimination Claim Presents No Common
             Questions. ................................................................................... 28

          c. Plaintiffs' "Policies and Procedures" Allegations Present No Common
             Questions. ................................................................................... 30

       2. Plaintiffs Cannot Establish Rule 23(a)(3) Typicality. ........................... 30

       3. Plaintiffs Cannot Establish Rule 23(b)(3) Predominance. ..................... 32

   D.  The First Amended Complaint's Defects Cannot Be Cured by Discovery...... 34

VIII. CONCLUSION ................................................................................................. 35

# TABLE OF AUTHORITIES

## CASES

*Adams v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.*, No. 98-400,
2019 WL 3240028 (M.D. La. July 18, 2019) ................................................ 18
*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591, 609 (1997) ................................................................. 4, 32, 33
*Altman v. Key Energy Servs.*, LLC, No. 11-00495,
2012 WL 4033336 (E.D. Tex. Sept. 12, 2012) ............................................ 15
*Anson v. Univ. of Texas Health Sci. Ctr. at Houston*,
962 F.2d 539 (5th Cir. 1992) ............................................................. 13, 14
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 4, 30
*Avila v. Mortgage Elec. Registration Sys., Inc.*, No. 12-830,
2012 WL 6055298 (S.D. Tex. Dec. 5, 2012) ................................................ 4
*Bettcher v. Brown Sch., Inc.*,
262 F.3d 492 (5th Cir. 2001) ............................................................. 13, 18
*Benavides v. Chicago Title Ins. Co.*,
636 F.3d 699 (5th Cir. 2011) ................................................................ 33
*Blakely v. Nestle Waters N.A.*, No 14-1393,
2015 WL 1737816 (E.D. La 2015) ........................................................... 12
*Bolden v. Walsh Construction Co.*,
688 F.3d 893 (7th Cir. 2012) ................................................................ 26
*Carter v. Target Co.*,
541 Fed.Appx. 413 (5th Cir. 2013) ......................................................... 15
*Cinel v. Connick*,
15 F.3d 1338 (5th Cir. 1994) ................................................................. 3
*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ................................................................. 3
*Cooper v. Fed. Reserve Bank of Richmond*,
467 U.S. 867 (1984) ............................................................................ 16
*Davis v. Dallas Indep. Sch. Dist.*,
448 Fed. App'x. 485 (5th Cir.  2011) ...................................................... 28
*Davis v. Fort Bend Cty.*,
139 S. Ct. 1843 (2019) ........................................................................ 11
*Davis v. TX Health & Human Servs. Comm'n*,
761 Fed. App'x. 451 (5th Cir. 2019) ........................................................ 5
*Dixon v. Moore Wallace, Inc.*,
236 Fed. App'x. 936 (5th Cir. 2007) ....................................................... 12
*E.E.O.C. v. IPS Indus., Inc.*,
899 F.Supp. 2d 507 (N.D. Miss. 2012) ..................................................... 18
*E.E.O.C. v. Shell Oil Co.*,
466 U.S. 54 (1984) ............................................................................ 15
*Edelman v. Lynchburg Coll.*,
535 U.S. 106 (2002) ........................................................................... 14
*Fairchild v. Forma Scientific, Inc.*,

147 F.3d 567 (7th Cir. 1998) ................................................................. 15
*Fellows v. Universal Rest.*,
701 F.2d 447 (5th Cir. 1983) ................................................................. 14
*Gonzalez v. Tellepsen Indus. Corp.*, No. 17-732,
2017 WL 2608839 (S.D. Tex. May 31, 2017) (Milloy, M.J.), *adopted by*
2017 WL 2610515 (S.D. Tex. June 15, 2017)................................................. 3
*Goodwin v. Conagra Poultry Co.*, No. 03-1187,
2007 WL 1434905 (W.D. Ark. May 15, 2007)............................................... 24
*Gordon v. Peters*,
489 F.Supp.2d 729 (S.D. Tex.2007) ........................................................ 19
*Hagler v. True Mfg., Co., Inc.*, No. 12-328,
2012 WL 1025672 (E.D. Mo. Mar. 26, 2012)............................................... 28
*Hague v. Univ. of Texas Health Sci. Ctr. at San Antonio*,
560 Fed. App'x. 328 (5th Cir. 2014) ........................................................ 19
*Harris v. Honda*,
213 Fed. App'x. 258 (5th Cir. 2006) ........................................................ 12
*Henry v. Parkwest Staffing Servs., Inc.*, No. 11-2417,
2012 WL 950213 (S.D. Tex. Mar. 20, 2012)............................................... 15
*Hernandez v. Univ. of Texas-Pan Am.*, No. 17-197,
2017 WL 6444957 (S.D. Tex. Aug. 10, 2017)............................................... 3
*Hornsby v. Conoco, Inc.*,
777 F.2d 243 (5th Cir. 1985) ................................................................. 17
*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
892 F.3d 719 (5th Cir. 2018) ..............................................................4, 20
*Jamie S. v. Milwaukee Pub. Sch.*,
668 F.3d 481 (7th Cir. 2012) ................................................................. 25
*Jones v. BRG Sports, Inc.*,
2019 WL 3554374 (N.D. Ill. Aug. 1, 2019). ............................................... 35
*King v. Life Sch.*,
809 F.Supp. 2d 572 (N.D. Tex. 2011) ........................................................ 3
*Kloos v. Carter-Day Co.*,
799 F.2d 397 (8th Cir. 1986) ............................................................13, 14
*Kohen v. Pacific Inv. Mgmt. Co.* LLC,
571 F.3d 672 (7th Cir. 2009) ................................................................. 21
*Kojin v. Barton Protective Servs.*,
339 F. Supp. 2d 923 (S.D. Tex. 2004) ...................................................... 3
*Konnethu v. Harris Cty. Hosp. Dist.*,
669 F.Supp. 2d 781 (S.D. Tex.2009) ........................................................ 12
*Lamarr-Arruz v. CVS Pharmacy, Inc.*, No. 15-04261,
2017 WL 4277188, at *5 (S.D.N.Y. Sept. 26, 2017)..................................... 26
*Ladik v. Wal-Mart Stores, Inc.*,
291 F.R.D. 263 (W.D. Wis. 2013)............................................................. 26
*Manning v. Chevron Chemical Co.*,
332 F.3d 874 (5th Cir. 2003) ..........................................................12, 15, 17
*McClain v. Lufkin Indus., Inc.*,
519 F.3d 264 (5th Cir. 2008) ..........................................................12, 13, 19
*McCaster v. Darden Restaurants, Inc.*,
845 F.3d 794 (7th Cir. 2017) ...........................................................7, 29

*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) ................................................................ 28

*Messner v. Northshore Univ. Health System*,
   669 F.3d 802, 815 (7th Cir. 2012) ....................................................... 32

*Morgan v. FedEx Corp.*, No. 09-04217,
   2009 WL 10736798 (N.D. Cal. 2009) .................................................... 17

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................ 21

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) .............................................................................. 11

*Owens v. Dallas Cty. Cmty. Coll. Dist.*,
   793 Fed. App'x. 298 (5th Cir. 2019) ..................................................... 14

*Parker v. Benteler Steel Tube Mfg. Corp.*, 19-30785,
   2020 WL 2838573 (5th Cir. May 29, 2020) ........................................... 11

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ................................................................ 35

*Price v. Sw. Bell Tel. Co.*,
   687 F.2d 74 (5th Cir. 1982) .................................................................. 12

*Reedy v. Phillips 66 Co.*, No. 17-2914,
   2018 WL 1413087 (S.D. Tex. Mar. 20, 2018) .......................................... 4

*Richardson v. Bledsoe*, 829 F.3d 273 (3d Cir. 2016) ...................................... 35

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372, 384 (3d Cir.2013) .......................................................... 28

*Sanchez v. Standard Brands, Inc.*,
   431 F.2d 455 (5th Cir. 1970) ................................................................ 15

*Sellars v. CRST Expedited, Inc.*,
   359 F. Supp.3d 633 (N.D. Iowa 2019),
   *Rule 23(f) appeal denied* (8th Cir. 2019) ...................................23, 24, 33

*Shaw v. Helix Energy Sols. Grp., Inc.*, No. 18-3200,
   2019 WL 3557843 (S.D. Tex. July 12, 2019)..........................................4, 30

*Smith v. City of Unadilla*, No. 05-111 (WDO),
   2006 WL 1935088 (M.D. Ga. July 11, 2006) ......................................... 31

*Skidmore v. Precision Printing & Pkg., Inc.*,
   188 F.3d 606 (5th Cir.1999) ................................................................. 27

*Stewart v. Miss. Transp. Comm'n*,
   586 F.3d 321 (5th Cir. 2009) ................................................................ 22

*Stone v. First Union Corp.*,
   203 F.R.D. 532, 546 (S.D. Fla.2001) ..................................................... 31

*Stone v. Louisiana Dep't of Revenue*,
   590 Fed. App'x. 332 (5th Cir. 2014) ..................................................... 13

*Taylor v. Books A Million, Inc.*,
   296 F.3d 376 (5th Cir. 2002) ................................................................ 11

*Thiessen v. Gen. Elec. Capital Corp.*,
   267 F.3d 1095 (10th Cir. 2001) ............................................................ 16

*Thomas v. Texas Dept. of Criminal Justice*,
   220 F.3d 389 (5th Cir. 2000) ................................................................ 12

*Toval v. Children's Hosp.*, No. 13-5848,
   2014 WL 5465830 (E.D. La. Oct. 28, 2014) .......................................... 17

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ......................................................................... 33
*Van v. Ford Motor Co.*,
  332 F.R.D. 249 (N.D. Ill. 2019).................................................... 7, 25, 26
*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ............................................................ 31
*Vore v. Colonial Manor Nursing Ctr.*, No. 03-1660,
  2004 WL 2348229, at *4 (N.D. Tex. Oct. 19, 2004) ..................................... 15
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................... passim
*Wiggins v. Golden Corral Corp.*,
  802 Fed. App'x. 812 (5th Cir. Feb. 03, 2020) ............................................ 11
*Williams v. Waffle House*, No. 10-357-ME,
  2010 WL 4512819 (M.D. La. Nov. 2, 2010) ................................................ 12
*Wright v. Family Dollar, Inc.*,
  2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ............................................... 34

**STATUTES**

42 U.S.C. § 2000e-5(e) ............................................................................ 11

**REGULATIONS**

29 C.F.R. § 1601.12(b) ............................................................................ 14

## I.    INTRODUCTION

Defendant Schlumberger Technology Corporation ("STC") files this brief in support of its Rule 12(b)(6) motion for partial dismissal of the First Amended Complaint in this Title VII employment discrimination case, specifically the putative Rule 23(b)(3) damages class claims asserted by Plaintiffs Sara Saidman and Jessica Cheatham, Saidman's individual claim of disparate impact discrimination, and Cheatham's individual claims.

Despite the overwhelming number of individual issues presented by their own separate claims, Saidman and Cheatham seek to represent a nationwide Rule 23(b)(3) class of all female STC employees who experienced harassment or discrimination of any kind at any of several hundred oil rigs in North America.  The number of individual issues involved in such claims is staggering: different actors, conduct, severity, pervasiveness, impact, adverse action, coworkers, managers, reporting, knowledge on the part of managers, company response, etc. – but Plaintiffs nonetheless insist that these are cookie cutter claims, which should be resolved collectively.  Even after amendment, Plaintiffs cannot establish Rule 23(a)'s commonality and typicality prerequisites, and even if they could, they cannot establish Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members.  Moreover, Plaintiffs have not exhausted Title VII's mandatory administrative remedies for the class claims, *i.e.*, filing a charge of discrimination with the EEOC and receiving a right-to-sue.  Saidman has not exhausted an individual claim of disparate impact discrimination, and Cheatham has not exhausted her individual claims.

The Court's authority to evaluate the adequacy of class allegations at the pleading stage is well settled, particularly where discovery will not cure the complaint's

defects. Application of that authority to the First Amended Complaint's allegations establishes that STC's motion is due to be granted.

## II.    NATURE AND STAGE OF PROCEEDING

Saidman filed this action on June 23, 2020, claiming that she and a putative class of current and former employees were subjected to sex discrimination (Count One) and harassment (Count Two), and that she was individually retaliated against for complaining about harassment (Count Three), and terminated because of her sex (Count Four), all in violation of Title VII of the Civil Rights Act of 1964. (Doc. 1.)

STC filed a Rule 12(b)(6) motion to dismiss. In lieu of a response, Plaintiffs' counsel filed the First Amended Complaint on September 1, 2020, ("FAC") which attempted to bolster Saidman's allegations to avoid dismissal and added Cheatham as a second plaintiff. (Doc. 16.)

The Court entered a scheduling order on September 28, 2020, which established a discovery completion date of July 31, 2021, and a docket call on October 4, 2021. (Doc. 27.)

## III.    STATEMENT OF THE ISSUES

The putative class claims of sex discrimination (Count One) and hostile work environment (Count Two), Saidman's individual claim of disparate impact discrimination (Count One),  and Cheatham's individual claims (Counts One – Four) are due to be dismissed for failure to exhaust mandatory administrative remedies. The class claims are further due to be dismissed because they are legally insufficient.

*First*, Plaintiffs did not *timely* submit the class allegations (and the legal theories they are based on) to the EEOC, which is a mandatory requirement before filing suit on Title VII claims. Saidman filed a timely EEOC charge for her own

individual claims but did not timely include class allegations.[1] Her failure to exhaust the mandatory administrative remedies precludes the class claims.

Cheatham has not received an EEOC right-to-sue, and therefore has not exhausted her own claims. Neither she nor the absent class members can "piggyback" on Saidman's right-to-sue.

*Standard of review*: "[T]he motion to dismiss for failure to exhaust is properly evaluated under Rule 12(b)(6)." *Kojin v. Barton Protective Servs.*, 339 F. Supp. 2d 923, 925 (S.D. Tex. 2004); *Gonzalez v. Tellepsen Indus. Corp.*, No. 17-732, 2017 WL 2608839, at *4 (S.D. Tex. May 31, 2017) (Milloy, M.J.), *adopted by* 2017 WL 2610515 (S.D. Tex. June 15, 2017) (Gilmore, J.) (same). When evaluating a Rule 12(b)(6) motion, the court looks at the complaint and the EEOC charge to determine whether plaintiffs have exhausted their administrative claims. *Gonzalez* at *4*; see also Kojin*, 339 F. Supp. 2d 923 at 926 (When the defendant attaches documents that are referred to in the plaintiff's complaint and central to her claim, "the defendant merely assists . . . the court in making the elementary determination of whether a claim has been stated."); (*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) (same).

*Second*, the FAC does not plausibly allege facts sufficient to maintain a Rule 23(b)(3) damages class action. Plaintiffs cannot satisfy the threshold prerequisites in Rule 23(a)(2) that common questions of law or fact exist that are capable of class-

---

[1]     The Court may consider Saidman's 2017 EEOC charge, STC's EEOC response, Saidman's EEOC rebuttal, Saidman's 2018 Letter/Declaration and Cheatham's 2020 EEOC charge, even though Plaintiffs did not attach these documents to the FAC. "Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested." *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)); *see also Hernandez v. Univ. of Texas-Pan Am.*, No. 17-197, 2017 WL 6444957, at *3 (S.D. Tex. Aug. 10, 2017).

wide determination, and Rule 23(a)(3)  that Plaintiffs' claims are typical of the putative absent class members. Even if Plaintiffs could cross that threshold,  they cannot establish the "far more demanding" Rule 23(b)(3) requirement that questions of law or fact common to class members *predominate* over any questions affecting only individual members, creating a class that is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

*Standard of review:* "[D]istrict courts may evaluate the sufficiency of class allegations at the pleading stage.'" *Shaw v. Helix Energy Sols. Grp., Inc.,* No. 18-3200, 2019 WL 3557843, at *3 (S.D. Tex. July 12, 2019); *Reedy v. Phillips 66 Co.*, No. 17-2914, 2018 WL 1413087, at *12 (S.D. Tex. Mar. 20, 2018) (same). Pleadings must meet the *Twombly/Iqbal* plausibility standard: "[f]irst, the Court identifies conclusory allegations and proceeds to disregard them, for they are 'not entitled to the assumption of truth' [and] [s]econd, the Court 'consider[s] the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief.'" *Avila v. Mortgage Elec. Registration Sys., Inc.*, No. 12-830, 2012 WL 6055298, at *2 (S.D. Tex. Dec. 5, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Pleading on "information and belief" requires a factual underpinning that makes belief plausible. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) ("`[t]he *Twombly* plausibility standard … does not prevent a plaintiff from 'pleading facts alleged upon information and belief' … where the belief is based on factual information that makes the inference of culpability plausible.'"). At the pleadings stage, while "a plaintiff need not submit evidence to establish the *prima facie* case for discrimination, she must plead sufficient

facts on all of the ultimate elements of the claim to make her case plausible." *Davis*

*v. TX Health & Human Servs. Comm'n*, 761 Fed. App'x. 451, 454 (5th Cir. 2019).

## IV.    SUMMARY OF THE ARGUMENT

In this Title VII employment discrimination case*,* STC seeks dismissal of

Cheatham's claims in Counts One, Two, Three and Four and the putative class claims

in Counts One and Two.

**A.    Administrative Exhaustion**: Title VII requires that a plaintiff exhaust

mandatory administrative remedies before filing suit, specifically, that she file a

charge of discrimination with the EEOC within 300 days of the last act of

discrimination, and receive a statutory notice of right to sue. Saidman's timely 2017

EEOC charge alleged that she was sexually harassed on Nomac rig 55, where she

was the only female, that she complained about the harassment, and that she was

suspended and terminated, either because of her sex or as retaliation. The EEOC

investigated that charge, including receiving a response from STC, and a rebuttal

from Saidman, and ultimately issued a notice of right to sue. Cheatham filed an EEOC

charge on August 27, 2020, which the EEOC has not investigated, or issued a right

to sue; she has not exhausted her charge but claims she can "piggyback" on

Saidman's right to sue.

For purposes of this argument, STC assumes that Saidman's 2017 Charge

exhausted her individual claims and any sufficiently "like or related to" her claims

that they could "reasonably be expected to grow out of the EEOC's investigation of

her charge." But the FAC includes putative class claims which are not "like or related

to" the claims in Saidman's 2017 Charge. The EEOC's investigation of Saidman's

individual claims tied to Nomac rig 55 did not lead to an investigation of other

potential claims by other employees on other rigs, with other managers, nor would it

5

have been reasonable to expect that it would.  Saidman did not exhaust the class claims with her own EEOC filings. And, under Fifth Circuit precedent, Cheatham and the putative absent class members cannot "piggyback" on Saidman's 2017 Charge. For these reasons, the class claims, and Cheatham's individual claims should be dismissed.

Plaintiffs may argue that Saidman's lawyer exhausted the class claims with a June 27, 2018 letter to the EEOC ("2018 Letter"), submitted well past the 300-day charge filing deadline. But under EEOC regulations and 5th Circuit authority, the 2018 Letter did not amend or relate back to the date of the 2017 Charge, and therefore did not exhaust the class claims.

Plaintiffs did not include disparate impact allegations in any submission to the EEOC, and the disparate impact claim in Count One should be dismissed for the individual Plaintiffs and the class for that separate and independent reason.

**B.    The First Amended Complaint does not plausibly allege facts sufficient to maintain a Rule 23 class action.**   Rule 23(a)(2) and (3) require Plaintiffs to establish both "commonality" and "typicality," *i.e.*, that there are "questions of law or fact common to the class," and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(b)(3) requires that the questions of law or fact common to class members predominate over any questions affecting only individual members. Plaintiffs cannot satisfy the criteria in Rule 23(a)(2) and (3) and 23(b)(3) to avoid dismissal.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court advised that class claims "must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor" "of such a nature that it is capable of classwide resolution—which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Plaintiffs' conclusory and "information and belief" allegations of commonality and typicality do not satisfy the *Twombly* plausibility standard. But even taken at face value, they do not meet the criteria established in *Dukes* and subsequent cases.

Plaintiffs' proposed class includes *any* female employee who experienced *any* harassment, or adverse employment action or effect, of *any* kind, from *any* cause, by *any* decisionmaker or harasser, at *any* rig where STC had personnel, in *any* location, in *any* county, in *any* state in the country. For commonality, Plaintiffs plead that STC has engaged in sex discrimination and facilitated a hostile work environment. For typicality, they plead that they, like the putative class members, "are women who were employed by Schlumberger during the liability period," that they and the class members "share the same essential characteristics," and that STC's "acts and omissions" "applied universally within the class."  Following *Dukes*, courts have routinely denied class treatment on facts like these, where the proposed class and claims share only superficial characteristics, such as class members having the same employer and alleging a violation of the same law. *Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019); *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 801 (7th Cir. 2017). The class claims should be dismissed for failure to plausibly allege facts supporting Rule 23(a)'s prerequisites.  Moreover, even if Rule 23(a)'s commonality requirement is satisfied, Plaintiffs cannot meet the more demanding predominance criterion in Rule 23(b)(3).

## V.    FIRST AMENDED COMPLAINT ALLEGATIONS

Saidman worked for STC from May 2016 until May 2017 as a Measurements While Drilling Field Engineer ("MWD") at various oils rigs in remote locations in Texas,

New Mexico, North Dakota, and Oklahoma. (Doc. 16 at ¶¶ 831.) Saidman alleges instances of harassing comments and conduct throughout her employment, but her individual claims of sexual harassment arise primarily from her work during March and April 2017 on Nomac 55 rig in Texas, where she was the only woman. (*Id.* ¶¶ 8, 53—55.) Saidman alleged that she was sexually harassed by Aguilar, that other male employees joined in his harassing comments and conduct, that STC failed to act when she complained, and instead "tried to push her out." (*Id.* ¶¶ 53–77; Ex. A, ¶ 41.) Her claims of retaliatory and discriminatory suspension and termination flow from the alleged harassment on Nomac 55. (Doc. 16 at ¶¶ 85, 92.) Saidman alleged she was suspended after a breathalyzer test established her blood alcohol level at .015%, and after a contemporaneous investigation showed that she violated STC's policy that trips in Company vehicles must be tracked on the computerized driving monitor. (Ex. A, ¶ 46.) After her return from suspension, Saidman's employment was terminated on May 12, 2017.   (Doc. 16 at ¶ 90.) Claiming that the positive alcohol test was caused by mouthwash, but tacitly admitting that she violated the driving policy, Saidman alleged that her suspension and termination were pretextual.

Cheatham began working for STC in December 2017, about seven months after Saidman's employment ended. Cheatham was hired first as a Field Engineer Trainee, then Senior Field Engineer, ending as Directional Driller. She worked at various oil rigs in New Mexico and Texas, including one month on the H&P 636 Rig in New Mexico where Saidman had worked a few years earlier. Cheatham also alleges instances of harassing comments and conduct throughout her employment, but her individual claims of sexual harassment arise primarily from her work on two rigs in Texas, H&P Rig 532 (December 2017 to January 2018), where she alleges sexual harassment by Lead Hand Kenny Fusilier, and X-48 Chevron Rig (July to September

8

2019), where she alleges Directional Driller Steven Laroux said she "would not learn anything on this rig" and Directional Driller Brian Guilbeau called her "illiterate." (Doc. 16 at ¶¶ 98-100, 116-120.) Cheatham alleges she reported Fusilier, and STC mishandled and ignored her complaint. (*Id.* ¶¶ 101-104.) She alleges she reported Laroux and Guilbeau in September 2019, and that afterwards she was "blacklisted" because STC only offered her work on a rig in Alaska in November 2019. (*Id.* ¶¶ 124-25, 128, 131.) After she turned down the Alaska rig, she felt that it was "clear" that STC "was not going to allow her to perform her job" and resigned on January 2, 2020. (*Id.* ¶¶ 133-134.)

Otherwise, Plaintiffs allege on information and belief (drawn from anonymous internet posts) that STC maintained a "good ole boys club" culture (*compare* Doc. 16 ¶¶ 16-22 and Ex. D, Exhibits 24 and 25) and that STC's policies and procedures "were implemented in an intentionally discriminatory manner" which created a "hostile working environment for women who work in a field position" nationwide. (Doc. 16 at ¶ 141.)

## VI.   ADMINISTRATIVE PROCEEDINGS

Saidman filed her own EEOC charge 223 days after her termination, on December 21, 2017, (the month Cheatham started at STC), alleging discrimination specifically against her, individually, on the bases of sex, religion, and retaliation, describing her experiences on STC rigs outside of Midland, Texas. (Ex. A, "2017 Charge"). Saidman claimed sexual harassment and retaliation by Aguilar on Nomac 55 rig between March 2 and April 1, 2017. She made no allegations about any other female employee, except in the context of comparison for her retaliation claim. (Ex. A, ¶ 47.)

At the EEOC's direction, STC submitted a response on March 30, 2018. (Ex. B (exhibits to letter omitted)). Saidman's counsel submitted a rebuttal on May 16, 2018. (Ex. C. (exhibits to letter omitted)).

On June 27, 2018, (411 days after her termination, and well past the 300-day charge filing deadline), Saidman's attorneys submitted a letter, styled as a supplement to Saidman's individual charge, that the discriminatory treatment she experienced at Schlumberger did not occur "in a vacuum" but instead was part of a "continuing pattern and practice of discrimination against female employees." (Ex. D., 2018 Letter).[2]   On March 26, 2019, Saidman attempted to submit two additional declarations in support of her class allegations.  (Ex. E (exhibits to the letter omitted)).

The EEOC did not amend Saidman's formal 2017 Charge to incorporate the material from the 2018 Letter or from the March 26, 2019 submission.  Moreover, the EEOC never sent either letter to STC, or requested a response.

On March 24, 2020, the EEOC advised Saidman that it would be dismissing her charge with a no-cause finding because its investigation had established that she "was terminated for non-discriminatory reasons" and because "the EEOC does not believe that additional investigation would result in [it] finding a violation." (Ex. F). That letter apparently prompted Saidman's lawyer to request a dismissal without determination, because two days later the EEOC issued a "Notice of Right to Sue (Issued on Request)" on the 2017 Charge, stating that "The EEOC is terminating its

---

[2]     Saidman included her declaration and two exhibits, together a compilation of seventeen (17) anonymous postings to various online platforms between 2011 and 2018, starting five years before Saidman's employment began, and continuing one year after it ended.  Notably, none of those posts mentioned Aguilar or Nomac 55.  (Ex. D, Exhibits 24 and 25.)

processing of this charge." (Ex. G). The EEOC's letter did not address Saidman's pattern and practice allegations; likewise, the subsequent notice of suit rights did not expressly authorize suit on behalf of a class. (Ex. F & G).

Plaintiffs' counsel filed Cheatham's EEOC charge on August 27, 2020. (Ex. H). The EEOC has never issued a right-to-sue to Cheatham, but she claims she can "piggyback" on Saidman's charge. (Doc. 16 at ¶138.)

## VII.   LEGAL ARGUMENT

STC moves for partial dismissal of the FAC; specifically, Saidman's claim of disparate impact discrimination, Cheatham's individual claims, and the putative Rule 23(b)(3) class claims of Title VII sex harassment and sex discrimination.

**A. Plaintiffs Did Not Meet the Mandatory Requirement to Timely Submit the Class Allegations (And the Legal Theories They Are Based On) To The EEOC.**

Title VII claims must be administratively "exhausted" before suit is filed; that is, an aggrieved person must file a timely charge of discrimination with the EEOC, and the EEOC must issue a right to sue. *See Parker v. Benteler Steel Tube Mfg. Corp.*, 19-30785, 2020 WL 2838573, at *2 (5th Cir. May 29, 2020) (citing 42 U.S.C. § 2000e-5(e)); *Wiggins v. Golden Corral Corp.*, 802 Fed. App'x. 812, 814 (5th Cir. Feb. 03, 2020) ("Administrative exhaustion for Title VII claims is "mandatory (but not jurisdictional), and courts will dismiss claims not properly exhausted.") (*citing Davis v. Fort Bend Cty.*, 139 S. Ct. 1843, 1851 (2019), and *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) ("Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.").

11

The scope of any subsequent Title VII suit is limited to the particular claims which were actually included in the EEOC charge or those "like or related to the claims in the charge," *Dixon v. Moore Wallace, Inc.*, 236 Fed. App'x. 936, 937 (5th Cir. 2007), *i.e.*, those "which can reasonably be expected to grow out of the EEOC's investigation of that charge," *Williams v. Waffle House*, No. 10-357-ME, 2010 WL 4512819, at *2 (M.D. La. Nov. 2, 2010) (citing *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389 (5th Cir. 2000)). When a claim is not raised in an EEOC charge, its "lack of development in the course of a reasonable investigation precludes the claim from later being brought in a civil suit." *Konnethu v. Harris Cty. Hosp. Dist.*, 669 F. Supp. 2d 781, 792, n.37 (S.D. Tex. 2009) (*citing McClain v. Lufkin Indus., Inc.*, 519 F.3d 264 (5th Cir. 2008) (the EEOC's "limited interpretation" of plaintiff's letter "is confirmed by the actual scope of the EEOC's investigation.")).

Importantly, "[w]hen considering what an EEOC investigation growing out of a particular EEOC charge would reasonably encompass, the 'crucial element' to consider is 'the factual statement contained therein.'" *Blakely v. Nestle Waters N.A.*, No 14-1393, 2015 WL 1737816, *3 (E.D. La 2015) (quoting *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 879 (5th Cir. 2003)). Further, "[b]ecause factual statements are such a major element of a charge of discrimination, [the court must] not construe the charge to include facts that were initially omitted." *Harris v. Honda*, 213 Fed. App'x. 258, 261 (5th Cir. 2006) (*citing Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)). The courts do not require charging parties (who, unlike Plaintiffs here, generally do not have lawyers) to accurately plead legal claims; however, they must at least outline the facts on which potential claims are based to put the EEOC and the employer on notice:

"[A] charging party's rights should [not] be cut off merely because [s]he

12

> fails to articulate correctly the legal conclusion emanating from his factual allegations." We must determine whether the EEOC charge "stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges."

*Stone v. Louisiana Dep't of Revenue*, 590 Fed. App'x. 332, 338 (5th Cir. 2014) (internal citations omitted). *See also Anson v. Univ. of Texas Health Sci. Ctr. at Houston*, 962 F.2d 539, 543 (5th Cir. 1992) (*quoting Kloos v. Carter-Day Co.*, 799 F.2d 397, 400 (8th Cir. 1986)) ("Failure to require some notice of class claims in the charge would require employers to treat all individual charges as potential class actions."); *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 494 (5th Cir. 2001).

### 1.    Saidman's 2017 EEOC Charge Did Not Exhaust the First Amended Complaint's Class Claims.

Plaintiffs contradict the factual record by pleading that Saidman "asserted claims on behalf of [herself] and the Class Members in [her] charge submissions to the EEOC." (Doc. 16 at ¶ 140.) Saidman's timely 2017 Charge did not include class allegations or even mention discrimination against anyone other than herself. The EEOC did not, in fact, investigate class claims or pattern and practice discrimination. The EEOC never amended Saidman's charge to include class allegations, and did not mention or refer, in any way, to any class allegations in the letter which notified her that it was prepared to issue a no-cause finding, or in its ultimate notice of dismissal. Rather, the EEOC focused only on Saidman's individual discrimination claims; after concluding its investigation of her charge of employment discrimination, the EEOC wrote that Saidman "was terminated for non-discriminatory reasons." (Ex. F.) Consequently, Saidman has only exhausted her own claims, and any others which are sufficiently "like or related" to those claims that they "would reasonably be expected to grow out of" the EEOC's investigation.

When the EEOC was planning its investigation, no part of Saidman's 2017 Charge and included 7-page narrative would have prompted an investigation of class claims. *See id*.; *see also McClain*, 519 F.3d at 275 (The court considered the potential breadth of a hypothetical investigation that the EEOC could have undertaken, and held that since plaintiffs did not work in the Foundry division and did not complain to the EEOC about Foundry hiring practices, the EEOC would not have reasonably investigated the hiring practices in the Foundry division.). If a nationwide class investigation "could reasonably be expected to grow out of" Saidman's individualized charge, then absolutely any Title VII EEOC charge would administratively exhaust class claims. The Fifth Circuit has rejected such an argument: "[f]ailure to require some notice of class claims in the charge would require employers to treat all individual charges as potential class actions." *Anson v. Univ. of TX Health Sci. Ctr. at Houston*, 962 F.2d at 543 (*quoting Kloos*, 799 F.2d at 400); *compare Fellows v. Universal Rest.*, 701 F.2d 447 (5th Cir. 1983) (an EEOC charge filed by a *pro-se* plaintiff could exhaust class allegations against three mutually-owned restaurants when the EEOC actually initiated an investigation into the three restaurants based on the plaintiff's charge *and* the only reason pro-se plaintiff alleged in her charge of disparate treatment was "because of my sex, female.").

### 2.    Saidman's Untimely 2018 Letter Did Not Exhaust the Class Claims Because It Did Not Relate Back to the 2017 Charge.

Saidman's untimely 2018 Letter, submitted well over 300 days from the date her employment ended in May 2017, did not amend, or relate back to the timely 2017 Charge and did not exhaust administrative remedies for the class claims.

Generally, charges may be amended to cure technical defects or clarify allegations. 29 C.F.R. § 1601.12(b); *E.g., Edelman v. Lynchburg Coll.*, 535 U.S. 106,

14

109 (2002) (approving the "EEOC regulation permitting an otherwise timely filer to verify a charge after the time for filing has expired" to protect a lay complainant who filed a timely but unverified charge); *Owens v. Dallas Cty. Cmty. Coll. Dist.*, 793 Fed. App'x. 298, 301 (5th Cir. 2019); *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54 104, n.4 (1984) (EEOC amended charge to include the suspected date discrimination began to "clarify" the charge.).  Such amendments relate back to the date of the original charge.  *See Carter v. Target Co.*, 541 Fed. Appx. 413 (5th Cir. 2013) ("An amendment only relates back to the original charge if it cures technical defects or clarifies the original charge."). Saidman's 2018 Letter did not cure technical defects or omissions, nor did it clarify any aspect of the original charge. Consequently, it did not function as an amendment of her timely 2017 Charge, nor did the EEOC treat it as such.

Otherwise, courts apply the relation back doctrine sparingly, with several limitations.  First, a purported amendment will not relate back to the original charge if it adds new facts supporting new theories of discrimination. *Vore v. Colonial Manor Nursing Ctr.*, No. 03-1660, 2004 WL 2348229, at *4 (N.D. Tex. Oct. 19, 2004) (amendment which contained no "new facts or claims" but "merely summarize[d] the allegations set forth in plaintiff's earlier letter" related back).

Second, "amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Manning*, 332 F.3d at 878 (collecting cases); *see also Henry v. Parkwest Staffing Servs., Inc.*, No. 11-2417, 2012 WL 950213, at *5 (S.D. Tex. Mar. 20, 2012) (Hoyt, J.) (same). "'An untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge.'" *Manning*, 332 F.3d at 879 (quoting *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 575 (7th Cir. 1998)).

Third, proposed amendments can only relate back if the matters raised could have been timely filed in a separate charge. *Altman v. Key Energy Servs*., No. 11-00495, 2012 WL 4033336, at *4 (E.D. Tex. Sept. 12, 2012) (*quoting Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 458 (5th Cir. 1970)) ("[A]n amendment alleging additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the initial charge will be permitted only where, at the date of the amendment, the allegation could have been timely filed as a separate charge.").

Here, Saidman's 2018 Letter runs afoul of all three rules, because it adds new facts and new legal theories which are not like or related to her individual claims, and which could not have been timely filed in a separate charge. Saidman's timely 2017 Charge alleged specific actions directed at her personally, specifically including sexual harassment, wrongful termination, and retaliation.[3] In contrast, the 2018 Letter alleged new "facts" – based on anonymous internet posts - that STC engaged in a pattern or practice of discrimination. As the Supreme Court has explained, this is a different theory of law, which requires different facts than an individual hostile work environment claim:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876–77 (1984) (internal quotations and citations omitted); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) ("Pattern-or-practice cases differ significantly from

---

[3]     Saidman mentions a female retaliation comparator for Count Three.  (Ex. A, ¶ 47.)

the far more common cases involving one or more claims of individualized discrimination."). Following that rationale, courts have disallowed late EEOC charge amendments purporting to convert individual claims into pattern and practice class actions. *See e.g. Morgan v. FedEx Corp.*, No. 09-04217, 2009 WL 10736798, at *1, *4 (N.D. Cal. Dec. 17, 2009), ("[t]he new theory of the case as alleged in the most recent administrative charge, relating to class members previously unnamed and uninvestigated, does not relate back to her original charge solely on her behalf.").[4]

Given that the 2018 Letter was submitted more than 300 days after Saidman's employment ended, these claims could not have been timely raised in a separate charge. Accordingly, because the 2018 Letter was an untimely "'addition' rather than a true 'amendment,'" and "add[ed] a separate claim based on facts which are independent of the allegations contained in the original EEOC charge" it "does not properly relate back to [Saidman's] original charge." *Toval v. Children's Hosp.,* No. 13-5848, 2014 WL 5465830, at *4 (E.D. La. Oct. 28, 2014) ((*citing Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985)).

### 3.   Cheatham and Putative Class Members Cannot "Piggyback" on Saidman's 2017 Charge.

Cheatham and the absent putative class members cannot rely on Saidman's 2017 Charge to join this suit. While the Fifth Circuit excuses parties from filing an "EEOC charge when they were permitted to join or intervene in a lawsuit in which the

---

[4]      The 2018 Letter does not fit the Fifth Circuit's "limited exception" to its rule. *See Manning*, 332 F.3d at 879. *See e.g.* Ex. D. Plaintiff's 2017 Charge was expressly limited to her (alleged) experience working on several rigs in west Texas between July 2016 and May 11, 2017.  (Ex. A.)  Her allegations are tailored to her experience on the Nomac 55 rig—where she was the only woman.  (*See e.g.* Ex. A., at p. 4 ("In the course of *my* employment, Schlumberger discriminated against *me* on the basis of *my* gender and religion by subjecting *me* to disparate terms and conditions of employment and other forms of discrimination" and "On March 2, 2017, I began working on the Nomac 55 rig in Midland, Texas.  Out of the 25 employees working on Nomac 55, I was the *only* female.") (emphasis added)).

original, similarly situated plaintiff had fully exhausted the administrative requirements," *Adams v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.*, No. 98-400, 2019 WL 3240028, at *10 (M.D. La. July 18, 2019), that doctrine does not apply here.

A plaintiff can only "piggyback" under this "single filing rule" if she can satisfy the following three requirements:

> First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. Finally, a prerequisite – implicit to be sure – for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.

*Bettcher*, 262 F.3d at 494 (internal citations omitted).   Here, Cheatham and the putative class members cannot "piggyback" on Saidman's 2017 Charge, because Plaintiffs cannot plausibly allege that Saidman is similarly situated to Cheatham and the absent class members, and because the charge did not provide notice of potential class claims, as discussed above.

Within the applicable limitations period (300 days preceding her charge), Saidman worked on the Nomac 55 rig and the Trinidad 100 rig. She only alleges harassment on Nomac 55, where she was the only woman, allegedly harassed by Aguilar; the alleged retaliation and termination flowed from the harassment. *Compare E.E.O.C. v. IPS Indus., Inc.*, 899 F. Supp. 2d 507, 524 (N.D. Miss. 2012) (allowing class members to "piggyback" on the EEOC charge filed by a quality control clerk because they were "all quality control clerks" and "[a]ll of the class members allege similar acts of indiscretion during their employment under [the same manager] at the [same warehouse.]").

Cheatham never worked on Nomac 55; she does not allege harassment by Aguilar. Plaintiffs cannot plausibly allege that Cheatham and the absent class members could file "many identical complaints with the EEOC" regarding a hostile work environment because no other female employee experienced the same environment. Likewise, because the circumstances of Saidman's involuntary termination were unique to her, and completely different from Cheatham's own resignation, their complaints could not be included in "identical" charges. Nor could any other employee file an "identical" charge with the EEOC.

Cheatham did not exhaust administrative remedies for her own claims, and neither Plaintiff exhausted administrative remedies for the class claims.

**B. Plaintiffs Did Not Exhaust A Disparate Impact Claim.**

The FAC asserts a *disparate impact* claim which was not alleged in Saidman's EEOC charge, which alleged intentional *disparate treatment* against her individually. (Doc. 16 at ¶ 179.) As detailed infra on pages 28-29, a disparate impact claim is different than a disparate treatment claim.  Consequently, it must be separately exhausted. *See supra, Gordon v. Peters*, 489 F. Supp. 2d 729, 733 n.1 & 736 (S.D. Tex. 2007) (Alleging individual incidents of discrimination in an EEOC charge in support of a disparate treatment claim does not exhaust a claim of disparate impact because "the Fifth Circuit recognizes [disparate impact and disparate treatment claims] as separate claims."). *See also Hague v. Univ. of Tex.*, 560 Fed. App'x. 328, 331 (5th Cir. 2014) (holding that plaintiff did not exhaust her administrative remedies for sex discrimination by making factual allegations about sexual harassment because her subsequent claim of harassment fell outside the scope of the EEOC investigation, and could not reasonably be expected to grow out of her initial sexual harassment allegation); *see also McClain*, 519 F.3d at 275 (5th Cir. 2008) (plaintiff did not

exhaust a class claim of disparate impact discrimination because his charge did not allege a facially neutral policy had been applied in a discriminatory way). Plaintiffs did not exhaust administrative remedies for individual or class claims of disparate impact discrimination, and aspect of Count One is due to be dismissed for that separate and independent reason, as to all parties.[5]

## C. The First Amended Complaint Does Not Plausibly Allege Facts to Maintain A Rule 23(b)(3) Class Action.

On its face, the FAC establishes that Plaintiffs' claims are not amendable to class wide resolution. Rule 23 class actions require a threshold showing that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Fed. R. Civ. Proc.* 23(a). Rule 23(b)(3) actions like the one – where Plaintiffs seek damages - require that questions of law or fact common to class members predominate over any questions affecting only individual members. *Fed. R. Civ. Proc*. 23(b)(3). Counts One and Two do not plausibly allege these prerequisites.

The conclusory class allegations are all plead on "information and belief" without a factual underpinning to make belief plausible, and therefore do not meet the *Twombly* plausibility standard. *Innova Hosp*., 892 F.3d at 730 ("'[t]he *Twombly* plausibility standard … does not prevent a plaintiff from 'pleading facts alleged upon information and belief' … where the belief is based on factual information that makes the inference of culpability plausible.'"). Even so, the face of the FAC makes clear

---

[5]     To the extent that Cheatham alleged a disparate impact claim in her pending EEOC charge, that claim has not been exhausted because the EEOC has not issued a right-to-sue to Cheatham.  (Doc. 16, at ¶138.)

that there are no common questions of law or fact capable of class wide determination, that Plaintiffs' claims would not be typical of the putative absent class members, and that any incidental commonalities would be overwhelmed by individual differences. The class claims are due to be dismissed for this discrete reason.

### 1.    Plaintiffs Cannot Establish Rule 23(a)(2) Commonality.

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court advised that class allegations must lay out a path to class-wide resolution:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* at 350 (internal quotations and citations omitted). Accordingly, "class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins v. Direct Digital*, 795 F.3d 654, 660 (7th Cir. 2015). A Rule 23 class cannot contain "a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). The FAC does not meet this standard because Plaintiffs have not alleged the common factual and legal questions required by Rule 23(a)(2).

### a. Plaintiffs' Count Two Hostile Environment Claim Presents No Common Questions.

A *prima facie* case for hostile work environment harassment requires proof that "(1) the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). To meet the fourth element, the sexual harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Id*. Plaintiffs must also establish a basis for employer liability, which varies depending whether the harasser is a co-worker or a supervisor. *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (An employer is only liable for co-worker harassment if it was negligent in controlling conditions; different rules apply when the harasser is a supervisor, depending on whether tangible employment action was taken, and, if not, whether the employer can establish the *Farragher* affirmative defense to liability.[6]). Plaintiffs do not plausibly allege facts to establish these requirements.

Plaintiffs allege the common legal and factual questions as a laundry list, with no factual underpinning to support plausibility, including, for example, whether the Class was subjected to offensive or sexual language and conduct during their employment; whether STC's employees with supervisory authority have been, or reasonably should have been, aware of the sexually hostile work environment for

---

[6]    To establish the *Faragher* defense to liability for supervisory harassment, the employer must plead and prove (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Boh Bros.*, 731 F.3d at 462.

class members; whether the instances of sexual harassment were so severe or pervasive as to alter the conditions of the Class's employment and create a hostile or abusive working environment; whether STC exhibited an unreasonable delay in discovering and remedying the environment; and whether the Class worked in a highly sexualized atmosphere in which crude and offensive sexual behavior is common and employees see that it is normative. (Doc. 16 at ¶ 153.) But their "information and belief" pleading from anonymous internet sources of a broad range of supposedly harassing comments and conclusions does not plausibly allege Rule 23(a) commonality with Plaintiffs' own unique claims. Even when its allegations are accepted as true, considering Supreme Court precedent, including *Dukes* and its progeny, the FAC does not plausibly allege these facts.

The *first element* presents the commonality that class members would all be female employees of STC, but the Supreme Court has expressly precluded class treatment on that basis. *See Dukes*, 564 U.S. at 359–60 (held class not appropriate when members "have little in common but their sex and this lawsuit.").

The *second element* presents no common questions. Plaintiffs allege that STC "provid[es] services on hundreds of oil rigs in North America alone." (Doc. 16 at p. 1.) Thus, by Plaintiffs' own pleading, the alleged injury did not occur in a common location, during a common period, or in a common way. Moreover, it is implausible that every female employee – scattered across "hundreds of oil rigs" over a period of 5 or 6 years – experienced the same treatment, by the same actors, with the same frequency, on the same basis, subjectively perceived in the same way, reported to the same manager, who responded in the same way, and that STC acted or failed to act in the same way. Courts have routinely denied class status to such claims.

For example, in *Sellars v. CRST Expedited,*, 359 F. Supp. 3d 633, 679 (N.D. Iowa 2019), *Rule 23(f) appeal denied* (8th Cir. 2019), the court rejected a similar alleged hostile work environment class based on allegations that male truck drivers sexually harassed their female driving partners while on the road. The court held:

> It would be unfair to conclude that a work environment as a whole is hostile by tallying up all instances of sexual misconduct when each person in the class may have been subject to only one of those instances and unaware of others . . . it becomes obvious that individual issues will predominate common ones under Rule 23(b)(3) . . . [because] proof of the alleged sexual harassment will consist of individual and separate instances of conduct rather than conduct to which multiple women were exposed.

*Id.* While *Sellars* was concerned with Rule 23(b)(3) predominance rather than Rule 23(a) commonality, the same rationale applies.

Likewise, in *Goodwin v. Conagra Poultry Co.*, No. 03-1187, 2007 WL 1434905 (W.D. Ark. May 15, 2007), the Court explained why an alleged hostile work environment class very similar to the one alleged here did not establish commonality. There, the plaintiffs alleged a hostile work environment based on race at a poultry processing complex, which was broken into four different campuses, divided into different departments and sub-departments, where employees worked different shifts and had different supervisors based on their department and shift. *Id.* at *2. The court ruled that there was no Rule 23(a) commonality, rejecting the class since:

> Each allegation differed greatly as to frequency, severity and the nature of the conduct depending on the area they worked . . . the department they worked . . . and who their supervisors were . . . They also differed as to what they experienced within the same area or department that individual worked and the comments and actions taken by his or her individual supervisor. These claims cannot be proven on a class-wide basis . . . The Plaintiffs have failed to bridge the gap between their individualized hostile work environment claims and common questions of law susceptible to common proof.

*Id.* at *13.

And Plaintiffs here offer far more individualized facts than the truck-by-truck or site-by-site analyses required in *Sellars* and *Goodwin*.  There, the courts would have analyzed the circumstances between the man and woman in each truck, or between the men and women in each building, while the FAC here presents widely different scenarios surrounding each female field worker, the two to three other STC employees, and the twenty plus third-party employees working on each rig, in hundreds of locations  across the country. The putative class claims will require analysis of the potential for a hostile work environment at each rig during any relevant time frame, along with an evaluation of each absent class member's personal experience. Even more complicated, each putative class member could have experienced multiple different environments as she moved from one rig to the next, which is the situation Plaintiffs alleged in the FAC.

Similarly, the FAC does not plausibly allege commonality as to *the third element* – whether conduct was motivated by sex. In *Van v. Ford Motor Co.*, the plaintiffs sought to assert a hostile work environment, sexual harassment class claim on behalf of "all present and former female employees" who worked at one of two locations. 332 F.R.D. 249, 259 (N.D. Ill. 2019). The plaintiffs there alleged that women, as a class, experienced sexual harassment at both of employer's work sites. *Id.* In analyzing the proposed class, the court noted: "it is well established that superficial common questions—like whether each class member shares a characteristic or 'suffered a violation of the same provision of law'—are not enough to establish commonality." *Id.* at 276 (quoting *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012)).  Like *Van*, Plaintiffs have not plausibly alleged that all the putative class members were subjected to the same conduct, or that any actor was motivated by sex. *Id.* at 268 ("[I]f named Plaintiffs and putative class members

cannot establish that they were even exposed to the same conduct on a class-wide basis, they cannot address on a class-wide basis whether the differing conduct to which they were exposed was based on sex.").

The FAC demonstrates the implausibility of establishing commonality through the *fourth element,* that any harassment was - objectively and subjectively – severe or pervasive enough to affect a term, condition, or privilege of employment.  In *Van*, for example, Plaintiffs specifically argued that the nature of the challenged conduct – requests for sexual favors, stories of sexual conquests, questions and sexual batteries and assaults – were subject to common proof on the issue of whether said conduct was objectively offensive and would qualify as the common question of whether the alleged harassment was severe or pervasive enough to establish a hostile work environment. *Id.* The court rejected this argument, however, "because the objective hostility component still depends on the *specific* conduct to which *each* named Plaintiff and putative class member was exposed." *Id.* (emphasis added). Although the *Van* plaintiffs presented evidence that they and the putative class members "were exposed to a wide-range of conduct that certainly would support [individual] hostile work environment claims," they were not "all . . . exposed to the same conduct," and so the plaintiffs could not show commonality under Rule 23(a). *Id. See also Lamarr-Arruz v. CVS Pharmacy*, 2017 WL 4277188, at *5 (S.D.N.Y. Sept. 26, 2017) ("Courts have generally approved of hostile work environment class actions where the work environment is localized, for example, where the proposed class members worked under a single supervisor or at a single site (even a large building that has multiple departments.) ... By contrast, courts have viewed multi-site hostile work environment class actions with skepticism."); *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263 (W.D. Wis. 2013) (dismissing class allegations on a motion to dismiss

because plaintiffs failed to show a common contention because they did not identify "one supervisor that is responsible for all the decisions at issue" and the allegation that a "corporate culture" caused regional managers to be biased was unpersuasive); *Bolden v. Walsh Construction Co.,* 688 F.3d 893, 895-96 (7th Cir. 2012) (rejecting class allegations alleging discrimination in the assignment of overtime work and in working conditions at more than 250 sites because when "multiple managers exercise independent discretion, conditions at different stores (or sites) do not present a common question."). The same result applies here, where Saidman and Cheatham allege harassment by different bad actors, at different times, on different rigs, with potentially enormous variance as to both objective and subjective offensiveness.

*Last*, the FAC does not plausibly allege facts to support *a common basis for liability*. Quite the contrary, the FAC alleges both supervisory and non-supervisory harassment, and thereby demonstrates the individualized focus required to establish employer liability, drawing on individual facts pertaining to each class member, *e.g.*, whether the absent class members claim co-worker or supervisory harassment, whether any harassment was reported, whether management had independent knowledge, whether any investigation was conducted, whether discipline was issued, and whether STC's corrective action was effective in that in ended the harassment. *See Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir.1999) (A plaintiff's claim should be dismissed if her employer takes reasonably calculated remedial actions to stop the harassing behavior, such as moving one of the parties to another shift, and the harassment stops.).

### b.     Plaintiffs' Count One Discrimination Claim Presents No Common Questions.

The FAC alleges both disparate treatment and disparate impact sex discrimination, but neither claim is amenable to class treatment. A *prima facie* case of *disparate treatment* sex discrimination requires each Plaintiff to allege that she is "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). A *disparate impact* claim requires that a facially neutral personnel policy or practice caused a "disparate effect" on female employees that can be shown by a significant statistical disparity. *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. App'x. 485, 492 (5th Cir. 2011). Because Count One purports to include *any* female employee who experienced *any* adverse employment action from *any* cause, by *any* decisionmaker, at *any* rig, in *any* location in the country, it presents no common question of law or fact whose answer is "central to the validity of each one of the claims." *Dukes*, 564 U.S. at 350.

Plaintiffs again phrase the "common issue" as a conclusory laundry list, not supported by plausible factual allegations, including whether STC engaged in unlawful, systemic gender discrimination, and whether Schlumberger engaged in a pattern or practice of discrimination.  (Doc. 16 at ¶¶ 153-154.)  These conclusory allegations are strikingly like the example the Supreme Court warned against in *Dukes* and lower courts have disallowed. *Dukes*, 564 U.S. at 359–60 (holding that there was no commonality because class members were employed "for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of

28

supervisors (male and female) . . . They have little in common but their sex and this lawsuit."); *E.g. Hagler v. True Mfg., Co., Inc.*, No. 12-328, 2012 WL 1025672, at *5 (E.D. Mo. Mar. 26, 2012) (dismissing a class allegation because the plaintiff "failed to state a plausible claim that the class she proposes can meet the commonality requirement" when she "proposes a class which would include any employee of Defendant who had his or her FMLA rights violated, for any reason, during the three years prior to the filing of this lawsuit."); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 384 (3d Cir. 2013) (For commonality, putative class members must show that "they have suffered a common harm" by showing that the defendant granting "discretion to individual loan officers constitutes a 'specific' practice' that affected all the class members in the same general fashion." Affirming no commonality for a proposed class consisting of "all African-American and Hispanic persons [nationwide]," who alleged they were charged discriminatory higher mortgage rates, because "the exercise of broad discretion by an untold number of unique decision-makers in the making of thousands upon thousands of individual decisions undermines the attempt to claim . . . that the decisions are bound together by a common discriminatory mode."); *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (a proposed class of "all separated employees," without alleged conduct that "spans the entire class and caused all class members to suffer the same injury" is not certifiable.)

Count One necessarily includes class members employed at different locations than Plaintiffs, with different management and decision makers, who could assert not just termination claims, but also hiring, pay and promotion claims. No single question of law or fact is central to the validity of each of those claims, and Rule 23(a)(2) commonality prerequisite is not satisfied.

### c. Plaintiffs' "Policies and Procedures" Allegations Present No Common Questions.

Plaintiffs' attempt to find commonality in STC's policies is similarly unavailing. Plaintiffs allege that "Schlumberger's policies, practices, and procedures—including its practice of minimizing, ignoring, mishandling, or otherwise failing to adequately respond to women's complaints—have allowed the gender discrimination and sexual harassment to which women are subjected to exist on a systemic, Company-wide basis." (Doc. 16 at ¶ 23.) But as this Court noted in a remarkably similar case, *Shaw*, 2019 WL 3557843 at *3:

> Nowhere in Plaintiff's First Amended Class Action Complaint are there any *factual* allegations about any company-wide policy or practice. Under *Twombly*, Plaintiffs' conclusory allegations must be disregarded. Under *Dukes*, Plaintiffs' conclusory allegations do not create the type of bridge between the individual allegations and the class allegations that will support maintenance of a class action case of race discrimination.

*Id*. (emphasis original). Here, under *Dukes*, the same result is required. Plaintiffs have alleged in conclusory fashion that Schlumberger maintains companywide policies and/or practices that disproportionately affect women and/or create sexually hostile work environments, but their conclusions are not entitled to a presumption of correctness under *Twombly/Iqbal*. They have not and cannot plausibly allege that each female employee who experienced perceived harassment or discrimination was impacted by the policies in a way that satisfies Rule 23(a)(2)'s commonality requirement.

## 2. Plaintiffs Cannot Establish Rule 23(a)(3) Typicality.

For similar reasons, Plaintiffs cannot meet the Rule 23(a)(3) prerequisite that their claims must be typical of the absent class members. (Doc. 16 at ¶¶ 155–161.) Plaintiffs make the conclusory allegation that STC's alleged "pattern and practice" of "differential treatment" "throughout all locations and work sites of the Company" "has

affected" every STC female oil field worker nationwide "in the same or similar ways," but they do not plausibly plead facts to support that conclusion. (*Id.* at ¶¶ 158-159.) Rather, Count One pleads a cornucopia of adverse employment decisions, which Plaintiffs allege may have impacted the hypothetical absent class members, including being put on leave or suspended, denied work or advancement, receiving writing warnings, being terminated and "other adverse actions." (*Id.* at ¶ 175.)

Plaintiffs have not even plausibly alleged that Saidman's and Cheatham's own retaliation and wrongful termination claims are typical of each other. Quite the contrary, Saidman alleges that she was retaliated against for making her complaint and was terminated for pretextual violations of STC's alcohol and driving policies, while Cheatham alleges that she was "blacklisted," offered work only in Alaska, and resigned. (Doc. 16 at ¶¶ 128, 134.) Plaintiffs have not and cannot allege that their vastly different experiences are typical of class members who complain, whose claims (if any) would be equally individualized, if not more so if they worked outside of the Permian Basin in Texas, where both Saidman's and Cheatham's claims allegedly arose. What's more, Plaintiffs do not even attempt to allege that their claims would be typical of absent class members who experience adverse employment action after protesting STC's hiring, promotion, leave, or compensation practices, as they make no allegations they experienced such actions. *See Stone v. First Union Corp.*, 203 F.R.D. 532, 546 (S.D. Fla.2001) (decertifying class, in part, because the class members asserted many different adverse employment actions, which differed from the adverse employment action alleged by the class representative); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (the district court correctly "shav[ed]" off allegations of harm from the class definition that the representative plaintiff did not, himself, experience). *See Smith v. City of Unadilla*, No. 05-111, 2006

1WL 1935088, at *2 (M.D. Ga. July 11, 2006) (discussing how a class cannot satisfy the typicality requirement in part because the "allegedly adverse employment actions involved many practices including hiring, cross-training, compensation and promotion.").

Nor have Plaintiffs plausibly alleged that their own hostile work environment claim is typical of the claims of the absent class members asserted in Count Two. Rather, Saidman alleged that she was the "only woman" on the Nomac 55 rig where she was allegedly harassed by Aguilar. (Doc. 16 at ¶ 53.) Cheatham alleges she was the "only woman" in a crew of 4 when she was harassed by Fusilier, when she was harassed by Laroux, and later at Directional Drilling School and at Slim Pulse School. (*Id*. at ¶ 97, 111.) Their remaining conclusory allegations do not support typicality, particularly since the FAC clearly alleges that STC operates at "hundreds of oil rigs in North America alone," often with only one or two female employees at each site. (*Id.* at p. 1, ¶ 15.) Equally important, the FAC does not (and cannot) allege that Aguilar, or Fusilier or Laroux – or any other employee allegedly involved in harassing Plaintiffs – worked at every STC rig in the country, or at any rig other than at the specific few alleged in the FAC.

### 3. Plaintiffs Cannot Establish Rule 23(b)(3) Predominance.

Even when Rule 23(a)'s commonality requirement is satisfied, Rule 23(b)(3) requires Plaintiffs to demonstrate that the questions of law or fact common to class members *predominate* over any questions affecting only individual members. The "far more demanding" predominance criterion requires the Court to find that the class is "sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. To satisfy the predominance requirement, Plaintiffs must show that "common questions represent a significant aspect of [a] case and . . . can be resolved

for all members of [a] class in a single adjudication." *Van,* 332 F.R.D. at 288 (citing

*Messner v. Northshore Univ. Health System*, 669 F.3d 802, 815 (7th Cir. 2012)

(citation and internal quotation marks omitted)).

> As the Supreme Court recently explained,

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations

and quotations omitted). In *Tyson*, an FLSA "donning and doffing" case, the plaintiffs

claimed commonality because each employee was owed overtime compensation for

the time s/he spent putting on protective gear at the start of the shift, and removing

the gear at the end of the day. The Supreme Court rejected that argument, because

the variance in protective gear each employee wore required an individual calculation

of the time s/he spent donning and doffing, and because adding that "donning and

doffing" time to the employee's time card would only cause some employees to work

more than 40 hours. *See also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609

(1997) (Plaintiffs exposed to asbestos could not establish predominance where class

members were exposed to different asbestos-containing products, in different ways,

over different periods, and for different amounts of time; some suffered no physical

injury, others suffered disabling or deadly diseases.); *Benavides v. Chicago Title Ins.*

*Co.*, 636 F.3d 699, 701 (5th Cir. 2011) (There was no predominance because "while

each plaintiff would need the question answered," the court would have to answer each "question specifically and individually as to each plaintiff" because "certification of the class would require an extensive file-by-file review to sort out the factual details as to each plaintiff."); *Sellars*, 359 F. Supp. 3d at 679.

Plaintiffs allege as the predominant common factual and legal questions that STC has "facilitated a hostile work environment," and "engaged in gender discrimination." (Doc. 16 at ¶ 166.)   As detailed above, the "non-common, aggregation-defeating, individual issues" are far more prevalent than any incidental commonalities.   Plaintiffs simply cannot establish the "far more demanding" Rule 23(b)(3) predominance requirement.

**D.     The First Amended Complaint's Defects Cannot Be Cured by Discovery.**

No amount of discovery can cure the FAC's inadequacies. First, the Court's legal analysis of Plaintiffs' failure to exhaust administrative remedies for Cheatham and for the putative class turns on the EEOC charges and supporting documents submitted to the EEOC, and the EEOC right-to-sue issued to Saidman. All such materials are attached to STC's motion. Discovery will not produce any additional facts.

Second, the Court's decision regarding Rule 23's requirements will turn on its analysis of the FAC and is not dependent on any external material. Plaintiffs allege a class made up of every woman who worked for STC, scattered across "hundreds of oil rigs in North America alone" where women account for no more than 5% of the rig crews. (Doc. 16 at page 1, ¶15.) Discovery may identify particular women who assert claims against STC, and may flesh out the contours of such claims, but cannot cure the core defect in the FAC, that  there is simply no commonality or typicality under the facts as plead by Plaintiffs: "[W]hen the defendant advances a legal

34

argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained." *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010). Other courts have specifically held that discovery is unnecessary when "thorny individualized issues pervade" class allegations and "discovery promises no hope of a remedy" because "there simply are not facts that could later be discovered that would render the complex, ubiquitous individualized questions of harm . . . that pervade [a] case amenable to collective resolution." *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *6 (N.D. Ill. Aug. 1, 2019).

As there are no facts that could be learned through discovery that would resolve any part of the class allegations on a class-wide basis, the Court should dismiss Plaintiffs' class allegations now. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming the district court striking the class allegations before discovery, because it "cannot see how discovery or for that matter more time would have helped" plaintiffs fix "the central defect in [their] class claim."); *Richardson v. Bledsoe,* 829 F.3d 273, 289 (3d Cir. 2016) (When discovery cannot help a putative class meet the Rule 23 requirements, the district court can consider the class claims and dismiss them.).

## VIII.  CONCLUSION

For the foregoing reasons, STC's motion for partial dismissal of the First Amended Complaint is due to be granted.

/s/ *Cecily L. Kaffer*
Cecily L. Kaffer (S.D. Tex. Bar No. 2217940)
THE KULLMAN FIRM, PLC
63 South Royal Street, Suite 1100
Mobile, Alabama 36602
Telephone: (251) 432-1811
E-mail: clk@kullmanlaw.com

35

Samuel Zurik III (S.D. Tex. Bar No. 557386)
MaryJo L. Roberts (S.D. Tex. Bar No. 2220397)
THE KULLMAN FIRM, PLC
1100 Poydras St., Suite 1600
New Orleans, Louisiana 70163
Telephone: (504) 524-4162
E-mail: sz@kullmanlaw.com
E-mail: mlr@kullmanlaw.com

**COUNSEL FOR DEFENDANT, SCHLUMBERGER
TECHNOLOGY CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have caused to be served, this 12th day of October 2020, a copy
of the foregoing has been sent via electronic mail via the Court's CM/ECF system to
counsel of record.

*/s/Cecily L. Kaffer*
Cecily L. Kaffer