| | | |
|---|---|---|
| SARA SAIDMAN and JESSICA CHEATHAM, | § § § | |
| *Plaintiffs,* | § § | Case. No. 4:20-cv-02193 |
| v. | § § | |
| SCHLUMBERGER TECHNOLOGY CORPORATION, | § § § | |
| *Defendant.* | § § § | |

---

**PLAINTIFF CHEATHAM'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AS TO PLAINTIFF CHEATHAM'S CLAIMS AND
DEFENDANT'S AFFIRMATIVE DEFENSE NO. 38 (ECF NO. 96)**

---

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

II. STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT ................................ 1

III. FACTUAL BACKGROUND ........................................................ 2

    A. Plaintiff Cheatham's Employment History and Performance at Schlumberger ................ 2

    B. Plaintiff Suffered Pervasive Sexual Harassment and Gender Discrimination Starting in January 2018 ........................................................ 3

        1. In January 2018, Plaintiff Filed a Sexual Harassment Complaint After Her Supervisor Threatened to "Bend Her Over His Knee and Spank Her" ........................................... 3

        2. Between February 2018 and February 2019, Plaintiff Was Subjected to Continuing Sexual Harassment on Rigs—and STC Did Nothing .................................... 4

    C. In September 2019, Plaintiff Reported Gender Discrimination and Was Promptly Retaliated Against ........................................................ 5

        1. Following Plaintiff's Complaint, STC Banned Her from Chevron Rigs ...................... 6

        2. PSDM Lasher and WFC Allen Banned Plaintiff from Chevron Rigs Without Satisfying Prescribed Prerequisites for Doing So ........................................ 6

        3. There is No Reliable Evidence that Chevron Requested Plaintiff's Removal ............. 7

    D. On September 7, 2019, Plaintiff Filed an EthicsLine Complaint Alleging Gender Discrimination and Retaliation ........................................................ 8

    E. Following Plaintiff's Complaint, Human Resources Engaged in Communications Reflecting Direct Evidence of Retaliatory and Discriminatory Animus ........................... 8

        1. HR Disclosed Plaintiff's Confidential Complaint to FDE Mgr Ruy, Who Accused Plaintiff of "Using the Female Card"—a Communication Which HR Relied Upon in its Investigation ........................................................ 8

        2. While the Investigation Was Ongoing, HR Rep Garcia and FDE Mgr Ruy Openly Communicated Discriminatory and Retaliatory Views About Plaintiff ..................... 9

    F. After Being Told That Plaintiff "Uses the Female Card," HR Rep Garcia Failed to Adequately Investigate Her Complaint ........................................................ 10

    G. Plaintiff Was Not Staffed on Rigs from September 2019 through January 2020 in Retaliation for Her Previous Complaints ........................................... 11

    H. Schlumberger Pressured Plaintiff to Accept a Significant Demotion .......................... 12

    I. Plaintiff Was Constructively Discharged on January 2, 2020 ................................. 13

IV. LEGAL STANDARD ........................................................ 14

V.  LEGAL ARGUMENT ............................................................................................. 14

   A.  Plaintiff's Claims Are Timely .......................................................................... 14

   B.  Plaintiff's Discrimination and Retaliation Claims Must Survive Summary Judgment .... 17

      1.  Direct Evidence ............................................................................................ 18

      2.  Circumstantial Evidence Further Justifies Denial of Summary Judgment ................ 19

      (i)  Prima Facie Cases of Retaliation and Gender Discrimination ................................... 19

         a)  Retaliation ................................................................................................. 19

         b)  Gender Discrimination .................................................................................. 23

      3.  There Are Triable Issues of Fact as to Pretext ............................................................ 24

      (i)  STC's Reasons for the Adverse Actions Are Unworthy of Credence ...................... 25

         a)  Removal from Chevron Rigs ......................................................................... 25

         b)  Failure to Staff Plaintiff for Four Months ........................................................ 26

         c)  Grade 99 MWD Demotion .............................................................................. 27

      (ii) Evidence of Retaliatory Intent ...................................................................... 27

      (iii)Evidence of Discriminatory Intent .................................................................. 29

   C.  Triable Issues of Fact Exist on Plaintiff's Hostile Work Environment Claim ................ 31

   D.  Plaintiff's Constructive Discharge Claims Easily Survive Summary Judgment ............. 32

   E.  Summary Judgment Should Not Be Granted on Affirmative Defense No. 38 ................. 35

VI. CONCLUSION ................................................................................................... 35

# **TABLE OF AUTHORITIES**

## Cases

*Allen v. U.S. Steel Corp.*, 665 F.2d 689 (5th Cir. 1982) ..........................................................15

*Alston v. S & P Glob., Inc.*, 2022 WL 19504 (S.D. Tex. Jan. 3, 2022) ....................................22

*Anderson v. La. Dep't of Transp. & Dev.*, 836 F. App'x 304 (5th Cir. 2020)...........................26

*Badgerow v. REJ Props., Inc.*, 974 F.3d 610 (5th Cir. 2020) ....................................................29

*Bettcher v. Brown Sch., Inc.*, 262 F.3d 492 (5th Cir. 2001)........................................................15

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)........................................................20, 21

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ..............................................20

*Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570 (N.D. Miss. 2011) .......................34

*Crawford v. U.S. Steel Corp.*, 660 F.2d 663 (5th Cir. 1981) .....................................................16

*D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889 (D. Md. 1995) ...................................................15

*De La Garza v. City of Corpus Christi*, 2014 WL 12586753 (S.D. Tex. Nov. 5, 2014) ...........24

*Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011) ...................................................34

*Donaldson v. CDB Inc.*, 335 F. App'x 494 (5th Cir. 2009)..................................................31, 32

*E.E.O.C. v. IPS Indus., Inc.*, 899 F. Supp. 2d 507 (N.D. Miss. 2012) ......................................16

*E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235 (5th Cir. 2016) ..........................................28, 30

*E.E.O.C. v. Ryan's Pointe Hous., L.L.C.*, 2022 WL 4494148 , at *7 (5th Cir. Sept. 27, 2022) ................26

*E.E.O.C. v. Schwan's Home Serv.*, 692 F. Supp. 2d 1070, *objections overruled,*

    707 F. Supp. 2d 980 (D. Minn. 2010), *aff'd,* 644 F.3d 742 (8th Cir. 2011) ............................15

*E.E.O.C. v. SDI of Mineola, L.L.C.*, 2022 WL 4127167 (E.D. Tex. Aug. 17, 2022),

    *r&r adopted,* 2022 WL 4125079 (E.D. Tex. Sept. 9 2022)....................................................33

*E.E.O.C. v. Stone Pony Pizza, Inc.*, 959 F. Supp. 2d 967 (N.D. Miss. 2013)......................15, 16

*E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393 5th Cir. 2007)..................................................32

*Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001)......................................................20, 22

*Fairley v. Wal-Mart Stores, Inc.*, 216 F. Supp. 3d 708 (E.D. La. 2016) ...................................17

*Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir.1996).....................................31

*Frank v. Xerox Corp.,* 347 F.3d 130 (5th Cir. 2003) ...........................................................16, 17

*Fresquez v. BNSF Ry. Co.*, 2018 WL 6249686 (D. Colo. Oct. 2, 2018) ...................................35

*Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236 (5th Cir. 2019)..........................................29, 31

*Glasco v. Aerotek Pro. Serv., Inc.*, 2013 WL 12072538 (W.D. Okla. Jan. 30, 2013) ...............................35

*Gonzalez v. Smith Int'l, Inc.*, 899 F. Supp. 2d 622 (S.D. Tex. 2010) .............................................20, 32, 33

*Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523 (5th Cir. 2022)......................................................24, 25

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470 (5th Cir. 2015).........................................................30

*Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356

    (5th Cir. 2013).................................................................................................................................passim

*Hart v. Starkville Ford-Lincoln-Mercury, Inc.*, 2012 WL 426440

    (N.D. Miss. Feb. 9, 2012) .................................................................................................................26

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428

    (5th Cir. 2005)...................................................................................................................................31

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017) .............17

*Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487

    (N.D. Tex. Apr. 30, 2014)................................................................................................................35

*Langley v. Int'l Bus. Machs. Corp.*, 2019 WL 11626423 (W.D. Tex. Dec. 23, 2019),

    *r&r adopted,* 2020 WL 8052973 (W.D. Tex. Feb. 28, 2020)........................................................30

*Laxton v. Gap Inc.*, 333 F.3d 572 , 580 (5th Cir. 2003)...............................................................................26

*Lockett v. Hous. Indep. Sch. Dist.*, 2017 WL 2224041 (S.D. Tex. Apr. 21, 2017)....................................23

*Lopez v. Donahoe*, 94 F. Supp. 3d 845 (S.D. Tex. 2015) .....................................................................20, 21

*Matherne v. Ruba Mgmt.*, 624 F. App'x 835 (5th Cir. 2015) .....................................................................32

*McGuire v. City of Austin*, 2013 WL 12116542 (W.D. Tex. Sept. 23, 2013) ...........................................30

*Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 2010 WL 11565530 (N.D. Tex. Feb. 5, 2010)............................33

*Owens v. Circassia Pharms., Inc.*, 33 F.4th 814 (5th Cir. 2022)...............................................................28

*Pippins v. Miss. Dep't of Pub. Safety*, 2022 WL 1110332 (S.D. Miss. Apr. 13, 2022)............................17

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940 (5th Cir. 2015) .....................22

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)......................................................25, 30

*Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282 (5th Cir. 2012)...........................................24

*Roberts v. Lubrizol Corp.*, 2013 WL 12099843 (S.D. Tex. June 28, 2013) ..............................................20

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999).....................................................29

*Sloan v. Monroe Cnty. Sheriff's Dep't*, 2012 WL 1189028 (N.D. Miss. Apr. 9, 2012) ............................30

*Spikes v. TLG Rests., LLC/The Lewis Izu Grp. Rests., LLC*, 2020 WL 262984

    (E.D. Tex. Jan. 9, 2020), *r&r adopted,* 2020 WL 248788 (E.D. Tex. Jan. 16, 2020) ...........................33

*Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310 (5th Cir. 2015)........................................25

*Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649 (5th Cir. 2012).............................22, 32

*Swierkiewicz v. Sorema N. Am.*, 534 U.S. 506 (2002).............................................................18

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985).................................................18

*Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008).............................................................28

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887 (5th Cir. 2012), *as revised* (June 22, 2012).................19, 23

*Vana v. Jacobs Eng'g Grp. Inc*, 2015 WL 12550940 (S.D. Tex. Feb. 23, 2015)..............................25, 26

*Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2000)...................................................18

*Vasquez v. Johnson*, 2014 WL 2438380 (N.D. Tex. May 30, 2014)...........................................33

*Vaughn v. Woodforest Bank*, 665 F.3d 632, 638-39 (5th Cir. 2011)........................................26

*Wade v. Lyondell-Citgo Refin.*, 2005 WL 8168888 (S.D. Tex. Dec. 20, 2005)...................15, 17

*Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422 (5th Cir. 2022)..................................35

*Ward v. AutoZoners, LLC*, 958 F.3d 254 (4th Cir. 2020)...........................................................35

*Watkins v. Tregre*, 997 F.3d 275 (5th Cir. 2021)................................................................25, 31

*West v. Nabors Drilling USA, Inc.*, 330 F.3d 379 (5th Cir. 2003)............................................18

*Williams v. Sheriff*, 2018 WL 1542150 (W.D. La. Mar. 28, 2018)............................................24

*Wiltz v. Christus Hosp. St. Mary*, 2011 WL 1576932 (E.D. Tex. Mar. 10, 2011),
    *r&r adopted,* 2011 WL 1576929 (E.D. Tex. Apr. 25 2011).................................................34

*Word v. N. Miss. Med. Ctr., Inc.*, 2010 WL 2540597 (N.D. Miss. June 17, 2010)...................25

## Civil Rules
Fed. R. Civ. P. 56(c) ....................................................................................................................14

## Regulations
29 C.F.R. 1601.12(b) ...................................................................................................................15

Plaintiff Jessica Cheatham ("Plaintiff") was subjected to sexual harassment, gender discrimination, and retaliation throughout her career with Defendant Schlumberger Technology Corporation ("STC," "the Company," or "Defendant"). As set forth herein, Plaintiff has raised triable issues of fact as to her claims—and presented this Court with direct evidence of retaliation and discrimination. This Court should deny Defendant's Motion for Summary Judgment.

## I.    NATURE AND STAGE OF PROCEEDINGS

On September 1, 2020, Plaintiff Jessica Cheatham joined this lawsuit by filing a First Amended Complaint ("FAC") and asserting claims for (1) Gender Discrimination; (2) Hostile Work Environment; (3) Retaliation; and (4) Constructive Discharge in violation of Title VII.[1] STC's Motion to Dismiss was denied on December 10, 2020 (ECF No. 32).  Docket Call is scheduled for January 9, 2023. (ECF 77 at 1.)

## II.    STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

**1.    Should this Court grant STC's Motion for Summary Judgment as to Plaintiff Cheatham's claims and Affirmative Defense No. 38?[2]**

*No.* Defendant's motion for summary judgment should be denied because Plaintiff easily raises triable issues of fact on her retaliation, gender discrimination, hostile work environment, and constructive discharge claims. ***First,*** Plaintiff Cheatham's claims are all timely under the well-established "single filing rule," which allows her to "piggyback" off Plaintiff Saidman's December 21, 2017 EEOC Charge—rendering *all* of her claims timely. (*Infra* Section V(A).) ***Second,*** Plaintiff's retaliation and gender discrimination claims easily survive summary judgment because she has provided direct evidence of discrimination and retaliation—which, standing alone, precludes summary judgment on those claims—and, regardless, Plaintiff has satisfied the

---

[1] ECF No. 16. This case originally asserted both class claims and individual claims. On September 15, 2022, Plaintiffs informed the Court that they did not intend to move for class certification (ECF No. 94).

[2] **Standard of Review:** *infra* Section IV.

*McDonnell Douglas* burden-shifting test. (*Infra* Section V(B).) ***Third,*** Plaintiff has raised triable issues of fact as to her hostile work environment claim. (*Infra* Section V(C).) ***Fourth,*** Plaintiff's constructive discharge claim must survive summary judgment. (*Infra* Section V(D).) ***Finally,*** Plaintiff has demonstrated that summary judgment as to Affirmative Defense No. 38 is improper. (*Infra* Section V(E).)

### III.     FACTUAL BACKGROUND

#### A.     <u>Plaintiff Cheatham's Employment History and Performance at Schlumberger</u>

Plaintiff is a woman who holds a Bachelor of Science in Chemical Engineering (specializing in Petroleum Engineering), a minor in Statistics, and a Bachelor of Arts in Chemistry/Biochemistry.[3] Plaintiff worked for Schlumberger as a field engineer from September 24, 2017 until she was constructively discharged on January 2, 2020.[4]

In September 2017, Plaintiff began working for STC as a Drilling and Measurements ("D&M") Field Engineer Trainee, at a Grade 98 (G98) compensation level.  (Ex. 26 at 2.) In August 2018, Plaintiff was promoted to the Measurements While Drilling (or "MWD") position of "D&M Field Engineer-Measurements, G99."[5] In the spring of 2019, she was promoted to "Field Engineer X-Trained, G09" with a substantial increase in base salary as a result of the pay grade promotion.[6] As a cross-trained field engineer (or "DX"), Plaintiff could perform both the role of an MWD and a Directional Driller (or "DD").[7]

Plaintiff's performance ratings and appraisals reflect that she was fully satisfying STC's

---

[3] Declaration of Jessica Cheatham ("Cheatham Decl.") ¶¶ 1-3.

[4] Ex. 1 (Cheatham Dep.) at 39:19-40:16; 226:3-228:6.

[5] Ex. 27; Ex. 28.

[6] Ex. 31; Ex. 26 at 1 (annual base salary increased from $36,400 at G99 to $65,000 at G09).

[7] Ex. 5 (Cissell Dep.) at 128:17-19; 158:21-159:4.

expectations.[8] As recognized in her 2018 review, Plaintiff **performed "remarkabl[y]"** and would **"take [the] location into [the] next level of performance."** (Ex. 29 at 5.)

## B. Plaintiff Suffered Pervasive Sexual Harassment and Gender Discrimination Starting in January 2018

### 1. In January 2018, Plaintiff Filed a Sexual Harassment Complaint After Her Supervisor Threatened to "Bend Her Over His Knee and Spank Her"

Early in her employment, Plaintiff was sexually harassed by her supervisor in the field— Lead Hand Kenny Fusilier ("Lead Hand Fusilier")—while he was training Plaintiff.[9]

On January 8, 2018, Lead Hand Fusilier told her: "If you mess up this survey, **I'm going to bend you over my knee and spank you and you will like it."** (Ex. 25 at 2 (emphasis added).[10]) The next day, Lead Hand Fusilier trained Plaintiff to clean a tool by saying: **"There's a male end with the pin, and if you lift the skirt up there's a pussy, do you see the pussy. . . . Now to clean the pussy . . . begin to thrust in and out, repeatedly. . . . [Y]ou thrust up and down . . . , keep going deeper while t[h]rusting up and down, and as you go deeper and deeper keep thrusting the pin up and down. . . . [Y]ou know all about this."** (*Id*.)

Plaintiff immediately reported Lead Hand Fusilier's harassment to Health, Safety, and Environment (HSE) Process Lead Lori Rose, Service Delivery Manager Conrad Kinch, and HR Representative Andres Hoyos Zorilla (who advised Plaintiff it was "a male industry" and that "men just say that kind of stuff.").[11]

---

[8] Ex. 26 at 1 ("Meeting Expectations" rating in 2017 and 2018); Exs. 16-19 (each of Plaintiff's 2018 appraisals rated her as **Excellent** in numerous aspects); Ex. 17 (1/11/18 appraisal praising her "very good attitude" and "eagerness to learn"; concluding that "[o]verall [Plaintiff] did a very good job"); Ex. 18 (7/22/18 appraisal: "Overall [Plaintiff] did an outstanding job"); Ex. 19 (8/11/18 appraisal: "[Plaintiff] will make a competent lead hand"); Ex. 16 (8/15/18 appraisal: Plaintiff "will be an excellent lead hand."); *see also* Ex. 3 (Podorsky Dep.) at 138:20-23 ("These are positive -- positive feedback.").

[9] The lead hand "supervise[s] the Schlumberger crew on location." (Ex. 14 (Aguilar Dep.) at 111:25-112:6, 29:4-19); Ex. 1 (Cheatham Dep.) at 99:20-102:21 (Lead Hand Fusilier was responsible for teaching Plaintiff).

[10] Ex. 1 (Cheatham Dep.) 91:9-93:2; 99:20-102:21.

[11] Ex. 1 (Cheatham Dep.) at 103:11-106:5, 115:14-117:12, 123:4-125:5; Ex. 12 (Zorilla Dep.) at 33:21-36:20; *see also*

## 2. Between February 2018 and February 2019, Plaintiff Was Subjected to Continuing Sexual Harassment on Rigs—and STC Did Nothing

In February 2018, Field Specialist Leslie Bullard reprimanded Plaintiff for wearing shorts, telling her that she was "**asking for it,**" and Bullard **"did not want to see any of the men out there get any sexual harassment charges."**[12] Workforce Coordinator Riley Swanston ("WFC Swanston"), who was responsible for staffing Plaintiff, *knew about this incident and did nothing*.[13]

Plaintiff was subjected to numerous sexist comments between July 2018 and September 2018, including the Lead Hand on the Precision 576 rig accusing Plaintiff of being **"just one of those [ ] girls" in the oilfield** who was **"trying to sleep around"** and having to work with a company man who refused to call Plaintiff by her name, did not want a woman on the rig, and had asked Workforce Coordinator Jermaine Allen ("WFC Allen") to replace Plaintiff with a man.[14]

When Plaintiff was attending Slim Pulse School in early 2019, a male colleague asked her what **"special favors"** she had performed to advance her career and made a crude sexual **"hand job"** gesture with his hand while their male colleagues laughed.[15] Plaintiff reported this to her Field Development Engagement Manager Alessandra Ruy ("FDE Mgr Ruy"), one of the individuals who was responsible for developing her career.[16] FDE Mgr Ruy took *no action* in response to Plaintiff's complaint because she "**didn't take this as something serious,**" even admitting in her deposition that she **"wouldn't . . . focus on . . . whatever [Plaintiff] was calling**

---

Ex. 25 (Plaintiff's written complaint to Zorilla); *cf.* Ex. 42 at 3 (North American Land Human Resources Manager Joya Bradley remarking she could believe an STC HR Rep would write off harassing comments as jokes, "I have [s]een a lot in my 20+ years of HR.")

[12] Ex. 1 (Cheatham Dep.) at 142:7-143:7.

[13] Ex. 35 (text messages between DX Robert Hargrave (who was training Plaintiff) and WFC Swanston referring to Plaintiff wearing "booty shorts" and confirming WFC Swanston was aware that she was reprimanded for her attire).

[14] Cheatham Decl. ¶ 4; Ex. 1 (Cheatham Dep.) at 148:22-151:1.

[15] Ex. 1 (Cheatham Dep.) at 181:11-183:6.

[16] Ex. 1 (Cheatham Dep.) at 186:11-188:1 (complaint to FDE Mgr Ruy); Ex. 11 (Bradley Dep.) at 47:4-48:8 (FDE Mgr Ruy responsible for developing Plaintiff's career).

**harassment"** because she didn't want to "promote" such complaints of gender discrimination.[17]

## C. In September 2019, Plaintiff Reported Gender Discrimination and Was Promptly Retaliated Against

Starting in late summer 2019, Plaintiff experienced ongoing gender discrimination while working on the Nabors X48 (Chevron) rig. She complained to multiple people about one male colleague demeaning her shortly after she arrived on the rig.[18] Then, on September 4, 2019, Directional Driller Stephen Laroux ("DD Laroux") refused to train Plaintiff, and in front of the rig crew told Plaintiff that he "d[id]n't see [her] making it out here working on this rig as a DX."[19] DD Laroux treated his male colleagues—but not Plaintiff—with respect and professionalism.[20]

Plaintiff promptly reported this incident of gender discrimination to the male manager overseeing the rig, Products Service Delivery Manager Dana Lasher ("PSDM Lasher") on September 4, 2019.[21] It is undisputed that PSDM Lasher did *nothing* about Plaintiff's complaint. *See* Ex. 43 at 3 (HR interview of PSDM Lasher: "[Plaintiff] called [PSDM Lasher] to report that Stephen Laroux had been unprofessional and/or disrespectful due to a comment that Stephen made to her while on Nabors X48. No further actions taken following the call."); Ex. 9 (Garcia Dep.) at 34:6-10 ("Q. So Dana Lasher did not take any action after [Plaintiff] reported Stephen Laroux to him; is that right? A. Yes.") (objection omitted).[22]

---

[17] Ex. 6 (Ruy Dep.) at 248:25-253:24; 168:4-169:1.

[18] A male Directional Driller named Brian Guilbeau called Plaintiff "fucking illiterate" in front of everyone on the rig (which she understood to be solely based on the fact that she was a female DX), prompting her to complain to three separate people: Jermaine Allen, Dana Lasher, and a Directional Driller named Mike Moore. (Cheatham Decl. ¶ 8; Ex. 1 (Cheatham Dep.) at 203:3-205:22.)

[19] Ex. 53 at 3; Ex. 1 (Cheatham Dep.) at 206:21-207:21.

[20] Ex. 53 at 3; Ex. 1 (Cheatham Dep.) at 201:12-202:12, 206:22-207:12.

[21] Cheatham Decl. ¶ 10; Ex. 53 at 3 (Plaintiff's EthicsLine complaint: "I reported this immediately to the Schlumberger manager of the client [Dana Lasher.]")

[22] *See also* Cheatham Decl. ¶ 11; Ex. 54 at 1 (HR findings: "I also conclude that. . . once [Plaintiff] reported [comments] to the PSD Manager [Dana Lasher] . . . he didn't follow up or document any of the performance issues that led to this problem.").)

### 1. Following Plaintiff's Complaint, STC Banned Her from Chevron Rigs

Plaintiff reported gender discrimination to PSDM Lasher on September 4, 2019. (*See supra* Section III(C).) **Just _two days later_, PSDM Lasher (with the assistance of WFC Jermaine Allen) banned Plaintiff from ever working on a Chevron rig again.**[23] Notably, PSDM Lasher testified that Plaintiff was both the <u>only</u> person that he could remember banning from a client's rigs *and* the <u>only</u> female rig worker (other than the other plaintiff named in this lawsuit) whom he knew to have complained about gender discrimination.[24]

STC contends that Plaintiff was banned from Chevron rigs because of a single (and minor) incident in which she approached a rig in her vehicle at 5-7 miles per hour, which—according to STC—is "too fast."[25] However, instances of speeding by STC employees are common and do not typically lead to meaningful discipline, and male DD Laroux had driven the same speed at a rig without consequence.[26] Further, PSDM Lasher only raised the issue of Plaintiff's driving **_after_** she called him on September 4 to complain about DD Laroux's discrimination.[27] Afterwards, PSDM Lasher contacted WFC Allen and asked him "to never send [Plaintiff] to a Chevron rig again."[28]

### 2. PSDM Lasher and WFC Allen Banned Plaintiff from Chevron Rigs Without Satisfying Prescribed Prerequisites for Doing So

STC *requires* managers to apply an accountability matrix, document any issues, and

---

[23] *See* Cheatham Decl. ¶ 12; Exs. 20-21 (September 5, 2019 text messages from Plaintiff: "Probably shouldn't have told [PSDM Lasher] anything, just took the bs. I don't want to not be allowed to come back to Chevron. [DD Laroux] has worked out here for him about a year. . . . Should have kept my mouth shut"); Ex. 21 at 2 (September 6, 2019 text message from Plaintiff: "I'm off Chevron. Just found out"); *see also* Ex. 4 (van Vliet Dep.) at 39:22-25 (admitting that "[a]t least from September . . . to January" Plaintiff "was blacklisted from Chevron.").

[24] Ex. 10 (Lasher Dep.) at 34:11-18; 36:4-12.

[25] Cheatham Decl. ¶ 10; ECF No. 96-15 (Lasher Decl.) ¶¶ 6, 8.

[26] Cheatham Decl. ¶ 10; Ex. 39 at 2 (email referring to multiple employees speeding: "We have received several text message alerts for employees speeding[.]"); Ex. 13 (Rose Dep.) at 126:1-16 ("But [speeding is] not a -- an offense that is going to get -- that's going to get someone terminated for speeding one time or two.").

[27] (Cheatham Decl. ¶ 10.) Plaintiff's text message apologizing to PSDM Lasher for this driving incident was also sent *after* she reported gender discrimination to him. *Id.*

[28] Ex. 43 at 3.

schedule coaching sessions *before* removing an employee from a rig. (Ex. 48 at 1-3.) In addition, the issues leading to the employee's removal must be documented and raised with the employee.[29]

PSDM Lasher and WFC Allen were well-aware of these requirements, which were memorialized in an email to them ten months before they removed Plaintiff from Chevron rigs:

> We're seeing a trend develop where more field hands are being run off rigs - for a variety of reasons - without any coaching and/or formal documentation taking place. We must remember that a field hand being run off a rig is a very significant event that is disruptive to both the business and that field hand's motivation level. Going forward, **I've instructed the [Workforce Coordinators] to not carry out any crew change as a result of a run-off before the associated accountability review was performed and coaching session held or scheduled**.

(Ex. 48 at 2 (emphasis added).)

**PSDM Lasher and WFC Allen did not satisfy <u>any</u> of these requirements prior to removing Plaintiff from all Chevron rigs.** Indeed, PSDM Lasher confirmed that he did <u>not</u> document the driving incident; issue Plaintiff a written warning or require her to attend coaching sessions; apply the Accountability Matrix; report the incident to Plaintiff's direct or second-line manager; or even speak with Plaintiff directly about the incident.[30]

### 3. There is No Reliable Evidence that Chevron Requested Plaintiff's Removal

Based on inconclusive <u>hearsay</u> testimony by WFC Allen, Defendant claims that "Chevron asked STC not to send [Plaintiff] to its jobs going forward." (Dft.'s Br. at 7.) However, **PSDM Lasher testified *multiple times* that he had <u>no memory</u> of the Chevron client requesting that Plaintiff be removed from its rigs.**[31] In addition, the HR interview notes with WFC Allen and

---

[29] Ex. 9 (Garcia Dep.) at 52:11-24.

[30] *See* Ex. 10 (Lasher Dep.) at 24:4-17 ("Q. Okay. Did you document this driving issue described here? A. Not that I can recall. Q. Did you issue Plaintiff a written warning? A. Not that I can recall. Q. Did you have her attend any coaching sessions? A. Not that I can recall. Q. Did you speak with her directly about these issues? A. Not that I can recall. Q. Did you report this to her second-line manager? A. Not that I can recall. Q. Did you apply an accountability matrix to her? A. Not that I can recall."); *see also* Ex. 43 at 3 (Mr. Lasher "did not communicate the incidents to [Plaintiff's] manager or to his [second-line manager] as *he didn't think it was necessary*.").

[31] Ex. 10 (Lasher Dep.) at 28:17-25 ("Q.[] So you have no memory of the Chevron client telling you that Plaintiff

PSDM Lasher do <u>not</u> state—implicitly or explicitly—that Plaintiff was removed at Chevron's request.[32] Further, less than a month earlier, Chevron personnel had praised Plaintiff's work ethic, emphasizing: "<u>I want you to stay with Chevron</u>."[33]

## D.    On September 7, 2019, Plaintiff Filed an EthicsLine Complaint Alleging Gender Discrimination and Retaliation

On September 7, 2019 (the day after learning she was banned from all Chevron rigs), Plaintiff filed an EthicsLine complaint that alleged both gender discrimination (based on DD Laroux's discriminatory conduct towards her) and retaliation (stemming from PSDM Lasher's decision to ban Plaintiff from all Chevron rigs immediately after reporting her complaint).[34] Plaintiff escalated her complaints to other employees when, as of October 2019, she had not heard back regarding her EthicsLine complaint.[35]

## E.    Following Plaintiff's Complaint, Human Resources Engaged in Communications Reflecting Direct Evidence of Retaliatory and Discriminatory Animus

### 1.    HR Disclosed Plaintiff's Confidential Complaint to FDE Mgr Ruy, Who Accused Plaintiff of "Using the Female Card"—a Communication Which HR Relied Upon in its Investigation

On September 18, 2019, Human Resources Representative Fernando Ojeda Garcia ("HR Rep Garcia") disclosed Plaintiff's confidential EthicsLine complaint to FDE Mgr Ruy. (Ex. 40 at 1.) After identifying Plaintiff as the complainant (*id.*), FDE Mgr Ruy accused Plaintiff of using

---

should not be [staffed] on Chevron rigs again? A. I don't recall that specific request."); 51:10-18 ("Q. [] Do you now recall the Chevron client asking you that Plaintiff be removed from all Chevron rigs in the future? A. No, I don't recall that. Q. So, again, you have no memory of a conversation with the Chevron client in which they asked for Plaintiff to be removed from all rigs, Chevron rigs in the future? A. Yeah, I don't remember that conversation.").

[32] Ex. 43 at 2-3; *see also* Ex. 9 (Garcia Dep.) at 36:25-37:14 (interview notes do not say Chevron requested Plaintiff's removal and admitting that he was not positive whether the client requested Plaintiff's removal); 32:6-14, 33:11-20 (interview notes accurately reflected entire conversation with WFC Allen and PSDM Lasher).

[33] Ex. 23 (emphasis added); *see also* Ex. 22 ("Yeah you do bust your ass.").

[34] Ex. 53 at 2-4.

[35] In October 2019, Plaintiff reported the discrimination and harassment she had experienced to NAL HR Mgr Bradley, Permian Basin HR Services Manager Jarrien McCoy, and Resource Manager Nadim Mikati; however, nothing improved. (Cheatham Decl. ¶ 22.)

"the female card," telling HR Rep Garcia:

> [Plaintiff] is very complicated to deal with . . . I understand her point, but **what I've heard from one of the DD field sups[36] is that 'she uses the female card a lot' with this exact wor[d]s[.]** . . . [S]he blames that it's not easy to be a female 'DD' . . . everybody knows we are [i]n a male dominated environment[.]

(Ex. 40 at 2 (emphasis added).) HR Rep Garcia testified (and FDE Mgr Ruy agreed) that *this communication may have been the reason FDE Mgr Ruy was listed as an individual interviewed regarding Plaintiff's complaint.*[37]

### 2. While the Investigation Was Ongoing, HR Rep Garcia and FDE Mgr Ruy Openly Communicated Discriminatory and Retaliatory Views About Plaintiff

In late October 2019, Plaintiff sent HR Rep Garcia a private message stating that "[i]t[']s tough out there in the field, with everything I've had to put up with over the course of my 2 yrs . . . [i]t's never going to change" and further explained that she did not want to "have to put up with a field of guys that will never change."[38] HR Rep Garcia did not respond to Plaintiff's comments. Instead, *he copied and pasted Plaintiff's private messages to FDE Mgr Ruy as evidence that Plaintiff was playing "the female card"*:

> Fernando Ojeda Garcia 12:32 PM (pasting Plaintiff's private messages to him): "[I]'m ready to take my practical skills/engineering degree and put to use doing something that gives me a more work/life balance. And not have to put up with a field of guys that will never change. . . . Its tough out there in the field, with everything I've had to put up with over the course of my 2 yrs"
>
> Alessandra Castilla Ruy 12:32 PM: **she uses the female card every time**
>
> Fernando Ojeda Garcia 12:32 PM: **yep**

(Ex. 41 at 5.) HR Rep Garcia further revealed his bias by invoking gender stereotypes to describe

---

[36] FDE Mgr Ruy testified that she believed the field supervisor was Hank Hebert. Ex. 6 (Ruy Dep.) at 268:20-269:5. Notably, Plaintiff complained to DD Field Supervisor Hebert about DD Laroux's gender discrimination and sexual harassment. (Cheatham Decl. ¶ 14.)

[37] Ex. 9 (Garcia Dep.) at 43:11-44:4; Ex. 6 (Ruy Dep.) at 276:5-15.

[38] Ex. 30 at 1, 2 (messages sent at 11:58 AM and 12:04 PM).

Plaintiff—the complainant in an ongoing investigation he was leading. (*Id.* at 3 ("She is . . .working

them being so nice . . . *I know this lady[;] she is not like that[;] she is just sweet talking to them.*")

(emphasis added); Ex. 9 (Garcia Dep.) at 68:13-25 (he "didn't think she was that nice").)

## F.     After Being Told That Plaintiff "Uses the Female Card," HR Rep Garcia Failed to Adequately Investigate Her Complaint

HR Rep Garcia's "investigation" into Plaintiff's complaint failed to comply with STC's

policies in numerous ways. ***First,*** in contravention of Company policies,[39] HR Rep Garcia did <u>not</u>

interview Plaintiff (the complainant) or DD Laroux (whom Plaintiff accused of discrimination).[40]

HR Rep Garcia conceded under oath that he should have interviewed DD Laroux.[41] ***Second,*** he

failed to interview *any* of the individuals who actually witnessed the event and instead interviewed

FDE Mgr Ruy (who had nothing to do with the complaint).[42] ***Third,*** he did not even notify DD

Laroux or PSDM Lasher that a complaint had been filed against them.[43]

On November 22, 2019, HR Rep Garcia issued findings which were as flawed as the

underlying "investigation." (Ex. 52.) With respect to Plaintiff's **discrimination** allegations, he

concluded that "[b]ased on *the interviews with involved parties* my conclusion is that there [was]

no evidence of gender discriminatory conduct." (Ex. 54 at 1.) But it is undisputed that he failed to

interview *any* of the involved parties or anyone who may have witnessed the event.[44] With respect

---

[39] *See* Ex. 52 ¶ 3; Ex. 49 at 10-13.

[40] Ex. 9 (Garcia Dep.) at 23:20-24; 41:1-2.

[41] Ex. 9 (Garcia Dep.) at 42:25-43:4.

[42] *Compare* Ex. 49 at 11 ["Interview any individuals who have witnessed any of the alleged incidents and/or any individuals who have allegedly experienced similar incidents.") *and* Ex. 52 (listing individuals interviewed) *with* Ex. 44 at 4 (stating that rig crew members witnessed the incident, none of whom were interviewed) *and* Ex. 9 (Garcia Dep.) at 44:14-23 (FDE Mgr Ruy did not witness the incident and had not, to his knowledge, experienced similar incidents). In addition, HR Rep Garcia did not have a second interviewer present. (*Compare* Ex. 52 ¶ 17 ("[I]nterviews should be conducted by at least two interviewers.") *with* Ex. 9 (Garcia Dep.) at 26:9-11 (no second interviewer).

[43] *Compare* Ex. 49 at 10 ("Promptly bring to the alleged harasser attention that a complaint has been made against him/her.") *with* Ex. 9 (Garcia Dep.) at 43:5-7 *and* Ex. 10 (Lasher Dep.) at 45:8-10 (PSDM Lasher and DD Laroux were never notified that Plaintiff filed a complaint against them).

[44] Ex. 9 (Garcia Dep.) at 44:24-46:21.

to Plaintiff's allegations of **retaliation**, he ***made no findings at all***—despite knowing her complaint alleged retaliation.[45]

## G. Plaintiff Was Not Staffed on Rigs from September 2019 through January 2020 in Retaliation for Her Previous Complaints

Between September 11, 2019 and January 2, 2020, STC did not staff Plaintiff on _any_ rigs.[46] STC's failure to staff Plaintiff resulted in a significant loss of compensation[47] and prevented her from obtaining her promotion to Grade 10.[48]

**At least 62 similarly situated male employees (*i.e.*, D&M field personnel on the Permian Basin headcount) did receive assignments between September 11, 2019 and January 2, 2020.**[49] Indeed, a former North America Land HR Manager *and* Workforce Coordinator both confirmed during their depositions that it was _unusual for a field engineer to go more than just a few weeks without being staffed_—let alone four months.[50]

Plaintiff diligently searched for work opportunities throughout this time and corresponded with FDE Mgr Ruy and North American Land Human Resources Manager Joya Bradley ("NAL HR Mgr Bradley") about her career progression.[51] **However, FDE Mgr Ruy admitted that getting Plaintiff back in the field "*will work against what they want to do*."** (*See* Ex. 41 at 4

---

[45] Ex. 9 (Garcia Dep.) at 20:23-21:1.

[46] Ex. Cheatham Decl. ¶¶ 18, 25; Ex. 4 (van Vliet Dep.) at 23:4-12, 31:20-32:4; Ex. 58 at 11-12.

[47] *E.g. compare* Ex. 33 ($10,855 (gross pay) - staffed on rig) *with* Ex. 34 ($2,500 (gross pay) - unstaffed).

[48] To be promoted, Plaintiff needed to be staffed on rigs and perform "RSS runs." (Cheatham Decl. ¶ 21; Ex. 6 (Ruy Dep.) at 66:7-11 ("Anybody, to achieve any promotion, had to be working on the rigs."); Ex. 4 (van Vliet Dep.) at 40:12-41:2 (RSS runs are requirements of Grade 10 promotions).

[49] Cheatham Decl. ¶ 20 (identifying eight men she knows were staffed on rigs); Palmer Decl. ¶ 4 (data produced in discovery identifies 62 men who were staffed).

[50] Ex. 11 (Bradley Dep.) at 103:3-12, 221:11-22 (HR Manager testifying that Plaintiff not being staffed since September 10 "might have been too long" and that "the longest" she believed "is normal" for someone to not be staffed would be "about 2 weeks or 3 weeks"); Ex. 8 (Swanston Dep.) at 98:10-13 (Workforce Coordinator testifying that it would be unusual for someone to go four months without being staffed).

[51] *See* Ex. 15 (examples of correspondence by Plaintiff inquiring about work opportunities); Ex. 11 (Bradley Dep.) at 80:16-81:9 (Plaintiff spoke with NAL HR Mgr. Bradley about completing her G10 requirements to be eligible for other Geomarkets)

(emphasis added)), and HR Rep Garcia disapproved of certain attempts to find a position for Plaintiff, saying "**I told [NAL HR Mgr Bradley] and the new HR Mrg here that *I'm totally against it*[.]**" (*Id*. at 2 (emphasis added).)

STC's proclamation that it "repeatedly tried to staff [Plaintiff] during that time" (Dft.'s Br. at 8) is false. In fact, WFC Allen offered Plaintiff only four assignments—two of which he revoked shortly after she accepted them.[52]

## H.    <u>Schlumberger Pressured Plaintiff to Accept a Significant Demotion</u>

On or around April 17, 2019, Plaintiff earned a promotion from Grade 99 rig worker[53] to Field Engineer X-Trained (Grade 9).[54] This promotion resulted in an increased (and guaranteed) base salary and significantly greater bonuses.[55] Then, on November 18, 2019—after Plaintiff complained about gender discrimination, sexual harassment, and retaliation—STC proposed that Plaintiff regress in her career and accept a lower-grade position in Alaska, D&M Field Engineer-Measurements (Grade 99). (Ex. 37 at 1.)

**This was clearly a proposed demotion.** The Alaska position would have required Plaintiff to revert back to her previously held MWD position and Grade 99 paygrade.[56] The position also

---

[52] Ex. 58 at 11-12 (Plaintiff was offered and accepted an assignment in early November 2019; WFC Allen then revoked the offer a few days later) and 14 (Plaintiff was offered and accepted an assignment on December 4; WFC Allen revoked the offer later that day). WFC Allen offered Plaintiff two additional assignments: one in September 2019 that she was unable to accept because she was in Florida caring for her elderly grandmother who had an emergency fall (Ex. 58 at 6), and another in October 2019 that Plaintiff eagerly accepted, only to learn that WFC Allen had assigned someone else to the job when Plaintiff did not immediately respond to his 8:04 a.m. text message (*id*. at 10).

[53] Ex. 26 at 1.

[54] Ex. 31 (letter using the word "*promotion*" twice to describe Plaintiff's ascension from G99 to G09).

[55] *See* Ex. 26 at 1 (the base salary for the Grade 99 position: $36,400.00; base salary for Grade 09 position: $65,000.00); *see also* Ex. 28 (Grade 99 position paid $17.50 per hour) *with* Ex. 31 (the Grade 9 position entitled Plaintiff to a bi-weekly salary of $2,500) *and infra* n.60 (Plaintiff could earn significantly more in daily bonuses as a Grade 9 than a Grade 99).

[56] *Compare* Ex. 28 (August 2018 letter promoting Plaintiff to a Grade 99); Ex. 31 (April 2019 letter promoting Plaintiff from a Grade 99 to a Grade 9); *and* Ex. 37 (November 2019 letter offering Plaintiff an assignment as a Grade 99); *see also* Ex. 24 (text message from a DX telling Plaintiff that the Alaska offer was "like a demotion").

offered Plaintiff significantly less compensation. The standard base salary for Grade 99 field employees was $36,400 per year ($17.50/hour)—**44% less** than the yearly base salary of $65,000 for Grade 9.[57] Further, base salary was not guaranteed for Grade 99 employees, so Plaintiff would have earned *nothing* in Alaska when she was not staffed on a rig.[58] This is particularly important where, as here, Plaintiff had not been staffed for months, and the Alaska position did not guarantee that she would be staffed on a rig by any particular date.[59] Further, according to 2019 D&M field bonus policies, **Plaintiff could earn *hundreds of dollars* more in bonuses *each day* as a Field Engineer X-Trained, G09 than she could as a Field Engineer-Measurements, G99 in Alaska.**[60] Finally, STC *knew* that the Alaska position would be recognized as demotion.[61] Numerous employees pressured Plaintiff to accept this demotion, but she declined. (Cheatham Decl. ¶ 23.)

## I.    Plaintiff Was Constructively Discharged on January 2, 2020

On December 20, 2019, Plaintiff gave two weeks' notice that her last day of employment would be January 2, 2020. (Cheatham Decl. ¶ 25.) In her exit interview with HR Rep Garcia, Plaintiff made clear that she was leaving due to the ongoing gender discrimination, harassment,

---

[57] *See* Ex. 26 at 1. Even assuming a 12.5% Alaska Base Pay Premium (Ex. 37 at 3)—offered presumably due to the increased cost of living in Alaska—the G99 base salary would be only $40,950, <u>37% less</u> than the G9 base salary.

[58] Ex. 9 (Garcia Dep.) at 75:19-23 (as a Grade 9, Plaintiff earned $2,500 bi-weekly regardless of whether she was staffed on a rig); Ex. 4 (van Vliet Dep.) at 94:8-18 (employees paid hourly are not guaranteed any hours).

[59] Ex. 9 (Garcia Dep.) at 79:17-24 (there was no guarantee Plaintiff would be staffed on a rig); Ex. 4 (van Vliet Dep.) at 147:23-25 ("[W]e offered to transfer her to the Alaska district where they may or may not have been able to staff her to a rig."); 94:4-20 (testifying that G99s are paid by the hour but are not guaranteed those hours).

[60] *Compare* Ex. 50 (2019 D&M USL (U.S. Land) Field Bonus Policy)) at 10 (Field Engineer X-Trained G09: Rig Day Bonus: $230; Standby Rate: $90; Reduced Crew Incentive: $60; Reduced Crew (2.0): $150; Key Tech Bonus 2: $100) *with* Ex. 51 (D&M NAO (North America Offshore) Field Bonus Rates) at 18 (field bonus rates for Alaska ("AKA"); D&M Field Engineer-Measurements, G99: Core Bonuses: $47.00; Tier Bonuses: $16.00). *Cf.* Ex. 9 (Garcia Dep.) at 84:23-85:2 ("Q. So would you agree that a Grade 99 field engineer is entitled to less bonuses than a Grade 9 Field Engineer X-Trained? A. Grade 99, less bonus, yes.") (objection and name omitted).

[61] (Ex. 38 at 1 ("her [assignment letter for the Alaska position] was for G99 FE / she's G9 FE-DD currently . . . she's been acting as a night DX here / so obviously she was expecting to keep her job code.").

and retaliation she had faced. (Ex. 45 at 3 ("She wanted to retire here but [the] field was nothing [as] she expected."); 4 ("they didn't want to help a woman as a DD" and Alaska MWD position was a demotion "since she is now a DX G09").) After Plaintiff left, FDE Mgr Ruy continued to dismiss her concerns of discrimination, telling HR Rep Garcia that "**she loved to use the female card to blame on everybody else but herself[.]**" (Ex. 40 at 3-4.)

## IV.    LEGAL STANDARD

Summary judgment can be granted only if "there is _no_ genuine issue as to _any_ material fact and . . . the moving party is entitled to judgment as a matter of law." _Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll._, 719 F.3d 356, 362 (5th Cir. 2013) (citing Fed. R. Civ. P. 56(c)) (emphasis added). In making this assessment, "[courts] consider all the evidence in the record but refrain from making credibility determinations or weighing the evidence; instead, we draw all reasonable inferences in favor of the nonmoving party." _Id_.

## V.    LEGAL ARGUMENT

### A.    Plaintiff's Claims Are Timely

STC argues throughout its brief that Plaintiff failed to exhaust her administrative remedies and her claims are untimely—an argument that the Court has already considered and rejected in connection with STC's Motion to Dismiss.[62] At summary judgment, STC fails to identify any facts or law warranting a different result. Nor can it: Plaintiff's claims are timely under the well-established "single filing rule" as well as the continuing violations doctrine.

Plaintiff Sara Saidman filed a timely EEOC Charge on December 21, 2017 that provided notice of the class-wide nature of her claims. (Ex. 60 at 1 (Saidman EEOC Charge); _see also_ Ex. 60 at 9 (Saidman EEOC Amendment) (on June 27, 2018, Plaintiff Saidman submitted a sworn

---

[62] Dft.'s Br. at 14-15, 17-18, 19-22; ECF No. 32 ("There are plausible claims raised and the case law precedent does not support a summary dismissal based on lack of evidence or plausibility.")

declaration supplementing (or amending) her Charge to clarify that she was alleging gender discrimination and hostile work environment on a class-wide basis).)[63] (*See also* ECF No. 30 (Pls.' Opp. to MTD) at 11-16, and attached exhibits, ECF Nos. 30-1 – 30-10.) Because Plaintiff Cheatham is entitled to "piggyback" off of Saidman's EEOC Charge, all of her claims are timely.

The Fifth Circuit has made clear that "the 'single filing' rule provides that in a **multiple-plaintiff, _non-class action suit_** [in which] one plaintiff has filed a timely EEOC complaint as to [her] individual claim, co-plaintiffs with individual claims arising out of similar discriminatory treatment in the same time frame need not have satisfied the filing requirement to maintain those claims." *Wade v. Lyondell-Citgo Refin.*, 2005 WL 8168888, at *9 (S.D. Tex. Dec. 20, 2005) (emphasis added) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 695 (5th Cir. 1982)); *E.E.O.C. v. Stone Pony Pizza, Inc.*, 959 F. Supp. 2d 967, 970 n.6 (N.D. Miss. 2013) (same). This rule allows a plaintiff to "piggyback" on a previously-filed EEOC charge if: "(1) the plaintiff [is] 'similarly situated' to the person who actually filed the EEOC charge; (2) the charge [has] provided some notice of the 'collective' or 'class-wide' nature of the charge; and (3) the individual who filed the EEOC charge [] actually file[d] a suit that the piggybacking plaintiff may join." *Wade*, 2005 WL 8168888, at *9 (quoting *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 494 (5th Cir. 2001)).

Plaintiff meets all three elements for piggybacking. **_First,_** Plaintiff Cheatham was similarly situated to Plaintiff Saidman. For example, both Plaintiffs: (1) worked for STC in field-based

---

[63] Since the Amendment was "related to or growing out of the subject matter of the original charge," it related back to the filing of Plaintiff Saidman's initial charge. *See* 29 C.F.R. § 1601.12 (b); *see also E.E.O.C. v. Schwan's Home Serv.*, 692 F. Supp. 2d 1070, 1082-83, *objections overruled,* 707 F. Supp. 2d 980 (D. Minn. 2010), *aff'd,* 644 F.3d 742 (8th Cir. 2011) (amended charge asserting class-wide discrimination related back: "[plaintiff] did not seek to add claims of unrelated discrimination . . . but rather indicated in her Amended Charge that the sex discrimination she had experienced by other women. On these facts, this Court concludes that there is a sufficient nexus between the original Charge and the new allegations of class discrimination in the Amended Charge to constitute a like or related charge."); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 891-92 (D. Md. 1995) (plaintiff who initially asserted individual wrongful termination claims could amend charge to include class-wide wrongful termination claims because relation back applied pursuant to 29 C.F.R. 1601.12(b)); *see also* ECF No. 30 (Pls.' Opp. to MTD) at 13-15 (citing cases).

positions on oil rigs during the same general time frame; (2) were subjected to discrimination, harassment, and retaliation throughout their employment, including wrongdoing by *at least three of the same individuals* (including HR personnel); (3) were subjected to common discriminatory policies and practices; and (4) were retaliated against and ultimately terminated after they reported discrimination.[64] Accordingly, because the "gravamen of their complaints is the same," the "similarly situated" requirement is satisfied. *Crawford v. U.S. Steel Corp.*, 660 F.2d 663, 666 (5th Cir. 1981) (where "gravamen" of complaints was the same, plaintiffs "similarly situated" even if differences exist).[65] ***Second***, Plaintiff Saidman's Charge provided notice of collective or class-wide discrimination, hostile work environment, and retaliation claims. (*See* ECF No. 30 at 11-16 (Plaintiff Saidman's original EEOC Charge and amended Charge—which *explicitly raised class claims*—put the EEOC on notice of the collective or class-wide nature of the Charge).) ***Third***, Plaintiff Saidman filed a lawsuit (ECF No. 1) for Plaintiff Cheatham to join.

Cheatham's STC employment began on September 24, 2017, less than 300 days prior to Saidman's December 21, 2017 EEOC Charge, as well as the June 27, 2018 amendment that explicitly asserted class claims. **Accordingly, Plaintiff Cheatham's claims accrued within/after 300 days prior to the filing of Plaintiff Saidman's EEOC Charge, and are thus timely**. *See Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003) ("date for determining timeliness was

---

[64] *Compare* Ex. 61 (Cheatham EEOC Charge) *with* Ex. 60 (Saidman EEOC Charge); *see also* ECF No. 16 (FAC) ¶¶ 3-4, 8, 31, 94, 134 (Saidman worked as an MWD on rigs in Texas, New Mexico, North Dakota, and Oklahoma from May 17, 2016 until May 11, 2017, while Cheatham worked as an MWD (and, later, as a DX) on rigs located in Texas, New Mexico, and Oklahoma from September 24, 2017 until January 2, 2020); ¶¶ 3, 4, 29, 34, 37, 46, 53-57, 60-62, 96-100, 108-110, 123 (both Saidman and Cheatham were subjected to discrimination and sexual harassment); ¶¶ 10, 40, 44, 46, 48, 101-103, 105, 106 (Saidman and Cheatham both alleged wrongdoing by three of the same individuals: Field Specialist Bullard, HR Rep Zorilla, and HSE Process Lead Lori Rose).

[65] *See also e.g.*, *Fairley v. Wal-Mart Stores, Inc.*, 216 F. Supp. 3d 708, 734-35 (E.D. La. 2016) (plaintiffs who alleged same types of claims [pay discrimination] were similarly situated and could piggyback); *Stone Pony Pizza*, 959 F. Supp. 2d at 970 n.5 (N.D. Miss. 2013) (rejecting argument that plaintiffs were not similarly situated where both alleged that they were denied a position on the basis of their race); *E.E.O.C. v. IPS Indus., Inc.*, 899 F. Supp. 2d 507, 524 (N.D. Miss. 2012) (individuals who held similar positions and "allege similar acts of indiscretion during their employment" were similarly situated for piggybacking purposes).

300 days prior to the filing of the first filed charge."); *Fairley*, 216 F. Supp. 3d at 737 (piggybacked

claims timely from three-hundred days prior to the original Plaintiff's EEOC charge). Indeed,

Plaintiff's claims are clearly timely where the EEOC and STC had "notice of the 'collective' or

'class-wide' nature of [the] charge," within the first 300 days of Plaintiff Cheatham's employment.

*Wade*, 2005 WL 8168888, at * 9; *Frank.*, 347 F.3d at 136.

Plaintiff's claims are also timely under the continuing violation doctrine. There are

numerous allegations that fall within the 300-day period. (*See supra* Sections III(E)-(I) (ineffective

and biased HR investigation; refusal to staff on rigs; demotion; constructive discharge).) Because

these "act[s] contributing to the claim occur[ed] within the filing period, the entire time period of

the hostile environment may be considered by a court for the purposes of determining

liability." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th

Cir. 2017); *Pippins v. Miss. Dep't of Pub. Safety*, 2022 WL 1110332, at *10 (S.D. Miss. Apr. 13,

2022) ("allegations of retaliation [formed] a continuing violation" and were "not time-barred"

where events outside limitations period "could conceivably point to a retaliatory motive").[66]

**B.**      **Plaintiff's Discrimination and Retaliation Claims Must Survive Summary Judgment**

Plaintiff's claims are supported by both direct and circumstantial evidence. In an

employment discrimination case based on circumstantial evidence, the *McDonnell Douglas*

burden-shifting framework applies: "if the plaintiff establishes a *prima facie* case of

discrimination, the burden of production shifts to the employer to provide a legitimate, non-

discriminatory reason for the action . . . If the defendant offers such a justification, the burden

---

[66] "There is no evidence [STC] took any intervening act . . . that would have severed the continuing nature of the acts." *Heath*, 850 F.3d at 737. Because STC's "persisting and continuing system of discriminatory practices in promotion or transfer" extended past November 1, 2019, Plaintiff's hostile environment claim is timely raised. *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997); *see also E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007); *Salinas v. Kroger Tex., L.P.*, 163 F. Supp. 3d 419, 432 (S.D. Tex. 2016) (violation stemmed from a "pattern of discriminatory treatment").

shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination." *Haire*, 719 F.3d at 362-63. However, if the plaintiff provides direct evidence of discrimination or retaliation, the *McDonnell Douglas* framework is inapplicable. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Swierkiewicz v. Sorema N. Am.*, 534 U.S. 506, 511 (2002) ("[I]f a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case.").

### 1.    Direct Evidence

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003). Direct evidence can be established by "remarks [that] are (1) related to sex; (2) proximate in time to the employment action; (3) made by an individual with authority over the employment decision; and (4) related to the employment decision at issue." *Vance v. Union Planters Corp.*, 209 F.3d 438, 442 (5th Cir. 2000). **_Here_**, Plaintiff provides direct evidence of gender discrimination and retaliation:

- HR Rep Garcia and FDE Mgr Ruy had numerous conversations in which they accused Plaintiff of **"using the female card"** *after* she filed a complaint alleging gender discrimination and retaliation.[67]

- During her deposition, when FDE Mgr Ruy was questioned about her accusation that Plaintiff used "the female card," she testified that she believed *Plaintiff* was **"actually _creating_ the gender discrimination."**[68]

- FDE Mgr Ruy admitted that getting Plaintiff back in the field **"will work against what they want to do,"** and HR Rep Garcia disapproved of certain attempts to find a position for

---

[67] *Supra* Section III(E); Ex. 40 at 2; Ex. 41 at 5.

[68] Ex. 6 (Ruy Dep.) at 290:9-291:6 ("I understand that she is using - the argument, or the fact that she's a female to say that things are difficult for her, again, not that there is gender discrimination. She is making the gender discrimination, so let's say there was no gender discrimination. Then she arrives and starts saying, 'Oh, you are doing this to me because I'm a female.' 'It's hard for me because I'm a female,' so she is actually creating the gender discrimination here, where, let's say, there is no gender discrimination, you know . . . That's my interpretation.") (emphasis added).

Plaintiff, saying "**I told [NAL HR Mgr Bradley] and the new HR Mrg here that *I'm totally against it*[.]**"[69]

These comments were clearly related to gender and retaliation. They were made concurrently with the adverse actions complained of and directly relate to the employment decisions at issue. Finally, both FDE Mgr Ruy and HR Rep Garcia were closely involved in Plaintiff's claims and/or career development.[70] Accordingly, based on the direct evidence alone, the Court can and should deny summary judgment.

### 2.    Circumstantial Evidence Further Justifies Denial of Summary Judgment

Even if there were no direct evidence (which there is), Plaintiff's claims still survive summary judgment under the *McDonnell Douglas* burden-shifting framework.

#### (i)    *Prima Facie Cases of Retaliation and Gender Discrimination*

"The burden of establishing a prima facie case . . . is <u>not onerous</u>." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012), *as revised* (June 22, 2012) (emphasis added). Here, Plaintiff easily states a prima facie case for retaliation and gender discrimination.

#### a)    <u>Retaliation</u>

A *prima facie* case of retaliation requires the plaintiff to show "that (1) she engaged in activity protected by the statute, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action." *Haire*, 719 F.3d at 367.

***First*,** Plaintiff easily satisfies the **protected activity** requirement: (1) on September 4, 2019, Plaintiff reported gender discrimination by DD Laroux to PSDM Lasher;[71] (2) on September 7, 2019, Plaintiff filed an EthicsLine complaint that alleged gender discrimination and retaliation;

---

[69] *Supra* Section III(G); Ex. 41 at 2, 4 (emphasis added).

[70] Ex. 11 (Bradley Dep.) at 47:4-48:8 (FDE Mgr Ruy responsible for developing Plaintiff's career); *supra* Sections III(E)-(F) (HR Rep Garcia responsible for investigating Plaintiff's complaint); Ex. 30 (HR Rep Garcia tells Plaintiff that he is searching for a position for her).

[71] Cheatham Decl. ¶ 10; Ex. 43 at 3 (PSDM Lasher told HR that Plaintiff called him to report DD Laroux.)

*STC does not dispute that this complaint constituted protected activity*;[72] (3) in late October 2019, Plaintiff told HR Rep Garcia that "[i]ts tough out there in the field, with everything I've had to put up with over the course of my 2 yrs . . . It's never going to change" and stated that she did not want to "have to put up with a field of guys that will never change."[73]

These complaints satisfy the protected activity requirement. *See Lopez v. Donahoe*, 94 F. Supp. 3d 845, 858-59 (S.D. Tex. 2015) (internal complaint of treatment which employee has a "reasonable belief" violates Title VII is sufficient). *Roberts v. Lubrizol Corp.*, 2013 WL 12099843, at *7 (S.D. Tex. June 28, 2013) (internal complaints to management and HR).

***Second***, Plaintiff was subjected to **adverse employment actions** when she was (1) banned from working on all Chevron rigs; (2) not staffed on any rigs from September 11, 2019 through December 2019; (3) pressured to accept a demotion to a Grade 99 MWD position in Alaska; and (4) constructively discharged. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("firing, . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" are adverse actions); *Evans v. City of Houston*, 246 F.3d 344, 353 (5th Cir. 2001) (demotion); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (adverse actions are actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination").

Unable to dispute that Plaintiff's removal from all Chevron rigs[74] and constructive discharge[75] constitute adverse actions, STC only takes issue with the failure to staff and the Alaska

---

[72] Ex. 44 (EthicsLine Complaint); Dft.'s Br. at 18 (acknowledging this constituted protected activity).

[73] Ex. 30 at 1, 2.

[74] STC's own 30(b)(6) deponent testified that Plaintiff's removal from Chevron rigs "obviously hurt her at the time" and was a significant factor that contributed to her failure to be staffed on any rigs for four months. (*See* Ex. 4 (van Vliet Dep.) at 156:21-157:1; 157:15-21.)

[75] *See Gonzalez v. Smith Int'l, Inc.*, 899 F. Supp. 2d 622, 638 (S.D. Tex. 2010) ("A 'constructive discharge' can be an adverse employment action"); *infra* Section V(D) (discussing constructive discharge elements).

demotion. _First_, STC erroneously argues that Plaintiff "continued to draw her full salary until her employment ended in 2020." (Dft.'s Br. at 18.) But this conveniently ignores the fact that Plaintiff was not entitled to the lucrative daily bonuses (which could exceed base pay) when she was not staffed.[76] _See Lopez_, 94 F. Supp. 3d at 860 (adverse action when plaintiff "suffered a reduction in the hours he was allowed to work—and by extension his ability to earn"); _see also Haire,_ 719 F.3d at 367-68 (adverse action when plaintiff was no longer entitled to overtime). _Second_, STC attempts to paint the Grade 99 MWD demotion as a "lateral transfer" (Dft.'s Br. at 9)—but this is belied by the record. The evidence shows that this position (which came with a _significant decrease in compensation, grade, title, and job duties_) was a demotion.[77]

Plaintiff has easily satisfied the **causal connection** element. The adverse actions all took place within a few days (and a maximum of three weeks) of Plaintiff's complaints: PSDM Lasher banned Plaintiff from all Chevron rigs just **two days** after she reported gender discrimination to him on September 4, 2019. (_Supra_ Section III(C)(3).) Plaintiff was _never staffed on a rig again_ after September 10, 2019—just **three days** after her EthicsLine complaint and **six days** after her September 4 complaint.[78] Finally, in late October 2019, Plaintiff complained about discrimination to HR Rep Garcia, who in turn accused her of using "the female card," expressed frustration that she was being paid a salary, and admitted that he told other employees that he was "totally against" finding a new rig assignment for her. (_Supra_ Section III(E).) Just over **three weeks** later (on November 18, 2019), Plaintiff was offered a demotion to a position where her base salary and bonuses would be dramatically reduced and she would only be paid if she was actually staffed to

---

[76] _See_ Ex. 50 (2019 D&M USL (U.S. Land) Field Bonus Policy)) at 10 (identifying day rates and job bonuses for Field Engineer X-Trained G09). _See also supra_ n.47.

[77] _Supra_ Section III(H). Regardless, even a lateral transfer is an adverse employment action if—as is the case here—it results in "a significant change in benefits." _Burlington Indus.,_ 524 U.S. at 761.

[78] _Supra_ Section III(G); _see also_ Cheatham Decl. ¶¶ 18-22.

a rig—for which there was no guarantee. (*Supra* Section III(H).)

**This close temporal proximity between Plaintiff's complaints and the adverse actions is <u>by itself</u> sufficient for the causation element:** "At the prima facie stage, a plaintiff can establish causation simply by showing close enough timing between his protected activity and his adverse employment action." *Alston v. S & P Glob., Inc.*, 2022 WL 19504, at *4 (S.D. Tex. Jan. 3, 2022) (Hoyt, J.) (<u>four months</u>); *see also Evans,* 246 F.3d at 354 (<u>four months</u>); *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015) (<u>six-and-a half weeks</u>). The causation element is therefore satisfied. This is especially true where, as here, the temporal proximity is combined with other evidence reflecting retaliatory intent. (*See infra* Sections V(B)(1)-(3).)[79]

STC wrongly claims that "the individuals who made the scheduling and transfer decisions did not know that Cheatham had complained."[80] Multiple 30(b)(6) deponents confirmed that staffing decisions were made by (1) the PSD Manager (Lasher); (2) the Workforce Coordinator (Allen); (3) the FDE Manager (Ruy); and (4) the NAL HR Manager (Bradley).[81] ***Every single one of these individuals*** **knew about Plaintiff's complaints:** Plaintiff reported discrimination directly

---

[79] *Compare Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 653 (5th Cir. 2012) (causation can also be shown by demonstrating that the alleged performance issues were never documented or that the company deviated from policy and procedures in carrying out the adverse action) *with supra* Sections III(C)(1) (driving incident and alleged performance issues never documented) and III(C)(2) (STC failed to follow protocol in banning Plaintiff from Chevron rigs).

[80] Dft.'s Br. at 18. The cases cited by STC (Dft.'s Br. at 18 (*St. John* and *Roberson*)) are easily distinguishable because there, the *sole* decisionmaker was unaware of the protected activity—whereas here, numerous employees (all with knowledge of Plaintiff's complaints) were responsible for staffing.

[81] Ex. 5 (Cissell Dep.) at 239:4-15 (PSD managers, workforce coordinators, FDE Mgrs, and HR managers responsible for staffing); Ex. 4 (van Vliet Dep.) at 70:10-72:5 (workforce coordinators, PSD mangers, and FDE Mgrs involved in staffing); 27:15-28:25 (WFC Allen and the PSD Manager (Lasher) were responsible for staffing Plaintiff); Ex. 3 (Podorsky Dep.) at 120:23-121:2 (workforce coordinators and PSD managers staff employees). There is also evidence suggesting that **HR Rep Garcia** (who was aware of Plaintiff's September 4, September 7, and late October 2019 complaints) was involved in Plaintiff's staffing. (Ex. 30 (HR Rep Garcia writes that numerous employees—"and myself of course"—are looking for staffing options). Finally, **Francois van Vliet** (WFC Allen's supervisor) was also aware of Plaintiff's complaint. (Ex. 4 (van Vliet Dep.) at 114:24-115:7.)

to WFC Allen (in July 2019) and PSDM Lasher (on September 4, 2019).[82] PSDM Lasher and WFC Allen were aware of her EthicsLine complaint at least as early as September 18, 2019, when they were interviewed by HR.[83] FDE Mgr Ruy learned almost immediately of Plaintiff's September 7, 2019 and late October 2019 complaints.[84] NAL HR Mgr Bradley was aware of Plaintiff's complaint as early as September 30, 2019.[85] If there is any dispute about these individuals' knowledge (which there is not), that is a dispute of material fact for the <u>jury</u> to resolve.

### b)    <u>Gender Discrimination</u>

A plaintiff alleging gender discrimination under Title VII must show "(1) that she is a member of a protected class; (2) that she was qualified for the position [held]; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Haire*, 719 F.3d at 363. **STC does not seriously contest the first three elements of Plaintiff's *prima facie* claim of gender discrimination.**[86] Instead, STC erroneously disputes that Plaintiff was "treated less favorably than other similarly situated employees outside her class."[87]

This element is easily satisfied because Plaintiff has identified similarly situated male employees who did not suffer the same—or any—adverse actions under nearly identical

---

[82] Cheatham Decl. ¶¶ 8, 10; Ex. 43 at 3 (confirming complaint to PSDM Lasher).

[83] Ex. 43 at 2-3.

[84] *Supra* Section II(E)(1) (citing Ex. 40 at 1 and Ex. 41 at 5).

[85] Ex. 47.

[86] *See* Dft.'s Br. at 15-17 (limiting prima facie discussion to the fourth element). Plaintiff (a woman) is a member of the protected class who was qualified for the position she held and was subjected to adverse employment actions when she was (1) banned from working on all Chevron rigs; (2) not staffed on any rigs from September 11, 2019 through January 2, 2020; (3) pressured to accept a significant demotion to a Grade 99 MWD position in Alaska; and (4) constructively discharged. Defendant briefly and erroneously suggests that the Alaska job was a lateral transfer (Dft.'s Br. at 17), but the argument fails for the reasons set forth above. (*See supra* Section III(H).)

[87] This analysis "does <u>not</u> require identical circumstances." *Lockett v. Hous. Indep. Sch. Dist.*, 2017 WL 2224041, at *6 (S.D. Tex. Apr. 21, 2017) (citing *Turner*, 675 F.3d at 893 ("'[N]early identical' is not synonymous with 'identical' . . . a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical")).

circumstances: ***First,*** Plaintiff identified eight men (Tope Adekola, Edgar Caballo, Stephen Laroux, Michael Moore, Nathan Martin, Tony Ramos, Brandon Swann, and Owen Shropshire) who received rig assignments between September 11, 2019 and January 2, 2020—and the data produced in discovery identifies at least 62 men included in the Permian Basin headcount who were staffed during this time period.[88] ***Second,*** Plaintiff identified a male DX (Tope Adekola) who was not pressured to accept a demotion.[89] ***Third,*** Plaintiff identified one male, DD Laroux (with whom she worked on the Chevron rig), that she observed driving at a rig at the same speed as her with no repercussions.[90] *See Williams v. Sheriff*, 2018 WL 1542150, at *2 (W.D. La. Mar. 28, 2018) (last element satisfied by evidence that similarly situated men engaged in the same conduct but were not as severely disciplined). In addition, Plaintiff has presented evidence that she worked in a "male dominated environment" where men were treated with greater "respect" and "professionalism" than she was.[91] Accordingly, Plaintiff satisfies the fourth element of a *prima facie* case. *See De La Garza v. City of Corpus Christi*, 2014 WL 12586753, at *6-7 (S.D. Tex. Nov. 5, 2014) (fourth element satisfied because plaintiff "was treated differently than other trainees"); *Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 285 (5th Cir. 2012) (fourth element satisfied by "evidence that [plaintiff] was treated more harshly" than opposite sex).

### 3. There Are Triable Issues of Fact as to Pretext

A plaintiff can establish pretext "by presenting 'evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Gosby v.*

---

[88] Cheatham Decl. ¶ 20; Palmer Decl. ¶ 4.

[89] Cheatham Decl. ¶ 24.

[90] Cheatham Decl. ¶ 10; *supra* n.26 (citing Ex. 39); *see Williams*, 2018 WL 1542150, at *2 (last element satisfied by evidence of similarly situated men who engaged in the same conduct but were not as severely disciplined).

[91] *See* Ex. 53 at 3; Ex. 1 (Cheatham Dep.) at 203:13-23, 205:2-9, 214:1-20; Ex. 40 at 2 (Ruy admitting that "everybody knows we are [i]n a male dominated environment"); *see also* Ex. 6 (Ruy Dep.) at 169:2-172:13 (it is "not normal" and "an exception" to have women in the field).

*Apache Indus. Servs., Inc.*, 30 F.4th 523, 527 (5th Cir. 2022); *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021). "[T]he Supreme Court has made clear that, in order to create a genuine issue as to pretext, [plaintiff] 'is not limited to presenting evidence of a certain type'; rather, the evidence used to show pretext "may take a variety of forms." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 316-17 (5th Cir. 2015). The same evidence may be used to establish a *prima facie* case and pretext. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143, 148-49 (2000).

> **(i)**     ***STC's Reasons for the Adverse Actions Are Unworthy of Credence***
>
> **a)**     **<u>Removal from Chevron Rigs</u>**

While STC attempts to attribute Plaintiff's permanent removal from Chevron rigs to a client request, **the evidence indicates this is, *at best*, a disputed fact for the jury to determine.** (*See supra* Section III(C)(5) (PSDM Lasher testified multiple times that he had <u>no memory</u> of the Chevron client requesting Plaintiff's removal, and HR Rep Garcia's interview notes make no mention of Chevron making the request).) *See Gosby*, 30 F.4th at 528 (pretext shown by evidence of "inconsistent explanations and the absence of clear criteria" in an employer's decision-making).

The fact that Plaintiff's permanent removal was allegedly due to a minor driving incident—in which Plaintiff drove 5 to 7 miles per hour at a rig—further supports a finding of pretext. Male DD Laroux had driven similarly at a rig without consequence, and STC employees are rarely meaningfully disciplined for speeding. (*Supra* Section III(C)(1).) *See Word v. N. Miss. Med. Ctr., Inc.*, 2010 WL 2540597, at *3-4 (N.D. Miss. June 17, 2010) (pretext established where "similar conduct on the part of [an employee outside the protected class] was not disciplined in the same manner.")

STC's failure to follow protocol prior to removing Plaintiff from all Chevron rigs also provides evidence of pretext. In *Vana v. Jacobs Eng'g Grp. Inc*, 2015 WL 12550940 (S.D. Tex. Feb. 23, 2015) (Hoyt, J.), this Court found that pretext existed because the defendant did not issue

a verbal and written warning (or even notify the plaintiff's supervisors) prior to taking the adverse action as required by company policy. *Id.* at *3. **The same is true here:** PSDM Lasher and WFC Allen banned Plaintiff from Chevron rigs without documenting the alleged issues, applying an accountability matrix, or scheduling coaching sessions as required. (*Supra* Section III(C)(4).) "Based on this evidence a reasonable factfinder could conclude that the stated reason for [banning Plaintiff from Chevron rigs] is a pretext for gender discrimination and that gender, or participation in an activity protected by Title VII, was a determinative factor in motivating her [removal from Chevron rigs]." *Vana*, 2015 WL 12550940, at *3; *see also Anderson v. La. Dep't of Transp. & Dev.*, 836 F. App'x 304, 308 (5th Cir. 2020) (employer's **"fail[ure] to follow its own disciplinary protocol in reprimanding [plaintiff]** . . . gives rise to a dispute of material fact. The [employer] was not entitled to summary judgment in this case.").

Indeed, even when not required by company policy, taking adverse action without prior warning is evidence of pretext. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 638-39 (5th Cir. 2011) (pretext where plaintiff not previously warned regarding conduct); *Hart v. Starkville Ford-Lincoln-Mercury, Inc.*, 2012 WL 426440, at *5 (N.D. Miss. Feb. 9, 2012) (same).[92]

### b)  <u>Failure to Staff Plaintiff for Four Months</u>

STC contends that Plaintiff was not staffed on rigs from September 11, 2019 through December 2019 because of an "oil and gas downturn" during that time period. (Dft.'s Br. at 16, 17.) However, **the evidence clearly shows that at least 62 similarly situated _male_ employees _were_ staffed during this time period.** (*See* Palmer Decl. ¶ 4; Cheatham Decl. ¶ 20.)

STC also attempts to excuse its failure to staff Plaintiff on her being banned from Chevron

---

[92] *Cf. Laxton v. Gap Inc.*, 333 F.3d 572, 580 (5th Cir. 2003) (finding pretext where issues were not documented); *E.E.O.C. v. Ryan's Pointe Hous., L.L.C.*, 2022 WL 4494148, at *7 (5th Cir. Sept. 27, 2022) (plaintiff was not counseled regarding her performance and was given "limited time" to correct the deficiencies).

rigs and allegedly "run off" Cimarex and Parsley rigs.[93] As noted above (*supra* Section III(C)(5)), triable issues of fact exist regarding Defendant's banning of Plaintiff from all Chevron rigs. And there are __no__ documents to support Plaintiff being "run off" the Parsley or Cimarex rigs.[94]

### c) Grade 99 MWD Demotion

STC claims that Plaintiff was offered the Alaska Grade 99 MWD demotion due to an alleged "drop off in STC's work in the Permian Basin." (Dft.'s Br. at 17.) However, STC staffed at least 62 similarly situated male employees (i.e. D&M field personnel on the Permian Basin headcount) on rigs during this time frame (Palmer Decl. ¶ 4), and Plaintiff is personally aware of at least one similarly situated male employee who worked in the Permian Basin (DX Tope Adekola) who was not offered a demotion. (Cheatham Decl. ¶ 24.)

### (ii) *Evidence of Retaliatory Intent*

In addition to casting doubt on the veracity of STC's purported "reasons" for taking adverse actions (*supra* Section V(C)), Plaintiff has presented evidence of retaliatory intent:

*__First__*, the sworn testimony and documentary evidence reflects retaliatory intent:

- FDE Mgr Ruy testified that her opinion that Plaintiff used "the female card" was relevant and important for HR Rep Garcia to know "**[s]o he knows, for example, that [he's investigating] a person who complains about everything**" because, if he simply took Plaintiff at her word, "**[he] might make a bad judgment and believe that whatever the person is saying is correct[.]**" (Ex. 6 (Ruy Dep.) at 267:13-268:1; *see also id.* at 261:8-21 (testifying that Plaintiff complained "**[b]ecause she had already complained before, and because she used to complain about everything that happened to her**").

- HR Rep Garcia and FDE Mgr Ruy also exchanged communications (simultaneously with accusing Plaintiff of using "**the female card**" after complaining) suggesting that she was not being staffed in retaliation for her complaints. (*Supra* Section III(G) (FDE Mgr Ruy admitted that getting Plaintiff back in the field "will work against what they want to do," and HR Rep Garcia disapproved of certain attempts to find a position for Plaintiff, saying "I told [NAL HR Mgr Bradley] and the new HR Mrg here that I'm totally against it[.]")

---

[93] Dft.'s Br. at 7.

[94] Deponents vaguely cited "job performance" as a justification, but could not provide specifics—and conceded that those issues had not, to their knowledge, been documented. (Ex. 4 (van Vliet Dep.) at 237:6-23; Ex. 7 (Allen Dep.) at 113:17-20.)

- The sworn statement of one male employee explained that female employees STC deemed "problematic" would stop being offered rig assignments, and he personally observed a female coworker being removed from rigs after she reported sexual harassment to her manager. (Ex. 55 (Maddox Decl.) ¶¶ 10-11.)

***Second***, HR Rep Garcia's deeply flawed "investigation" into Plaintiff's complaint amounts to pretext. (*Supra* Sections III(E)-(F).)[95] "An employer's investigatory choices might, depending on the facts of a particular case, be suspicious in a way that renders the defendant's explanation . . . unworthy of credence and permits an inference of discrimination [or retaliation]." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 828-29 (5th Cir. 2022) (quotations omitted).

***Third***, the abrupt change in STC's staffing immediately after Plaintiff complained is evidence of pretext. STC admits that "[Plaintiff's] progress towards promotion was on time" and that her "career advancement was at least consistent with (if not better than) similar engineers."[96] Crucially, **before her complaint in September 2019, Plaintiff was regularly and consistently staffed to rigs**. (Cheatham Decl. ¶ 18.) But STC suddenly stopped staffing Plaintiff *immediately* after her September 2019 complaints. (*Supra* Section III(G).) **A Workforce Coordinator responsible for staffing testified it was "*unusual*" for a field employee to be unstaffed for four months.**[97] The abrupt change in Plaintiff's staffing immediately after complaining is sufficient for pretext. *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 244-45 (5th Cir. 2016) (plaintiff with

---

[95] *See Owens*, 33 F.4th at 830 (failure to interview supervisors regarding infractions constituted pretext: "If the employer had interviewed the supervisor, therefore, it may have found that its basis for the terminations was mistaken. Its failure to interview was consequently suspicious and 'a significant circumstance contributing to the inference of discrimination.'") (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008) (company failed to give plaintiffs "the benefit of the doubt during the investigation . . . [and] seemingly relied only on evidence to the detriment of the [plaintiffs] and failed to interview key witnesses.").

[96] Dft.'s Br. at 18; *see also supra* Section III(A) (Plaintiff was a strong performer).

[97] Ex. 8 (Swanston Dep.) at 98:10-13; *see also* Ex. 11 (Bradley Dep.) at 103:3-19, 221:11-22 (HR Manager testifying going four months without staffing Plaintiff was "too long" and that the longest employees normally went without being staffed was "about 2 weeks or 3 weeks").

previously strong career trajectory became a "problem employee" only after making complaint).[98]

**_Finally,_** the close temporal proximity between Plaintiff's complaints and the adverse action (only a few days, and at most three weeks), combined with the evidence above, is sufficient for pretext. Temporal proximity accompanied by other evidence of pretext *"can be sufficient to survive summary judgment." Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999); *see also Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019).

### (iii) *Evidence of Discriminatory Intent*

Plaintiff has also provided evidence of gender discriminatory intent, including:

- Numerous communications between HR Rep Garcia and FDE Mgr Ruy in which they accused Plaintiff of **"using the female card"** *after* she filed a complaint alleging gender discrimination and retaliation.[99]

- FDE Mgr Ruy's testimony that *Plaintiff* was actually "*creating*" the gender discrimination by opposing unlawful discrimination at STC.[100]

- FDE Mgr Ruy also testified that she did not question Plaintiff about her gender discrimination and sexual harassment complaints because: "**I don't want to promote something that shouldn't be promoted.**"[101]

- Evidence of a discriminatory and hostile work environment experienced by Plaintiff and other women as evidenced by:

  o Regular harassing and discriminatory comments directed at Plaintiff,[102] and Human Resources personnel whose response was **"men just say that kind of stuff . . . you're in a man's industry, they're bound to say stuff like that."**[103]

---

[98] *See also Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 620 (5th Cir. 2020) (plaintiff was terminated "in the immediate aftermath" of complaining).

[99] *Supra* Section III(E); Ex. 40 at 2; Ex. 41 at 5.

[100] *Supra* n.68 (citing complete testimony).

[101] Ex. 6 (Ruy Dep.) at 162:2-13, 165:5-20; *see also id*. at 168:10-22 ("I think the person would say something more specific, and not something like this . . . Not, like, try to claim that there is a problem with [being] a female or this or that, right, so I wouldn't promote any type of comment like this.").)

[102] *Supra* Section III(B).

[103] Ex. 1 (Cheatham Dep.) at 124:22-125:4.

- o An STC 2020 survey of female field employees concluding that "**Most Women are missing . . . [a] [s]afe and harassment-free working environment**."[104]

- o *Five* female employees who worked on rigs in the field submitting sworn statements discussing the gender discrimination and sexual harassment at STC—one of whom (Sara Saidman) experienced discrimination from three of the same individuals as Plaintiff Cheatham.[105]

- o A male employee stated under oath that he had observed male employees making **"inappropriate and sexist comments"** about their female coworkers, including calling them **"whores"** or remarking that a woman was **"just on a rig to sleep around."**[106]

These comments are sufficient to preclude summary judgment—even if STC denies making them.[107] "Statements such as these evincing the type of animus prohibited by Title VII can be considered at the pretext stage." *Rite Way Serv.*, 819 F.3d at 245; *see also Goudeau v. Nat'l Oilwell Varco, L.P.,* 793 F.3d 470, 478 (5th Cir. 2015) (discriminatory comments, along with other evidence, could support a jury finding of discriminatory intent);[108] *Langley v. Int'l Bus. Machs. Corp.*, 2019 WL 11626423, at *5 n.7 (W.D. Tex. Dec. 23, 2019), *r&r adopted,* 2020 WL 8052973 (W.D. Tex. Feb. 28, 2020) ("Pattern or practice evidence can be relevant to the pretext inquiry.") (citing cases).

Finally, Plaintiff's evidence of similarly situated men who were treated more favorably

---

[104] Exhibit 46 at 3.

[105] Ex. 60 (Saidman EEOC Charge & Amended EEOC Charge); ECF No. 30-2 (May 15, 2018 Saidman declaration); Exs. 32, 36, 56, 57 (Underwood, Zink, Credaroli, and Galan declarations). *See supra* n.64.

[106] Ex. 55 (Maddox Decl.) ¶ 9.

[107] *Sloan v. Monroe Cnty. Sheriff's Dep't*, 2012 WL 1189028, at *5 (N.D. Miss. Apr. 9, 2012) ("There is also, however, a question as to whether these comments were even made, as the individuals deny making them. The court is not allowed to make credibility determinations, as that is strictly a function of the jury, and this issue cannot be resolved without doing so.").

[108] *See also Reeves*, 530 U.S. at 151-52 (evidence of discriminatory animus established pretext); *Sloan*, 2012 WL 1189028, at *5 (discriminatory comments precluded summary judgment); *McGuire v. City of Austin*, 2013 WL 12116542, at *2 (W.D. Tex. Sept. 23, 2013) (denying summary judgment even where "the evidence in the record regarding Defendant's liability . . . is between minimal and non-existent" and "[t]he evidence leading to trial which does exist consists of conversations Plaintiff had with various parties with little to no confirmation in the record.").

than her is evidence of pretext.[109] *Watkins*, 997 F.3d at 283 (similarly situated employees received lesser discipline for same infractions); *Garcia*, 938 F.3d at 244 (same).

### C.     Triable Issues of Fact Exist on Plaintiff's Hostile Work Environment Claim

A plaintiff alleging hostile work environment must show that "(1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). **STC concedes, as it must, that Plaintiff meets the first two elements of this test.**[110]

The ***third element*** is easily satisfied here because each instance of harassment was clearly based on Plaintiff's gender. (*Supra* Section III(B).) The ***fourth element***[111] is present because the harassment was subjectively and objectively offensive, humiliating, and degrading—and interfered with Plaintiff's ability to complete her work.[112] *Donaldson*, 335 F. App'x at 502 ("calling [plaintiff] 'stupid' and ignorant about the requirements of her job" and making "sexually-suggestive comments" precluded summary judgment); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir.1996) (comments about plaintiff's sexual activity and personal life satisfied fourth element). Finally, the ***fifth element*** is satisfied because she repeatedly reported the harassment and STC failed to take prompt remedial action (*supra* Sections III(C)-(F)). *Donaldson*, 335 F. App'x at 505 (triable issues of fact existed on plaintiff's pursuit of internal

---

[109] *See supra* Section V(B)(2)(i) (a), (b), (c); *see also* Cheatham Decl. ¶¶ 10, 20, 24.

[110] Dft.'s Br. at 22-25.

[111] This element is met if the harassing conduct is "sufficiently severe or pervasive" and "both objectively and subjectively offensive." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501 (5th Cir. 2009).

[112] Cheatham Decl. ¶ 5; Ex. 25 at 2 (describing feeling "embarrassed, disrespected, and uncomfortable in every way" from harassment); Ex. 1 (Cheatham Dep.) at 142:19-143:3 (describing shock, shame and embarrassment from harassment); *see also* Ex. 2 Cheatham Dep. (Confidential) at 242:12-244:3 (describing distress suffered due to experiences at STC.).

complaint procedures; it was not necessary to address whether defendant took prompt remedial action).

STC's attempts to separate each instance of harassment in order to argue that each example, standing alone, is not sufficiently severe or pervasive (Dft.'s Br. at 23-25) must fail.[113] The Fifth Circuit has made clear that courts must "consider the *totality of the circumstances* . . . a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399-400 (5th Cir. 2007); *Donaldson*, 335 F. App'x at 503 ("Disaggregating the claims robs the incidents of their cumulative effect . . . a discrimination analysis must concentrate not on individual incidents, but on the overall scenario") (quotations omitted).

## D.     Plaintiff's Constructive Discharge Claims Easily Survive Summary Judgment

To prove constructive discharge, the plaintiff must show that "a reasonable party in [her] shoes would have felt compelled to resign." *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 841 (5th Cir. 2015). In making this determination, the Court considers seven factors: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id*. **Here, summary judgment is improper because every single factor except for one (the fifth) has been satisfied.** *See Gonzalez v. Smith Int'l, Inc.*, 899 F. Supp. 2d 622, 641 (S.D. Tex. 2010) (denying summary judgment where plaintiff satisfied *only one* of the seven factors).

---

[113] The cases cited by STC (*Stewart*, *Gray*, and *Lopez*) do *not* support this contention. Instead, those courts all evaluated whether the harassment at issue constituted a continuing violation—an inquiry that is *entirely separate* from the question of whether the harassment affected a term, privilege, or condition of Plaintiff's employment.

The ***first factor***, the ***fourth factor***, and the ***seventh factor*** are satisfied because the Grade 99 MWD demotion that Plaintiff was pressured to accept would have resulted in a reduction in compensation, fewer job responsibilities, and a lower Grade. (*Supra* Section III(H).)

The ***second factor***, the ***third factor***, and the ***fourth factor*** are also present here because Plaintiff was not staffed on any rigs for four months, which resulted in a significant reduction in salary and the complete elimination of her job duties. (*Supra* Section III(G).)

Finally, the ***sixth factor*** is easily satisfied. Plaintiff suffered years of discrimination and harassment, only to be retaliated against and mocked by Human Resources when she complained. (*Supra* Section III(E).)[114] *See Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 2010 WL 11565530, at \*7 (N.D. Tex. Feb. 5, 2010) (denying summary judgment on constructive discharge claim where plaintiff resigned due to "discriminatory treatment, harassment, and retaliation combined to create conditions that led to his constructive discharge").[115]

As Plaintiff stated during her exit interview: "She wanted to retire here but [the] field was nothing [as] she expected." (Ex. 45 at 3.) Plaintiff resigned her employment after she was not staffed for four months, pressured to accept a demotion, and had suffered years of discrimination and retaliation that STC refused to correct[116] despite receiving multiple complaints.[117] On these

---

[114] The sexual harassment provides a basis for constructive discharge even if this Court grants summary judgment on the hostile work environment claim. *See Nassar*, 2010 WL 11565530, at \*7 ("alleged deficiencies" in hostile work environment claim "are not fatal to [plaintiff's] claim for constructive discharge.").

[115] *See also E.E.O.C. v. SDI of Mineola, L.L.C.*, 2022 WL 4127167, at \*6-7 (E.D. Tex. Aug. 17, 2022), *r&r adopted,* 2022 WL 4125079 (E.D. Tex. Sept. 9 2022) (plaintiffs were sexually harassed and overheard men refer to women as "attention whores" who lied about harassment); *Spikes v. TLG Rests., LLC/The Lewis Izu Grp. Rests., LLC*, 2020 WL 262984, at \*4 (E.D. Tex. Jan. 9, 2020), *r&r adopted,* 2020 WL 248788 (E.D. Tex. Jan. 16, 2020) (male colleagues "engaged in sexual discussions that inevitably humiliated [plaintiff] and encouraged her to resign."); *Vasquez v. Johnson*, 2014 WL 2438380, at \*17 (N.D. Tex. May 30, 2014) (questions of fact existed "in light of other conduct by Defendant's employees"); *Gonzalez*, 899 F. Supp. 2d at 641 (denying summary judgment where plaintiff overheard racial epithets).

[116] When evaluating a constructive discharge claim, "[t]he Fifth Circuit has looked to whether the employee attempted resolution of her concerns before choosing to resign[.]" *Carpenter*, 807 F. Supp. 2d at 596.

[117] Cheatham Decl. ¶¶ 8, 10-11, 13-15, 22; Ex. 59 (on December 5, 2019 Plaintiff texted: "Slb is running me out, I know that").

facts, constructive discharge clearly exists. *See Wiltz v. Christus Hosp. St. Mary*, 2011 WL 1576932, at *10 (E.D. Tex. Mar. 10, 2011), *r&r adopted,* 2011 WL 1576929 (E.D. Tex. Apr. 25, 2011) (plaintiff's supervisors "ignored her constant complaints about [her colleague's] harassing and humiliating conduct for over two years . . . Instead of correcting the situation, [her supervisor] reassigned [plaintiff] to the less desirable graveyard shift and accused her of insubordination . . . A reasonable juror could conclude that the combination of harassing and threatening conduct by [a colleague], coupled with chronic inaction by [defendant] made working conditions so intolerable that a reasonable employee would have felt compelled to resign."); *Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 596 (N.D. Miss. 2011) ("Plaintiff suffered a demotion and a shift change and that Plaintiff made multiple efforts to resolve the situation prior to resigning[.]").

STC claims that Plaintiff was "not blacklisted, or demoted, or in any way singled out" (Dft.'s Br. at 20), but this is belied by the record. (*Supra* Sections III(H) (Grade 99 MWD demotion); III(C) (blacklisted from Chevron rigs); III(E) (Plaintiff was mocked and ridiculed by FDE Mgr Ruy, and HR Rep Garcia HR following her complaint).) The fact that Plaintiff was interested in an office-based position (in order to escape the harassment and discrimination she faced in the field) does not undermine her constructive discharge claim. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444-45 (5th Cir. 2011) ("Unhappy in [his current] department, [plaintiff] sought to maintain his employment with [defendant], but in a different department. When this request was rejected, the situation erupted, eventually compelling [plaintiff] to resign."). Finally, the cases cited by STC are easily distinguishable from this case.[118] Summary judgment should be denied.

---

[118] None of the cases cited by STC involved situations where, as here, six of the seven factors were present.

E.    **Summary Judgment Should Not Be Granted on Affirmative Defense No. 38**

Plaintiff has adduced sufficient evidence to raise a triable issue on whether STC is liable for punitive damages. PSDM Lasher, WFC Allen, and FDE Mgr Ruy all served in managerial capacities.[119] *See Ward v. AutoZoners, LLC*, 958 F.3d 254, 265 (4th Cir. 2020) (employee "served in a managerial capacity" where he was authorized to "transfer an employee from one store to another"); *Glasco v. Aerotek Pro. Serv., Inc.*, 2013 WL 12072538, at *4 (W.D. Okla. Jan. 30, 2013) (employee "served in a managerial capacity" where "[s]he had the authority to end an assignment").[120] That STC may have had anti-discrimination and retaliation policies is not dispositive where, as here, the policies were disregarded.[121] *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 440 (5th Cir. 2022) ("Regarding good-faith efforts, [plaintiff] presented evidence from which the jury could conclude that at least certain of his ethics complaints were ignored by [defendant]."); *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487, at *24 (N.D. Tex. Apr. 30, 2014) (denying summary judgment on punitive damages where there was evidence defendant did not follow its discrimination policy).[122]

## VI.    CONCLUSION

For the reasons discussed above, this Court should deny STC's Motion for Summary Judgment in its entirety.

---

[119] *Supra* Section V(B)(2)(i)(a) (WFC Allen and PSDM Lasher responsible for staffing); Ex. 11 (Bradley Dep.) at 47:4-48:8 (FDE Mgr Ruy responsible for developing Plaintiff's career).

[120] *See also Fresquez v. BNSF Ry. Co.*, 2018 WL 6249686, at *8 n.4 (D. Colo. Oct. 2, 2018) (employee who "supervise[d]" employees "likely. . . ha[d] 'managerial capacity'").

[121] *Supra* Section III(F).

[122] Throughout its brief, Defendant makes much of the fact that two experts STC hired for this case "reviewed Schlumberger's programs, compliant procedures and complaint files." (Dft.'s Br. at 25. *See also id.* at 2-4.) **However, neither of these experts offered any opinion about Plaintiff Cheatham's claims.** Ex. 62 (Smith Dep.) at 92:1-93:7; Ex. 63 (Stockdale Dep.) at 236:14-237:16. In addition, Defendant's expert, Gerald Whitney Smith, confirmed that he was not opining on whether STC enforced its policies regarding discrimination and harassment (Ex. 62 (Smith Dep.) at 143:4-7, 151:7-9, 154:12-15, 165:1-14) *and* withdrew a portion of his opinion now relied upon by STC (*compare id.* at 82:12-84:5 *with* Dft.'s Br. at 2).

Dated: November 3, 2022                              Respectfully submitted,

/s/ Michael D. Palmer
Michael D. Palmer (Admitted *Pro Hac Vice*)
Russell L. Kornblith (Admitted *Pro Hac Vice*)
David H. Tracey (Admitted *Pro Hac Vice*)
Nicole E. Wiitala (Admitted *Pro Hac Vice*)
Carolin E. Guentert (Admitted *Pro Hac Vice*)
Alok K. Nadig (Admitted *Pro Hac Vice*)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
mpalmer@sanfordheisler.com
rkornblith@sanfordheisler.com
dtracey@sanfordheisler.com
nwiitala@sanfordheisler.com
cguentert@sanfordheisler.com
anadig@sanfordheisler.com

Todd Slobin (Texas Bar No. 24002953; Federal ID
No. 22701)
Melinda Arbuckle
(Texas Bar No. 24080773; Federal ID No. 2629125)
**SHELLIST LAZARZ SLOBIN LLP**
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
tslobin@eeoc.net
marbuckle@eeoc.net

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2022, a true and correct copy of the foregoing was served upon counsel of record via ECF.


*/s/ Michael D. Palmer*
Michael D. Palmer