UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JESSICA CHEATHAM,**<br><br>    *Plaintiff,*<br>v.<br><br>**SCHLUMBERGER TECHNOLOGY CORPORATION,**<br><br>    *Defendant.* | Case. No. 4:20-cv-02193<br><br>Hon. Kenneth M. Hoyt<br><br><br>Trial Date:  February 6, 2023 |

### DEFENDANT SCHLUMBERGER TECHNOLOGY CORPORATION'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF NORA OSTROFE

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Schlumberger Technology Corporation ("STC"), who, pursuant to Rules of the Federal Rules of Civil Procedure, files this Motion *in Limine* to exclude testimony, evidence, and expert opinions of Plaintiff Jessica Cheatham's ("Cheatham") economist, Nora Ostrofe, including calculations related to Cheatham's claim for front pay.  In support of the same, STC shows as follows:

### INTRODUCTION & BACKGROUND

Plaintiff Jessica Cheatham filed this suit against her former employer, Defendant Schlumberger Technology Corporation, an oil field services company.  Ms. Cheatham worked for STC as a field engineer from September 24, 2017 until January 2, 2020, during which time she was assigned to drilling rigs in western Texas and southeastern New Mexico.  Cheatham alleges that during her employment, she was

1

subjected to consistent and pervasive sexual harassment, which ultimately resulted in the end of her employment relationship with STC.[1]

In pursuing damages related to the end of her employment with STC, Cheatham retained Nora Ostrofe, an economist, to offer expert testimony on the issue of front pay damages. In making her calculations, Ostrofe made the following assumptions:

> I have assumed that, but for her termination, Ms. Cheatham would have continued to work for Schlumberger until the date at which her compensation in projected post-termination employment equals or exceeds her lost compensation.
>
> Counsel has asked me to assume that, but for discrimination and termination, Ms. Cheatham would have advanced to the Field Engineer II | Grade 10, Product and Service Delivery Manager (PDSM) Grades 12 and 13, and Organizational Unit Product and Service Delivery Manager (OU PDSM) Grades 14 and B06 positions at Schlumberger. Career progression for Grades 10 through 11 based upon the 2/9/22 Oral/Remote Deposition of Sara Podorsky 30(b)(6) Witness.
>
> Counsel has also asked me to assume that in post-termination employment at Halliburton Energy Services, Inc., beginning in 2025, Ms. Cheatham will advance to the following positions at the salaries given in the attached schedules: Field Service Representative, III, Field Professional and II Associate Technical Professional, Technical Professional, and Technical Manager.
>
> I have assumed a net discount rate of 1% for future losses.[2]

Based on the above assumptions (and others that Ostrofe describes as having "mentioned in various portions of this narrative report" and in the "schedules and calculations," included in the report)[3] Ostrofe projected two damage models based on past and future loss tables—one that includes Cheatham's legal obligation to

---

[1] *See* Cheatham's EEOC Charge, dated August 26, 2020, attached as Ex. 61 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [Doc. 99], at ¶¶ 4-5.
[2] *See* Nora Ostrofe Report, attached as Exhibit A, at pp. 4-5.
[3] *Id*. at p. 5.

2

mitigate her damages and, inextricably, one that does not.[4]  Ostrofe's past and future loss tables[5] calculate Cheatham's alleged front pay damages through 2042—*twenty years* into the future.  As articulated further below, Ostrofe's conclusion is unreliable because the length of time for which she calculated Cheatham's alleged front pay damages goes grossly beyond what is allowed by law.

## LAW & ARGUMENT

**A. Legal Standard: *Daubert* and Its Progeny.**

Federal Rule of Evidence 702, along with the tenets of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal court.  Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on **sufficient facts or data**;
>
> c) the testimony is the product of reliable principles and methods; and
>
> d) **the expert has reliably applied the principles and methods to the facts of the case**.[6]

In *Daubert*, the Supreme Court emphasized the district court is assigned the role of gatekeeper to ensure expert testimony is "both reliable and relevant."[7]  Moreover, "to trigger a *Daubert* inquiry, an expert's testimony, or its 'factual basis, data,

---

[4]  *Id*. at pp. 3-4.
[5]  *See* Ex. A Schedules 2.0, 3.0, 5.0, and 5.1.
[6]  Fed. R. Evid. 702 (emphasis added).
[7]  *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 597).

3

principles, methods, or their application,' must be 'called sufficiently into question.'"[8] Once an expert's testimony is challenged, "*Daubert*, in conjunction with…Rule 702, 'imposes a special obligation upon a trial judge to ensure that any and all scientific testimony…is not only relevant, but reliable.'"[9]

### a. The Court as the Gatekeeper.

As gatekeeper, the U.S. Supreme Court directs courts to do "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[10] In doing so, the Court must "make certain that an expert…employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[11] "'The expert's assurances that he has utilized generally accepted [principles] is insufficient'" to meet this burden.[12] As indicated by the Committee Notes to Rule 702—

> The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded).[13]

---

[8] *Rodriguez v. Riddell Sports, Inc.*, 242 F. 3d 567, 580 (5th Cir. 2001) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589)).
[9] *Rodriguez v. Riddell Sports, Inc.*, 242 F. 3d 567, 580 (5th Cir. 2001) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589)).
[10] *Daubert*, 509 U.S. at 593-94).
[11] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).
[12] *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore*, 151 F.3d at 276).
[13] Fed. R. Evid. 702 (Committee Notes, 2000 Amendment).

"Nothing in either *Daubert* or the Fed. R. Evid. requires a [trial court] to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A Court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[14] To be reliable, the "proposed testimony must be supported by appropriate validation - -, i.e., 'good grounds,' based on what is known."[15]

Before a court opens the gate to admit an expert opinion, the proponent of the evidence (*i.e.*, Cheatham) bears the burden of proving the proffered testimony is both reliable *and* relevant by a preponderance of the evidence before the testimony can be admitted.[16] [17] Ostrofe's testimony and conclusions are neither and, as set forth below, are due to be excluded.

### b. Testing for Admissibility: Is the testimony both reliable and relevant?

The *Daubert* opinion provides four non-exhaustive factors to assist in determining whether an expert's opinion is reliable and relevant. Those factors include:

(1) whether the expert's methodology has been tested or is capable of being tested;

(2) whether the theory or technique used by the expert has been subjected to peer review and publication;

(3) whether there is a known or potential error rate of the methodology; and

(4) whether the technique has been generally accepted in the relevant scientific community.[18]

---

[14] *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[15] *Daubert*, 509 U.S. at 590.
[16] Fed. R. Evid. 702 & 403; *Daubert*, 509 U.S. at 595; *Kumho Tire*, 526 U.S. at 138.
[17] *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).
[18] *Daubert*, 509 U.S. at 592-95.

An expert's failure to satisfy any of the four reliability factors recognized in *Daubert* is sufficient to preclude the testimony of a causation expert from testifying at trial.[19]

Further, "[w]hether the expert's opinion is based on incomplete or inaccurate data" is directly relevant to admissibility.[20] Similarly, for an expert's analysis related to the data, <u>each step</u> of the analysis must be reliable. "**<u>The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.</u>**"[21]

### B. Ostrofe's opinions are due to be excluded because they are derived from an inappropriate application of the methodology to the underlying facts and data related to front pay damages.

Front pay is "a prospective make-whole remedy" that can "at best … only be calculated through intelligent guesswork."[22] Recognizing the "speculative character" of awarding front pay, district courts are "accord[ed] wide latitude" in determining front pay.[23] When deciding whether to make a front pay award, courts consider: (1) the length of prior employment, (2) the permanency of the position held, (3) the

---

[19] *Id*. at 509 U.S. at 593-94; *see also Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999) ("*Kumho Tire* 's emphasis on the word "may" should not be misunderstood to grant open season on the admission of expert testimony by permitting courts discretionarily to disavow the *Daubert* factors. On the contrary, the Supreme Court simply recognized the obvious facts that there are many kinds of experts and expertise, that the *Daubert* inquiry is always fact-specific, and that the *Daubert* factors may not all apply even to the admissibility of pure scientific testimony. *Kumho Tire* also stressed that the *Daubert* factors may be relevant to the reliability of experience-based testimony.))

[20] *LaShip, LLC v. Hayward Baker, Inc.*, CA No. 11-0546, 2013 WL 5781688, at *9 (E.D. La. Oct. 25, 2013).

[21] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal citation omitted) (emphasis added). <u>Any</u> unreliable step renders the entire analysis unreliable and, in turn, renders the testimony inadmissible. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3rd Cir. 1994) (emphasis in original). *See also United States v. 38.307 Acres of Land, More or Less*, No. 7:20-CV-00242, 2022 WL 522661, at *5 (S.D. Tex. Feb. 22, 2022).

[22] *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990).

[23] *Id.*

nature of work, (4) the age and physical condition of the employee, and (5) the possible consolidation of jobs and the myriad other non-discriminatory factors which could validly affect the possible employment relationship.[24] Front pay awards must be "*carefully crafted to avoid a windfall to the plaintiff*" because damages for employment discrimination are not meant to be punitive.[25] [26]

In Willich v. Sanderson Farms, Inc., the United States District Court for the Western District of Texas (Waco Division), opined on the appropriate length of time for which an eligible Plaintiff can introduce evidence of front pay. Specifically, the court noted "[the plaintiff] asks the Court to award him front pay to account for five years of lost wages. … Although courts often award front pay for only one or two years, the Fifth Circuit has upheld awards covering a five-year period."[27]

Applying the court's reasoning in *Willich* to the conclusions conclude in Ostrofe's report, both of Ostrofe's damage models (with and without mitigation considered) calculate future projected front pay through the year 2042. Ostrofe's calculations offend the Fifth Circuit's parameters on front pay by at least 15, but as much as **18 years** beyond what is generally accepted. The restrictions make sense because, "[i]n determining the front pay award, the court noted that an award for any longer than five years was too speculative."[28] Circuits throughout the country hold a similar standard for the same obvious reasons. (*See, e.g., Oden v. Wellfirst Techs., Inc.*, No. 2:20-CV-00034, 2022 WL 2375707, at *7 (S.D. Tex. June 3, 2022) (court rejected the plaintiff's request for five years of front pay and held that no front

---

[24] *Reneau v. Wayne Grifin & Sons, Inc.*, 945 F.2d 869, 871 (5th Cir. 1991).
[25] *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007).
[26] *Willich v. Sanderson Farms, Inc., (Processing Div.)*, No. 6:16-CV-340-RP-JCM, 2018 WL 1834517, at *1 (W.D. Tex. Apr. 17, 2018) (emphasis added).
[27] *Id*. (internal citations omitted) (emphasis added).
[28] *Deloach v. Delchamps, Inc.*, 897 F. 3d 815, 822 (5th Cir. 1990) (emphasis added).

7

pay should be awarded because plaintiff was an at-will employee, had only worked for the defendant for a year, was not replaced with a new hire but rather his job was consolidated and given to an existing employee, was not meeting sales expectations, and the entire office subsequently closed); *Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 656 (S.D. Tex. 2019) (court held that the plaintiff's requested 8 years of front pay was excessive and instead awarded her 4 years because plaintiff was an at-will employee and had worked for the defendant for less than 5 years; the defendant had a relatively high turnover rate, she was already receiving liquidated damages, and she would likely be able to find more lucrative employment in the future); *Scudiero v. Radio One of Texas II, LLC*, No. 4:12-CV-1088, 2015 WL 6859146, at *19 (S.D. Tex. Sept. 30, 2015) (court denied the plaintiff's request for three years of front pay and held that he was not entitled to any front pay because he had not used reasonable diligence to obtain substantially similar employment); *Soto v. LCS Corr. Servs., Inc.*, No. 2:12-CV-130, 2013 WL 4012627, at *6 (S.D. Tex. Aug. 5, 2013) (The court denied the plaintiff's request for 5 years of front pay and held that he was entitled to only 1 year. The court reasoned that "given Plaintiff's age and physical condition, Plaintiff should be able to find substitute work with some effort," despite the court's acknowledgement that "Defendant's actions damaged Plaintiff's reputation and handicapped Plaintiff's ability to obtain employment in the law enforcement or security industry in Plaintiff's geographic area, potentially long-term."); and Junaid v. McHugh, No. 2:11-CV-00226, 2013 WL 321567, at *2 (S.D. Tex. Jan. 28, 2013) (The court denied the plaintiff's request for 16 years of front pay and instead granted 4 years. The court found 16 years would be "unduly speculative and unreasonable," although it acknowledged that the plaintiff had worked for the

defendant for over 9 years and had stated that he planned to remain until his retirement. Still, the court found that the plaintiff had not presented sufficient evidence on the stability of his job position and the probable age of his retirement (which he stated as 10 years above the average). The court also found that the plaintiff was unreasonable in his mitigation efforts because he only looked for employment within the federal government); *Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1258 (2d Cir. 1987) (two years); *Snow v. Pillsbury Co.,* 650 F. Supp. 299 (D.Minn. 1986) (three years); *Reeder–Baker v. Lincoln Nat'l Corp.,* 649 F. Supp. 647, 664 (N.D.Ind. 1986) (two years), *aff'd,* 834 F.2d 1373 (7th Cir.1987)).

The Fifth Circuit recognizes that "as a prospective make-whole remedy, front pay at best 'can only be calculated through intelligent guess work."[29]  Further, the five-year marker is the <u>upper limit</u> on the length of time courts will allow a plaintiff to use in calculating front pay.  <u>Most</u> of the time, the limit is even shorter—two to three years.  Ostrofe's front pay calculation for Cheatham is nearly 10-times that amount.  Further still, given the Fifth Circuit has already labeled <u>any</u> practice calculating front pay as, "at best…calculated through intelligent guesswork," certainly Ostrofe's position that front pay should be calculated for 20 years into the future is the type of "guesswork" that fails under Rule 702 scrutiny—especially when, as is the case here, Cheatham worked for STC for just over two years, and she is sufficiently qualified and capable of remaining gainfully employed.

## **CONCLUSION**

---

[29] *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990), holding modified by *Smith v. The Berry Co.*, 198 F.3d 150 (5th Cir. 1999).

WHEREFORE PREMISES CONSIDERED, Defendant STC respectfully requests this Court enter an order (1) precluding Nora Ostrofe from offering any expert opinion testimony in this matter because her opinions are highly speculative, are not based on sufficient facts and data, and results from Ostrofe's misapplication of the methodology to the facts at issues; (2) precluding Plaintiff Cheatham, her counsel, her witnesses, and any other such person appearing before the jury on Cheatham's behalf from mentioning or referencing any amount related to front pay during all aspects of jury selection and trial of this matter; and (3) precluding any evidence before the trier of fact that suggests Cheatham is entitled to front pay for any amount of time longer than what is allowed by the Fifth Circuit (*i.e.*, no more than five years).

In short, STC is entitled to the relief sought herein because Ostrofe's opinion seeking to establish 20 years of front pay runs afoul of Federal Rules of Evidence 401, 402, and 702.  Thus, the same should be excluded.

Respectfully submitted,

/s/ Benjamin P. Kahn

Cecily L. Kaffer (S.D. Tex. Bar No. 2217940)
THE KULLMAN FIRM, PLC
63 S. Royal Street
Suite 1100, Riverview Plaza
Mobile, Alabama 36602
Telephone: (251) 433-1811
Facsimile: (251) 433-1230
E-mail: clk@kullmanlaw.com

Samuel Zurik III (S.D. Texas Bar No. 557386)
MaryJo L. Roberts (S.D. Tex. Bar No. 2220397)
Benjamin P. Kahn (*pro hac vice*)
Benjamin Landau-Beispiel (*pro hac vice*)

THE KULLMAN FIRM, PLC
1600 Poydras St., Suite 1600
New Orleans, Louisiana
Telephone: (504) 524-4162

Facsimile: (504) 596-4114
Email: sz@kullmanlaw.com
Email: mlr@kullmanlaw.com
Email: bpk@kullmanlaw.com
Email: blb@kullmanlaw.com

Setara C. Ozan (*pro hac vice*)

THE KULLMAN FIRM, PLC
600 University Park Place, Suite 340
Birmingham, Alabama 35209
Telephone: (205) 871-5858
Facsimile: (205) 871-5874
Email: sco@kullmanlaw.com

**COUNSEL FOR DEFENDANT, SCHLUMBERGER TECHNOLOGY CORPORATION**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2023, a copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Benjamin P. Kahn*
**Benjamin P. Kahn**
