# Exhibit B

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JESSICA CHEATHAM,          )
                           ) Case No. 4:20-cv-02193
            Plaintiff,     )
                           )
VS.                        )
                           )
SCHLUMBERGER TECHNOLOGY    )
CORPORATION,               )
                           )
            Defendant.     )

------------------------------------
ORAL REALTIME DEPOSITION OF
PHILIP J. CROSS, PH.D.
JANUARY 11, 2023
REPORTED REMOTELY
------------------------------------

ORAL REALTIME DEPOSITION OF PHILIP J. CROSS, PH.D., produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on January 11, 2023, from 9:03 a.m. to 4:57 p.m. Central Time, before Christy Cortopassi, CSR in and for the State of Texas, reported by machine shorthand remotely via Zoom videoconference, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record herein.



Page 24

1  estimating your own damages model with more credible
2  assumptions.  I guess to read the full sentence, I
3  examined how credible the assumptions in the Ostrofe
4  reports are, critiqued them when necessary and estimate
5  my own damages model with more credible assumptions.  Do
6  you see that?
7       A.   I do.
8       Q.   And is it your opinion that the damages model
9  you present in your report is reliable?
10      A.   It is.
11      Q.   And looking at page 15 of your report, Table 1,
12 this table reflects the -- a summary, if you will, of
13 the damages calculation that you did.  Would that be
14 accurate?
15      A.   Yes.  That's accurate.
16      Q.   Okay.  And under your damages model
17 Ms. Cheatham's economic damages are totaled at
18 $1,135,728; is that correct?
19      A.   That's largely correct.  Again, at the risk of
20 being too persnickety, I mention in several occasions in
21 my report that I make certain assumptions that are
22 conservative.  And by conservative assumptions, what I
23 mean is I'm kind of going above and beyond not to put my
24 finger on the scale to kind of make assumptions to
25 plaintiff and defense that would result in a lot of



Page 65

1  It talks about 7.8 percent of respondents indicated they
2  ended their loss calculation at some fixed retirement
3  date.  So I don't believe they're talking about what
4  Ms. Ostrofe said.  But it's not a hundred-percent clear
5  to me what they said what 7.8 percent of what people
6  were doing.  Maybe they're talking about age 65, for
7  example.
8           Because Ms. Ostrofe does end their
9  calculations at a fixed date but it's a fixed date that
10 relies on the SKG data, right?  So my guess is what she
11 did falls into this 70.3 percent but it's a little bit
12 unclear to me.
13          I would have to kind of look into the
14 source material a little bit to kind of figure that out.
15    Q.  Would you agree that the -- with the statement
16 that the SCK work life tables are perhaps the most
17 widely used by economists?
18    A.  I mean, I don't have an opinion that they're
19 the most widely used.  I know they are hopefully used by
20 economic experts.  And I personally like to use them to
21 produce reliable expert testimony.
22    Q.  So would -- did you use the -- did you apply
23 the methodology used by Mr. -- or suggested by Mr. Tucek
24 in this article?
25    A.  Yes.



Page 84

1  accountings of -- in 2061 when she turned 75.
2      Q.  Isn't it the case that David Tucek's article
3  which you rely upon suggests that you actually have to
4  do this, the calculation this way, do a calculation that
5  goes out far beyond age 70?
6      A.  Well, I cap things at age 75 for several
7  reasons.  One of which is I wanted to be able to present
8  Table 4 on one page.  Another reason is, as I said
9  before, the last column there in 2061 says the
10 contributions damage is $11,000 in that year.
11          And you can see the previous year is
12 $40,000, the previous year is $16,000.  So the
13 contribution for damages is dropping rapidly once we get
14 that far out.  So it's certainly the case that had I
15 included additional years beyond 2061 that would have
16 increased my damages calculation.
17          But it wouldn't have increased my damages
18 calculation by quite amount, you know, quite a nominal
19 amount.  And so hence I was comfortable stopping doing
20 my calculations in 2061.
21     Q.  To get back to my question though, to actually
22 do the calculation as David Tucek suggests, though, you
23 would have to do calculations extending beyond age 75,
24 right?
25     A.  Yes.



Page 85

1    MR. KAHN:  Object to the form.
2    A.  So what I'm doing here is -- what I'm doing
3 here is an approximation of the Tucek method.  But it's
4 an accurate enough approximation that I was comfortable
5 with weighing.
6    Q.  (BY MR. PALMER)  Okay.  And, you know, just to
7 kind of put a more fine point on this, it is the case
8 under your calculations that there is a greater than
9 zero probability that Ms. Cheatham would work beyond
10 2061?
11   A.  Yes.  That's correct.
12   Q.  And that there's a greater than zero
13 possibility that Ms. Cheatham would work beyond year
14 2065?
15   A.  Yes.  I would have to go back and look at those
16 transition probability tables but I believe you are
17 correct, yes.
18   Q.  Okay.  So your calculations here omit many
19 years in which Ms. Cheatham had a greater than zero
20 probability of working, correct?
21   MR. KAHN:  Object to the form.
22   A.  That's correct.  But my calculations omit many
23 years but the point that I want to stress is that it
24 doesn't omit many dollars of damages.  And that's why I
25 was comfortable making that approximation.  Because the



Page 86

1  amount of damages we are talking about in these very far
2  out -- out years gets to be quite small.
3      Q.  (BY MR. PALMER)  Did you calculate how much
4  those damages were that were omitted?
5      A.  I believe I did.
6      Q.  You believe you did not?
7      A.  I believe, though, I did.
8      Q.  You did?  And is that included in the report
9  anywhere?
10     A.  So that is a good question.  I'm not sure if
11 the $2,471,233 number there at the bottom of Table 4 is
12 simply the addition of all the previous numbers stopping
13 at 2061 or if it's the number based on the full
14 extension all the way out to the later out years.
15          So I apologize.  But off the top of my head
16 I can't recall if that's the case.  But the reason
17 that I can't -- part of the reason why I can't recall if
18 that's the case as I sit here today, the difference
19 between those two numbers is quite small.
20          So there's no real material effect on my
21 method of doing one or the other.
22     Q.  So looking at Footnote 10 on page 19, you said
23 note that earnings are forecast out to the year in which
24 each plaintiff turned 75?
25     A.  Okay.



Page 87

1   Q.   Does that refresh your recollection about
2   whether that calculation --
3            (Simultaneous crosstalk.)
4   A.   I guess I did calculate it until age 75.
5   That's correct.
6   Q.   (BY MR. PALMER)  And you were saying, though,
7   that you did do a calculation of actually what damages
8   were not included in the report that are for years
9   beyond age 75; is that correct?
10  A.   That's correct.
11  Q.   And is there a reason why you did not include
12  those damages in the report?
13           MR. KAHN:  Form.
14  A.   So as I said before, part of the reason was the
15  exhibit extradition.  I needed to present the
16  information in table 4 in a way that can appear on one
17  page and with numbers big enough that everybody can see
18  what they are.  So, and this need for expedition
19  combined with the fact that this approximation that I'm
20  making is quite an accurate approximation.
21           So ignoring those out years for when
22  Ms. Cheatham is age greater than 25 means I am ignoring
23  some future income that would contribute to her damages
24  but not very much.  We're not talking about half a
25  million dollars or something.



```
1          - - - - - -
                E R R A T A
2          - - - - - -

3

4  PAGE   LINE       CHANGE  FROM              CHANGE TO                REASON

5  ____   ____   See attached document     _____   _____

6  ____   ____   _____    _____   _____

7  ____   ____   _____    _____   _____

8  ____   ____   _____    _____   _____

9  ____   ____   _____    _____   _____

10 ____   ____   _____    _____   _____

11 ____   ____   _____    _____   _____

12 ____   ____   _____    _____   _____

13 ____   ____   _____    _____   _____

14 ____   ____   _____    _____   _____

15 ____   ____   _____    _____   _____

16 ____   ____   _____    _____   _____

17 ____   ____   _____    _____   _____

18 ____   ____   _____    _____   _____

19 ____   ____   _____    _____   _____

20 ____   ____   _____    _____   _____

21 ____   ____   _____    _____   _____

22 ____   ____   _____    _____   _____

23 ____   ____   _____    _____   _____

24 ____   ____   _____    _____   _____
```


```
1        ACKNOWLEDGMENT OF DEPONENT

2
         I,___Philip Cross_____, do
3   hereby certify that I have read the
    foregoing pages,  1 - PGS, and that the
4   same is a correct transcription of the
    answers given by me to the questions
5   therein propounded, except for the
    corrections or changes in form or
6   substance, if any, noted in the attached
    Errata Sheet.
7
    Philip Cross              1/31/2023
8   _____
    WITNESS NAME            DATE
9

10

11

12

13

14

15

16

17

18

19

20

21

22
```

Dr. Philip Cross Deposition Errata

| Cite | Change From | Change To | Reason |
|---|---|---|---|
| 28:6 | Bond rate is set up higher | Bond is honored | Clarification/Transcription Error |
| 29:6 | Data | matter | Transcription Error |
| 29:13 | Forecast in size | Forecasting exercise | Transcription Error |
| 31:8 | Actually, it's for | For example | Clarification/Transcription Error |
| 31:21 | Fine | high | Transcription Error |
| 31:25 | Fine | High | Transcription Error |
| 32:18 | infer | Intra | Transcription Error |
| 32:21 | For the better –for the better to | For | Clarification/Transcription Error |
| 35:4 | Embarking | Speaking | Transcription Error |
| 44:20 | Instrument | Interest rate | Transcription Error |
| 44:22 | Longer | Larger | Transcription Error |
| 48:4 | Inspiration like that | Inclination is that | Clarification/Transcription Error |
| 48:6 | Well enough to | We will have to | Transcription Error |
| 48:16 | Short | Sharp | Transcription Error |
| 57:20 | somewhat | Certainly | Clarification/Transcription Error |
| 67:23 | I'm not a forensic economist | I'm not a surveyor of current practices in damages calculations | Clarification/Transcription Error |
| 71:15 | Senseless | Census | Transcription Error |
| 74:22 | Of | And | Transcription Error |
| 78:23 | identical | transition | Clarification/Transcription Error |
| 85:5 | Weighing | It | Clarification/Transcription Error |
| 87:15 | Extradition | Exposition | Transcription Error |
| 87:18 | Expedition | Exposition | Transcription Error |
| 91:10 | Done all | Data on | Transcription Error |
| 99:4-5 | Of point five | At a point in time | Clarification/Transcription Error |
| 100:23 | tab | Code | Clarification/Transcription Error |
| 100:25 | Created the | Generated the | Clarification/Transcription Error |
| 101:12 | Curve | Code | Transcription Error |
| 102:20 | Regular | Record of | Transcription Error |
| 102:25 | For them in several | For lack of a | Clarification/Transcription Error |

| | | | |
|---|---|---|---|
| 113:20 | draws | Drives | Transcription Error |
| 116:18 | If any | Information | Transcription Error |
| 121:6 | Why I considered option | Somewhat conservative | Clarification/Transcription Error |
| 124:18 | Become irrelevant | Be unavailable | Transcription Error |
| 127:3 | Data at all | method | Clarification/Transcription Error |
| 132:5 | wiry | binary | Transcription Error |
| 138:11 | No | Some stated | Clarification/Transcription Error |
| 147:22-23 | Data paper | Data history | Clarification/Transcription Error |
| 150:21 | Of it | again | Transcription Error |
| 152:2-3 | Yes, incredibly | Idiosyncratically | Transcription Error |
| 154:2 | Universe of | University | Transcription Error |
| 156:8 | Of a level | a detail | Clarification/Transcription Error |
| 158:12 | other | Either | Transcription Error |
| 162:11 | Lower | Higher | Clarification/Transcription Error |
| 165:12 | Was way too much | Was no big deal | Clarification/Transcription Error |
| 166:13 | Relatively, vastly | Really | Clarification/Transcription Error |
| 167:14 | Sheering | Shying | Transcription Error |
| 167:16 | skilled | few | Clarification/Transcription Error |
| 177:4 | perceive | Proceed | Transcription Error |
| 179:7 | mentioning | Omitting | Transcription Error |
| 184:19 | Self-discipline | Sub-discipline | Transcription Error |
| 187:20 | Interim | Entrant | Transcription Error |
| 188:6-7 | All I want to | What I mainly | Transcription Error |
| 191:2 | Animal | Overall | Clarification/Transcription Error |
| 191:18 | Proper | Popular | Transcription Error |
| 194:8 | That just Stuff – writing down | Of any | Clarification/Transcription Error |
| 197:16 | I Don't know | Adopt | Transcription Error |
| 200:7 | An advanced | A PhD | Clarification |
| 211:23 | Estimate report of the female | Estimated billings | Clarification/Transcription Error |