**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **JESSICA CHEATHAM,** | |
| *Plaintiff* | |
| **v.** | **CASE NO. 4:20-CV-02193** |
| **SCHLUMBERGER TECHNOLOGY CORPORATION,** | |
| *Defendant.* | |

---

**DEFENDANT SCHLUMBERGER TECHNOLOGY CORPORATION'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT FOR JUDGMENT AS A MATTER OF LAW**

---

**TABLE OF CONTENTS**

I.      Introduction ................................................................................. 1

II.     Legal Standard............................................................................. 1

III.    Argument...................................................................................... 2

        A.      No reasonable jury would have sufficient evidence to find for
                Cheatham on her claim of gender discrimination (Count One). .......... 2

        B.      No reasonable jury would have sufficient evidence to find for
                Cheatham on her hostile work environment claim (Count Two). ........ 5

                1.      Plaintiff has not proved a hostile work environment under
                        Title VII............................................................................. 5

                2.      When STC had actual or constructive notice of sexually
                        harassing conduct, it took appropriate corrective action. ......... 8

                3.      Plaintiff's harassment claims were not administratively
                        exhausted and are time barred under Fifth Circuit
                        precedent. ........................................................................ 10

                        a.      The continuing violation doctrine does not apply to
                                Cheatham's claims. ................................................. 11

                        b.      The single filing rule / piggybacking doctrine does
                                not apply to Cheatham's claims. .............................. 12

                                i.      First Condition ............................................. 14

                                ii.     Second Condition ......................................... 17

                                iii.    Third Condition ............................................. 18

                        c.      Cheatham's claims are time barred. .......................... 18

        C.      No reasonable jury would have sufficient evidence to find for
                Cheatham on her retaliation claim (Count Three). ......................... 19

        D.      No reasonable jury would have sufficient evidence to find for
                Cheatham on her constructive discharge claim (Count Four)........... 20

                1.      Cheatham's constructive discharge claim is partly based on
                        time barred claims. ......................................................... 20

                2.      Cheatham lacks evidence of constructive discharge. ............. 21

        E.      Punitive damages are not available under the U.S. Supreme Court
                case *Kolstad v. American Dental Ass'n*. ...................................... 22

IV.     Conclusion ................................................................................. 24

Pursuant to Fed. R. Civ. P. 50(a), Defendant Schlumberger Technology Corporation ("STC") moves for judgment as a matter of law on the claims alleged by Plaintiff Jessica Cheatham ("Cheatham"), and on STC's Thirty-Eighth Affirmative Defense to punitive damages.

## I.  INTRODUCTION

STC seeks judgment as a matter of law under Rule 50(a) because the evidence as given to the jury is insufficient to support a verdict in favor of Cheatham's claims for liability and her claim for punitive damages.

## II. LEGAL STANDARD

A party may move for a judgment as a matter of law once the non-moving party has been fully heard on the issue during a jury trial. Fed. R. Civ. P. 50(a)(1). Cheatham has rested her case, as has STC.  Thus, both parties have been fully heard on all issues.

A motion for judgment as a matter of law may "be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The moving party must show "that a reasonable jury would not have [a] legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a)(1).  When considering a motion for judgment as a matter of law, the court reviews all evidence in favor of the non-moving party and makes all reasonable inferences in favor of the non-moving party. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "However, these inferences cannot be based solely on speculation and conjecture." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007). "[T]he court should grant a Rule 50(a) motion not only when the non-movant presents no evidence, but also when there is not a sufficient conflict in substantial evidence to create a jury question." *Oden v. Wellfirst Techs., Inc.*, No. 2:20-CV-00034, 2022 WL 2375705, at *2 (S.D. Tex. June 3, 2022), *appeal dismissed*, No. 22-40404, 2022 WL 18141977 (5th Cir. Sept. 30, 2022) (quoting *Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997)).

Judgment as a matter of law is appropriate when the plaintiff's claim is time barred or otherwise prohibited by the statute of limitations.[1] Likewise, Courts have

---

[1]     *Ware v. Donohoe*, No. 4:13-CV-00980, 2015 WL 520876, at *4 (S.D. Tex. Feb. 9, 2015) ("Therefore, the [] Defendants are entitled to judgment as a matter of law

entered judgements as a matter of law for allegations of a hostile work environment,[2] discrimination,[3] retaliation,[4] and constructive discharge.[5]

## III.   ARGUMENT

### A.   No reasonable jury would have sufficient evidence to find for Cheatham on her claim of gender discrimination (Count One).

Plaintiff has failed to adduce evidence from which a reasonable jury could find that Defendant discriminated against her based on her sex.[6]

In addition to the time-barred claims, *infra*, Cheatham has alleged throughout the trial that STC intentionally discriminated against her on account of gender by not assigning her to rigs after September 10, 2019, thereby reducing her compensation and preventing her from obtaining her Grade 10 promotion, and pressuring her to accept a demotion. To support a *prima facie* case of discrimination, Cheatham must

---

on the plaintiff's [] claim as it is time-barred."); *Guerra v. Commc'ns Workers*, 91 F.3d 140 (5th Cir. 1996) (cert. denied) (affirming a JMOL based on plaintiffs' failure to exhaust administrative remedies because their claims were time-barred).

[2]   *Waymire v. Harris Cnty.*, 86 F.3d 424, 429 (5th Cir. 1996) (affirming judgment as a matter of law for employer who immediately reprimanded harasser and harassment stopped, even though employer waited three months for completion of investigation to "formally reprimand" employee and place letter in his permanent file).

[3]   *Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x. 379, 387 (5th Cir. 2008) (affirming judgment as a matter of law for Title VII discrimination claim).

[4]   *Wilson v. Delta State Univ.*, 143 F. App'x. 611, 612 (5th Cir. 2005) (affirming judgment as a matter of law for Title VII retaliation claim).

[5]   *Equal Emp. Opportunity Comm'n v. Bobrich Enters.*, No. 3:05-CV-1928-M, 2008 WL 11350053, at *5 (N.D. Tex. Jan. 8, 2008), *aff'd sub nom. E.E.O.C. v. Bobrich Enters.*, No. 08-10162, 2009 WL 577728 (5th Cir. Mar. 6, 2009).

[6]   Title VII sex discrimination claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* framework whereby Cheatham must first put forth a *prima facie* case of retaliation or discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) (*quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Cheatham meets that burden, STC must *articulate* a legitimate non-discriminatory reason for its actions, but the rebuttal burden is "exceedingly light" (*Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007)); *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988)), and is one of production, not persuasion.  *Id*. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Giles v. City of Dallas*, 539 F. App'x 537, 543 (5th Cir. 2013). Once STC meets its burden, Cheatham must establish that STC's stated reason is false and a pretext for discrimination. *Burdine*, 450 U.S. at 252-53.

adduce substantial evidence that: (1) she is a female; (2) was qualified for the position at issue (or for progression to the next grade level); (3) experienced an adverse employment action; and (4) a similarly situated male employee was treated more favorably. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).[7] Cheatham has failed to meet the third and fourth elements of the *prima facie* case at trial.

For the third element, Plaintiff has failed to demonstrate that she experienced an adverse employment action as required to establish a sex discrimination claim. As evidenced in trial, Plaintiff continued to draw her full salary until her employment ended in 2020. Her progress towards promotion was on time and consistent with STC's policies. Her career advancement was at least consistent with (if not better than) similar engineers with the same training, education and experience, and any delay in Cheatham's new-skill acquisition was simply collateral to the business downturn. As demonstrated throughout trial, the Alaska transfer was a lateral move (not a "demotion") and a rare career opportunity and was offered as a safety net/alternative to layoff. Many other D&M Field Engineers in the Permian were treated much less favorably and were laid off. This lateral move would have likely led to advancements in her career and possibly a raise in salary. Thus, Plaintiff has failed to show that she suffered an adverse employment action.

Additionally, Plaintiff has failed to prove the fourth element which requires "[t]he plaintiff and the employee [she] identifies as a comparator must be similarly situated in all relevant respects*." Id.* Importantly, Cheatham has failed to point to *any* comparator who received more favorable treatment than she. Indeed, numerous men were laid off (and not offered the Alaska job).

As illustrated throughout trial, during a worldwide oil and gas downturn, STC lacked work for many of its D&M Field Engineers in the Permian Basin—male and female—and eventually reduced headcount through layoffs. As this Court is aware, STC offered Cheatham several assignments in September, October, and November 2019, which she declined for various reasons, including extended personal leave to care for her grandmother, to recover from personal medical issues, and/or because

---

[7]     *See also Harris v. Sec'y, United States Dep't of the Army*, 119 F.3d 1313, 1320-1321 (8th Cir. 1997); *Cooper v. S. Co.*, 390 F.3d 695, 741-43 (11th Cir. 2004).

she had traveled so far outside her assigned area while on "Local Days Off" that she was not able to report to the job on a timely basis (in violation of STC policy).

Further, STC treated Cheatham *more* favorably than others. Although work was scarce in the Permian Basin, STC needed D&M engineers like Cheatham in its offshore operation in Alaska, and STC offered Cheatham the Alaska position, explaining that she would learn additional skills, which would, in turn, give her greater career opportunities in the future.   Meanwhile, other (male) engineers on the same list were later laid off for lack of work, as were those who did not even make the transfer list. Refusing to even *consider* the Alaska opportunity, Cheatham accepted a new job elsewhere, then voluntarily submitted her resignation on December 20, 2019, thanking STC for the opportunities she had experienced.[8]   Based on this trial evidence, Cheatham cannot establish a *prima facie* case of gender discrimination related to staffing on rigs, promotion, and constructive discharge. *See West v. City of Houston*, 960 F.3d 736, 740-41 (5th Cir. 2020) (affirming summary judgment where the plaintiff treated *more favorably* than the male co-employees she identified, who were not actually similarly situated).

In any event, the drop off in STC's work in the Permian Basin is a legitimate non-discriminatory reason for Cheatham's reduced rig assignments and for the *lateral* transfer offer. Cheatham has provided no evidence—much less substantial evidence—that STC engineered a global oil and gas downturn as a means of discriminating against her on account of sex. *See Williams v. Sterling Healthcare Serv's, Inc.*, 193 F. App'x.328, 330-31 (5th Cir. 2006) ("Accepting all these claims as true, Williams creates no issue of pretext . . . her job was terminated as part of a reduction in force, whether brought on by a downturn in business, or by the ongoing consolidation. . .").

Reviewing all evidence submitted to the jury, no reasonable jury could find that the Plaintiff suffered sex discrimination, and the court should enter a judgment as a matter of law for STC.

---

[8]      Cheatham wrote, in part: "I appreciate the opportunity to start my oilfield career with Schlumberger and grow with such a great team.  But to further my career, I will be taking the necessary step forward as I embark in new opportunities."

**B.    No reasonable jury would have sufficient evidence to find for Cheatham on her hostile work environment claim (Count Two).**

    **1.    Plaintiff has not proved a hostile work environment under Title VII.**

Plaintiff has failed to show throughout this trial that a reasonable jury could hold a legally sufficient evidentiary basis under Fifth Circuit jurisprudence to find that Defendant subjected her to sexual harassment. In order to succeed on her claim, Cheatham must establish that: (1) she is female; (2) was subject to unwelcome harassment; (3) based on her sex; (4) which affected a term, condition, or privilege of employment; and (5) STC knew or should have known about the harassment and failed to take prompt remedial action. *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432-33 (5th Cir. 2022). For harassment to affect a term, condition, or privilege of employment, it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 433. Title VII is not a civility code, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* Rather, the environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.*

Importantly, Cheatham worked in a variety of environments with different alleged bad actors—all of which changed approximately every two weeks as discussed throughout the trial. Because each wellsite was separate and independent from the others, each allegedly hostile environment must be evaluated separately from the others by the jury. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328-29 (5th Cir. 2009) (holding that removing employee from allegedly harassing work environment to a new supervisor cut off any liability for earlier harassment under the continuing violation doctrine, even when the employee later was placed in an environment with the same harasser who subjected her to similar harassment later). *See also Gray v. Garland*, No. 4:19-CV-00147, 2022 WL 1138259, at *5 (S.D. Tex. Apr. 18, 2022) (refusing to apply the "continuing violation" doctrine in part because alleged acts of harassment "involve[ed] no common individual."); *Lopez v.*

*Kempthorne*, 684 F. Supp. 2d 827, 884 (S.D. Tex. 2010) (rejecting application of the continuing violation doctrine where alleged harassment was based on separate and unrelated acts of different individuals).

The Fifth Circuit and Texas federal district courts have determined the following situations do not constitute a hostile work environment:

1. No hostile work environment where alleged harasser made a remark to the plaintiff about another employee's body; once slapped plaintiff on her behind with a newspaper; "grabbed or brushed" against the plaintiff's breasts and buttocks; once held her cheeks and tried to kiss her; asked plaintiff to come to the office so they could be alone together; once stood in the door of the bathroom while she was washing her hands. *Hockman v. Westward Commc'ns,* LLC, 407 F.3d 317, 328-29 (5th Cir. 2004);

2. No hostile work environment on a ship where over a minute-and-a-half the male employee initiated uncomfortable touching, followed the female employee through a narrow passageway, placing his pelvic region across her hips and buttocks, and also placed his hand on her stomach because "[t]he type of non-consensual physical touching alleged by [the plaintiff] was held to be actionable under Title VII only in cases where it was chronic and frequent." *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x. 825, 828 (5th Cir. 2009).

3. No hostile work environment when the conduct consisted of (1) unwanted touching of the arm; (2) comments that the plaintiff's elbows were the same color as her nipples (3) comments that the plaintiff had big thighs while simulating looking under her dress; (4) standing over the plaintiff's desk several times and attempting to look down her shirt; and (5) a coworker patting his lap and remarking "here's your seat." *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871 (5th Cir. 1999);

4. No hostile work environment where a male supervisor had "sex talk," requested dates with the female plaintiff, offered his telephone number,

and allegedly touched plaintiff's buttocks and made suggestive comments. *Gibson v. Potter*, 264 F. App'x 397 (5th Cir. 2008);

5. Although plaintiff was subjected to an uncomfortable environment when she was leered at, touched in sexually inappropriate and unwelcome ways, and actively intimidated after she complained of her actions, she failed to establish that "the actions destroyed her ability to succeed in the workplace environment." *Barnett v. Boeing Co.*, 306 F. App'x 875, 880 (5th Cir. 2009);

6. No hostile work environment where the male employee "made unwelcome sexual advances toward her including at least three requests to go out for drinks after work, grabbed Plaintiff by the waist and tried to pull her into his lap, was flirtatious in the way he addressed Plaintiff, referred to other male employees as Plaintiff's boyfriends, told Plaintiff if she took care of him he would take care of her, told inmates personal things about Plaintiff, would follow Plaintiff around everywhere, was very touchy, would curse and grab Plaintiff, and told Plaintiff women had no place working in corrections." *Giddens v. Cmty. Educ. Ctrs., Inc.*, MO-11-CV-010, 2012 WL 12884371, at *8 (W.D. Tex. Sept. 12, 2012); and,

7. Two incidents of inappropriate touching in a sexual manner, which were boorish and offensive, did not create a hostile work environment. *Phillips v. Caris Life Scis.*, Inc., 3:14-CV-3042-L, 2016 WL 10950679, at *8 (N.D. Tex. July 22, 2016).

As evidenced throughout this trial, Plaintiff has not been subjected to the type of behavior that the Fifth Circuit and Texas federal district courts find to meet the level of a hostile work environment. Reviewing all evidence submitted to the jury, no reasonable jury could find that the alleged behavior suffered by Cheatham meets the high standard for severe and pervasive behavior required to make a sexual harassment claim. Therefore, by the Plaintiff's own admissions, evidence, and testimony these harassment claims must be dismissed, and the court should enter a judgment as a matter of law for STC.

### 2.   When STC had actual or constructive notice of sexually harassing conduct, it took appropriate corrective action.

For co-employee harassment, the Plaintiff must show that the STC knew or should have known of the harassment and failed to take prompt remedial action for any liability to attach to STC. *Collins v. Noble Drilling (U.S.) LLC*, CV H-16-2293, 2018 WL 7050254, at *3 (S.D. Tex. Dec. 19, 2018), *report and recommendation adopted*, 2019 WL 220306 (Jan. 15, 2019).

An employee can show actual notice by proving that she complained about the perceived harassment to higher management or to someone who has the power to take action to remedy the problem. *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999) (citations omitted). "There is no actual knowledge until someone 'with authority to address the problem' is notified." *Blair v. Brookshire Bros., Inc.*, 9:18-CV-00111-RC, 2019 WL 1119373, at *5 (E.D. Tex. Feb. 7, 2019).[9]

An "employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem.  The plaintiff bears the burden of showing that his employer failed to take effective action." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 405 (5th Cir. 2021).

The Fifth Circuit has recently explained in detail exactly what qualifies as effective action in a case where a plaintiff alleged that her co-workers used racial epithets and made racially charged comments in the office and she was called the N-word at a contentious June 2019 meeting.  *Hudson v. Lincare, Inc.*, 58 F.4th 222, 230 (5th Cir. 2023).   After the plaintiff in *Hudson* reported the alleged racial harassment to HR, HR performed an investigation, and the two alleged harassers were given final written warnings and told that any further instance of racial slurs

---

[9]     The standard for constructive notice is that "through the exercise of reasonable care it should have known what was going on but failed to address it. If the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes, it is unreasonable not to have done so, and there is constructive notice." *Blair v. Brookshire Bros., Inc.*, 9:18-CV-00111-RC, 2019 WL 1119373, at *6 (E.D. Tex. Feb. 7, 2019) (citing *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999)).  Here, as Plaintiff only complained about sexual harassment around non-supervisors in remote field locations, she cannot claim constructive notice to the office-based management. Nor, to Defendant's knowledge, has she claimed as much.

would result in termination.  *Id.*  After the employer took those actions, those two employees never harassed the plaintiff again.  *Id.*  The Fifth Circuit held this action showed that the employer taking "took the allegations seriously, [ ] conducted prompt and thorough investigations, and [ ] immediately implemented remedial and disciplinary measures based on the results of such investigations." *Id.*  Additionally, the Fifth Circuit held it was "beyond dispute that such action was reasonably calculated to end the harassment." *Id.*  The employer faced no liability precisely because the alleged harasser's actions ended after the employer's actions.

Here, the one time after Plaintiff formally complained about sexual harassment, she never had to work with the alleged harasser (Fusilier) again and was never harassed by him again.  STC took effective action—and handed out more severe discipline than the employer in *Hudson* did: Fusilier was given a final written warning, separated from Plaintiff, suspended for two weeks without pay, and has not had a complaint made against him ever since.

The only other allegation of sexual harassment that she complained about to STC was to Ms. Ruy about someone suggesting she had performed sexual favors to get a position.[10]  Even if this allegation of inappropriate behavior was prohibited sexual harassment under Title VII, she was no longer working with the individual when she complained and only worked with another individual who supposedly whispered about the joke for a very short period of time during the next nine months of her employment. These facts do not equate to employer liability under Title VII.

Otherwise, STC neither knew or should have know about the stray, isolated remarks Cheatham testified to at trial. Cheatham admittedly did not report these comments, even though STC implemented a complaint procedure, and Cheatham knew how to use it.  Under these circumstances, courts consistently recognize that an employer's effective anti-harassment policy precludes liability based on constructive notice:

> Indeed, "an employer is insulated from liability under Title VII for a
> hostile environment sexual harassment claim premised on constructive

---

[10]    Plaintiff does not allege that she was sexually harassed in August and September of 2019, just discriminated and retaliated against. Regardless, after she called Lasher about the two alleged incidents of discrimination and he told her he would take care of it, she admitted that neither of the two men ever said something inappropriate to her again.

> knowledge of the harassment <u>when the employer has adopted an anti-discrimination policy that is comprehensive</u>, well-known to employees, vigorously enforced, and provides alternate avenues of redress."

*Banks v. City of Atlanta, Ga.*, No. 21-14122, 2022 WL 4587869, at \*2 (11th Cir. Sept. 30, 2022) (quoting *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997) ("*Farley*")) (emphasis added).

> We conclude that where, as here, an effective policy against sexual harassment is in place, the employer as a matter of law has satisfied its duty to inform itself about its employees' behavior. In other words, we agree with the Eleventh Circuit that "<u>once a company has developed and promulgated an effective and comprehensive anti-sexual harassment policy</u>, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy, it has fulfilled its obligation to make reasonably diligent efforts to 'know what is going on' within the company."

*Adams v. O'Reilly Auto., Inc.*, 538 F.3d 926, 931-32 (8th Cir. 2008) (quoting *Farley*, 115 F.3d at 1554) (emphasis added).  Accordingly, STC is entitled to judgment as a matter of law on Plaintiff's harassment claims.

> **3.**   **Plaintiff's harassment claims were not administratively exhausted and are time barred under Fifth Circuit precedent.**

"[A] plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission 180 days of the discriminatory act. If, as here, the plaintiff instead files with the corresponding state agency, the limitations period extends to 300 days." *Abrams v. Am. Airlines, Inc.*, 302 F. App'x. 242, 243 (5th Cir. 2008) (citing 42 U.S.C. § 2000e-5(e)(1)). Cheatham filed her EEOC charge on August 27, 2020. Thus, any claims before November 1, 2019 (300 days prior), are time barred, unless Cheatham can be saved by the continuing violation doctrine, or single filing rule (which she cannot). *See Abrams*, 302 F. App'x. at 243; *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x. 281, 289 (5th Cir. 2008); *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 494 (5th Cir. 2001).

The Order denying STC's motion for summary judgment stated that the Court would let the Jury determine whether Cheatham's allegations about gender discrimination, retaliation, and constructive discharge occurred within the 300-day

limit after the EEOC charge.  (Doc. 132, at p. 9.)  The Court wrote that "while the plaintiff may not be permitted to submit every claim that she asserts to a jury due to the statute of limitations, she is not barred from presenting all the evidence that supports her submitted claim(s)." *Id.* The EEOC charge was submitted on Cheatham filed her EEOC charge on August 27, 2020.  300 days before that was November 1, 2019, well after any of her alleged discrimination or harassment occurred.  Therefore, now that the Plaintiff has submitted all of her claims, those allegations must be dismissed.

> ### a.    The continuing violation doctrine does not apply to Cheatham's claims.

To use the continuing violation doctrine Cheatham needed to show "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Reed v. Brady Trucking, Inc.*, No. CV H-18-4437, 2019 WL 1244100, at *5 (S.D. Tex. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002)). "[T]he continuing violation doctrine does not automatically attach;" rather, it is only applied in narrow cases because "within [the continuing violation doctrine] are the seeds of the destruction of statutes of limitation in Title VII cases." *Gray v. Garland*, No. 4:19-CV-00147, 2022 WL 1138259, at *5 (S.D. Tex. Apr. 18, 2022) (quoting *Merriman v. Potter*, 251 F. App'x. 960, 965 (5th Cir. 2007) and *Tillman v. So. Wood Preserving of Hattiesburg Inc.*, 377 F. App'x. 346, 349 (5th Cir. 2010)).

In *Gray*, the Southern District of Texas held that a plaintiff could not use the continuing violation doctrine because the allegations were too sporadic and *did not involve a common individual*. 2022 WL 1138259, at *5. Gray's sexual harassment claims were focused on undermining of authority, pregnancy-related incidents by various supervisors and colleagues, concerns transferring calls and speaking in a rude tone by two people. *Id.* The court reasoned that the time barred issues—undermining of authority and pregnancy-related incidents—were discrete and disconnected from the time permitted issues, namely, concerns transferring calls and speaking in a rude voice. *Id.* These issues were disconnected since they involved a wide-ranging variety of complaints and did not feature a common supervisor. *Id.*

In this case, after September 10, 2019, Cheatham primarily interacted with one STC employee, Workforce Coordinator Jermaine Allen.  Cheatham does not allege any harassment from Allen. On or after November 1, 2019, Cheatham never worked at any STC affiliated jobsite, never interacted with her former co-workers, supervisors, managers, operator employees, rig company employees or other customers or contractors or anyone else who engaged in alleged offensive conduct. Thus, there could be no post-limitations period incidences involving a common supervisor. As such, even if Cheatham suffered harassment after leaving her last well site in September, there are "no common individuals," which bars Cheatham's use of the continuing violation doctrine. *See Gray*, 2022 WL 1138259, at *5 (declining to apply the continuing violation doctrine in part because alleged acts of harassment "involve[ed] no common individual."); *Whitworth v. Baker Hughes, Inc.*, No. 1:10-CV-203, 2011 WL 13196257, at *14 (E.D. Tex. 2011) (declining to apply the continuing violation doctrine despite the fact that "the purported [harassing] conduct was both frequent and similar" because the plaintiff "was allegedly harassed by different individuals at distinct times."); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 884 (S.D. Tex. 2010) (declining to apply the continuing violation doctrine when the alleged harassment was based on separate and unrelated acts of different individuals); *Keys v. Wash. Metro. Area Transit Auth.*, 577 F. Supp. 2d 283, 287 (D.D.C. 2008) (finding that the plaintiff failed to show an adequate connection between conduct perpetrated by three named managers and various other actions spanning twenty years, sixteen supervisors, and several different work sites); *Equal Emp't Opportunity Comm'n v. CRST Van Expedited, Inc.*, 615 F. Supp. 2d 867, 881-82 (N.D. Iowa 2009) (holding that harassment by different persons at different times and locations did not constitute a continuing violation).

>    **b.    The single filing rule / piggybacking doctrine does not apply to Cheatham's claims.**

The single filing rule, also known as the piggybacking doctrine, "is a carefully limited exception that allows parties to opt-in to a suit filed by any similarly situated plaintiff under certain conditions." *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006). This highly limited exception is only available to plaintiffs who did not file an EEOC charge themselves. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207,

1223 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Courts within the Fifth, Eighth, and Eleventh Circuits have been clear in holding that once an EEOC charge has been filed, the plaintiff "is bound by the parameters of his own EEOC charge, and cannot subsequently utilize the single filing rule to avoid the statute of limitations." *Mitchell v. United Parcel Serv., Inc.*, No. CIV.A. 3:04-CV-1403, 2005 WL 762253, at *3 (N.D. Tex. Apr. 1, 2005); *Anderson v. Unisys Corp.*, 47 F.3d 302, 209 (8th Cir. 1995), *cert. denied*, 516 U.S. 913 (1995); *Gitliz v. Compagnie Nationale Air France*, 129 F.3d 554, 558 (11th Cir. 1997); *accord Mooney*, 54 F.3d at 1223.

This case closely mirrors *Mooney*. *Mooney* featured several trial plaintiffs who all filed EEOC charges, but none of the trial plaintiff's charges included an *ex gratia* claim. 54 F.3d at 1223. One plaintiff, who was not considered a trial plaintiff, did include an *ex gratia* claim in his EEOC charge. *Id.* All the trial plaintiffs argued that the single filing rule allowed them to use the *ex gratia* claim contained in the single EEOC charge. *Id.* The court reasoned that the trial plaintiffs all met the conditions for using the single filing rule. *Id.* However, because each trial plaintiff filed an EEOC charge themselves, the court held that the trial plaintiffs could not use the single filling rule, reasoning:

> Once the charge is filed, unless it is permissibly modified, the EEOC and the employer are entitled to rely on the allegations contained therein. To allow a plaintiff to file an EEOC charge, file suit upon that charge and then, at the eleventh hour, when the statute of limitations has run, to amend his complaint in reliance on the charge of another belies the policies behind the single filing rule and controverts congressional intent. The employee, by failing to assert a particular allegation in his charge, has necessarily excluded himself from the class of persons purportedly covered by the charge of another.

*Id.* at 1123-24.

In this case, Cheatham is attempting to use Saidman's EEOC charge to file suit "at the eleventh hour, when the statute of limitations has run." *Id.* As the Fifth Circuit explained, this "belies the policies behind the single filing rule and controverts congressional intent." *Id.* As in *Mooney*, this Court should require the plaintiff adhere to the statute of limitations. Cheatham must rely on her own EEOC charge and not Saidman's.

As the jury has heard, Cheatham filed her own EEOC charge. This fact alone prohibits her from using the single filing rule, as outlined in *Mooney*, *Mitchell*, *Anderson*, and *Gitliz*. *See Mooney*, 54 F.3d at 1223; *Mitchell,* 2005 WL 762253 at *3; *Anderson*, 47 F.3d at 209; and *Gitliz*, 129 F.3d at 558. Thus, no reasonable jury or court could find that Cheatham did not file an EEOC charge of her own or that she may use the single filing rule. Indeed, Cheatham previously represented to the Court after filing suit prior receiving a right to sue from the EEOC, that when she received the right-to-sue it would "cure any defect that exists." (Doc. 30, at p. 26.)  She only indicated then that she was piggybacking on Saidman's charge to the extent she had not exhausted her own administrative remedies.  *Id.*

However, if the court still finds that Cheatham may invoke the single filing rule, she must meet three conditions:

> First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. [Third], a prerequisite—implicit to be sure—for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.

*Price*, 459 F.3d at 599; *Bettcher*, 262 F.3d at 495. STC submits that none of the conditions of the single filing rule have been satisfied. *See Price*, 459 F.3d at 598-99.

### i.    First Condition

In order to be "similarly situated," the two people must be in situations that are "nearly identical." *Jones v. City of Monroe*, No. 21-30735, 2022 WL 2527669, at *3 (5th Cir. July 7, 2022); *accord Belton v. GEO Grp., Inc.*, No. 21-30144, 2021 WL 5832953, at *5 (5th Cir. Dec. 8, 2021) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)); *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019). Here, Cheatham must show that she is "nearly identical" to Saidman. *See Jones*, 2022 WL 2527669, at *3; *Belton*, 2021 WL 5832953, at *5 (quoting *Lee*, 574 F.3d at 260); *West*, 960 F.3d at 740; *Garcia*, 938 F.3d at 244.

In *Zeng v. Texas Tech University Health Science Center at El Paso*, the Fifth Circuit held that a group of comparators were not similarly situated. 836 F. App'x. 203, 210 (5th Cir. 2020). The court said:

> The only discernable commonalities in the group is that they worked for Texas Tech, were somewhere below [defendant] Lange in the chain-of-command, violated some rule at some point during their employment, and were not fired for that violation. Zeng doesn't assert that they shared "the same job or responsibilities" or had "comparable violation histories." Therefore, we agree with the district court that they were not **similarly situated** to [plaintiff] Zeng.

*Id.*

Cheatham's claim of being similarly situated to Saidman has the same deficits as the comparators in *Zeng*. Saidman was a Measurement While Drilling Field Engineer, whereas Cheatham was a Field Engineer Trainee, Senior Field Engineer, and Directional Driller. The job responsibilities of the two were not the same—the Court has heard extensive testimony about the differences between an MWD and a DX trainee.[11] Cheatham does not even allege that the two had comparable violation histories. Cheatham and Saidman thus lack the commonality necessary to show that they are similarly situated. *See Zeng*, 836 Fed. App'x. at 210.

In *Mooney*, the Fifth Circuit rejected a class, holding that there were not enough similarities. 54 F.3d at 1215-16. The individuals in *Mooney* worked in different departments, in different locations, held distinct job titles, had worked for the company for varying number of years, were different ages when hired, were different ages when they stopped working for the company, left the company or were terminated in different years and under different supervisors, and they left or were terminated for various reasons. *Id.* This case mirrors *Mooney* given how Cheatham and Saidman were situated:

| Cheatham | Saidman |
|---|---|
| • Started in 2017 | • Started in 2016 |
| • Was 31 when she started | • Was 22 when she started |
| • Final position was a DX Trainee | • Final position was an MWD |
| • Resigned during a global slowdown in oil production | • Employment was terminated for cause for a safety issue |

---

[11]     The duties vary so greatly that MWD position was classified as FLSA non-exempt, while the DX Trainee position was classified as FLSA exempt.

| | |
|---|---|
| • No alleged physical sexual harassment | • Alleged same-sex physical sexual harassment |
| • Last day working was January 2, 2020 | • Last day working was May 11, 2017 |
| • Was 34 on her last day | • Was 23 on her last day |
| • Complained she was understaffed | • Never complained about staffing issues |
| • Was run-off of at least three rigs | • Never was run-off of a rig |

As in *Mooney*, **Cheatham and Saidman never worked for STC at the same time**, have different lengths of employment, ages, job titles, ranks, departure reasons, alleged harassers, and supervisors.

By claiming Cheatham is similarly situated to Saidman, she is claiming that all women at STC are similarly situated to each other merely because they work for the same employer and are women. As such, Cheatham and Saidman were and are not similarly situated.[12] *See generally Lee*, 574 F.3d at 259-60 ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated.") (emphasis added); *Garcia*, 938 F.3d at 244 ("Employees are similarly situated when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Quite obviously, the mere claim by employees of the same company that they have suffered

---

[12]     Cheatham and Saidman are so dissimilar that the Court could have granted a Rule 20 motion to sever the trials (or Rule 42 motion) if Saidman had not voluntarily dismissed her claims. *See O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 424 (E.D. La. 2016) (severing two plaintiffs' complaints who had different job titles, different work histories, who experienced different episodes of alleged discrimination, harassment, and retaliation by different supervisors on dates that were months apart because "these employment decisions hardly constitute a single action on the part of the defendant" and the employees' claims will require "different witnesses and evidence for each.").

a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor."); *Saketkoo v. Admin. of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) ([Plaintiff] failed to present evidence that any male physicians shared her research responsibilities, section assignments, historical performances, or other attributes that would render them similarly situated."); *Mooney*, 54 F.3d at 1215-16; *Zeng*, 836 F. App'x. at 210.

### ii.    Second Condition

The second condition for piggybacking to apply requires that Saidman's EEOC charge give "notice of the collective or class-wide nature of the charge." *Price*, 459 F.3d at 598-99; *Bettcher*, 262 F.3d at 495. Saidman's EEOC Charge only references alleged harassment directed at herself. The charge does not reference any woman other than Saidman. Thus, this EEOC Charge does not give "notice of the collective or class-wide nature of the charge." *See Price*, 459 F.3d at 598-99; *Bettcher*, 262 F.3d at 495.

In accordance with established law, Saidman's second EEOC charge is not an amendment since it does not "relate back to the original charge." 42 U.S.C. § 2000e-5(e)(1); *Thibodeaux v. Tex. Dep't of Crim. Just.*, 660  F. App'x 286, 289 (5th Cir. 2016); *accord Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878-79 (5th Cir. 2003) ("Generally, amendments that raise a new legal theory do not "relate back" to an original charge of discrimination."); *EEOC v. Miss. Coll.*, 626 F.2d 477, 483-84 (5th Cir. 1980) ("The issue of racial discrimination did not arise until [plaintiff] filed the amended charge. Because her allegations of racial discrimination do not relate to or grow out of the allegations of sex discrimination advanced in the original charge, that aspect of the amended charge does not relate back to the time of filing of her original charge"); *Carter v. Target Corp.*, 541 F. App'x. 413, 419 (5th Cir. 2013) ("[The amended charge] presents an entirely new legal theory because Carter alleges for the first time that Target *racially* discriminated against her. Carter neither mentioned race nor checked the "race" discrimination box on her original Charge 43 filing. Carter's racial discrimination claim does not relate back to Charge 43 and is time barred.) Because Saidman's second charge introduced for the first time the

theory of a class and a class action, the second charge does not relate back to or grow from the original charge. *See, e.g.*, *Thibodeaux*, 660 F. App'x at 289. Based on this, STC would *only* have notice from the second EEOC charge which was filed over 400 days since Saidman was last employed by STC. Even if Cheatham could relate back to Saidman's second EEOC Charge (which she cannot), Saidman's second EEOC charge was filed more than 300 days after any harassment Saidman alleged, and therefore is untimely. *See* 42 U.S.C. § 2000e5; *Doe v. Univ. of Texas M.D. Anderson Cancer Ctr.*, No. 4:21-CV-1356, 2023 WL 1111832, at *6 (S.D. Tex. Jan. 30, 2023). Cheatham thus does not meet the second condition necessary to use the single filing rule. *See Price*, 459 F.3d at 598-99; *Bettcher*, 262 F.3d at 495.

### iii.   Third Condition

The third condition requires "[Saidman,] who filed the EEOC charge[,] must actually file a suit <u>that [Cheatham] may join.</u>" *See Price*, 459 F.3d at 598-99; *Bettcher*, 262 F.3d at 495. Saidman has dismissed all her claims with prejudice and therefore does not have a suit in which Cheatham may join. As such, Cheatham also cannot meet the third condition.

Having failed all three conditions Cheatham cannot invoke the single filing rule. *Price*, 459 F.3d at 598-99; *Bettcher*, 262 F.3d at 495.

### c.   Cheatham's claims are time barred.

Cheatham's harassment claim and any events occurring before November 1, 2019, have "no present legal consequences", as she is not able to use the continuing violation doctrine or single filing rule. *See United Airlines, Inc. v. Henderson*, 431 U.S. 553, 558 (1977).

Cheatham's last day working for STC was September 10, 2019. It is undisputed that after this date, she did not work for STC in the field, at a well site, at any of STC's locations, nor any of STC's client locations. Thus, even if an instance of sexual harassment occurred on September 10, 2019, it still would not fall within the statute of limitations as it occurred 52 days before November 1, 2019. *See generally Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009) (holding that a plaintiff may bring a claim for discrimination under Title VII only if she has filed a claim with the EEOC within 180 days of the alleged unlawful act, or within 300 days if the plaintiff first filed a complaint with a state or local agency); *Lucenio*

*v. Houston Indep. Sch. Dist.*, No. 4:21-CV-00650, 2022 WL 658838, at *10-11 (S.D. Tex. Mar. 4, 2022) (dismissing claims arising from actions in November 2018 as time barred when the EEOC charge was filed on February 26, 2019); *Holden v. Ill. Tool Works, Inc.*, No. CIV.A. H-06-2981, 2007 WL 4570181, at *6 (S.D. Tex. Dec. 26, 2007) (holding that claims of sexual harassment were time barred because the 300 day window ended 285 days after the plaintiff was terminated.); *Univ. of Texas*, 2023 WL 1111832, at *6 (dismissing claims that fell outside of the 300-day EEOC window as time barred.).

On or after September 10, 2019, Cheatham did not work at any STC affiliated jobsite, never interacted with her former co-workers, supervisors, managers, operator employees, rig company employees or other customers or contractors or anyone else who engaged in alleged offensive conduct. Thus, no harassment claims occurred within 300 days of Cheatham's EEOC Charge being filed (or since November 1, 2019.)

## C.   No reasonable jury would have sufficient evidence to find for Cheatham on her retaliation claim (Count Three).

A *prima facie* case of retaliation requires substantial evidence that (1) Cheatham engaged in Title VII protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Plaintiff has failed to prove throughout this trial that a causal link existed between her protected activity and any alleged adverse action (which Plaintiff has also failed to prove as demonstrated above).

As evidenced in trial, it is undisputed that the individuals who made the scheduling and transfer decisions (Lasher, Allen, van Vliet) did not know that Cheatham had complained of harassment or discrimination. Since the decision makers did not know Cheatham had made a protected complaint, she cannot establish a causal connection between any protected activity and any alleged adverse employment action, and therefore cannot make out a *prima facie* case. *St. John v. NCI Bldg. Sys., Inc.*, 537 F. Supp. 2d 848, 865-66 (S.D. Tex. 2008), *aff'd sub nom. St. John v. Sirius Sols.*, LLLP, 299 F. App'x 308 (5th Cir. 2008) ("To satisfy the "causal nexus" element at the prima facie stage St. John must demonstrate that the ultimate

decisionmaker had knowledge of his protected activity."); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (granting the employer summary judgment when employee could not show a causal connection between discrimination complaint and any action.).   Moreover, STC had a legitimate non-discriminatory reason for its actions, and Cheatham has no evidence that STC's reasons were a pretext for intentional retaliation.

Reviewing all evidence submitted to the jury, no reasonable jury could find that the Defendant retaliated against Plaintiff when she complained of harassment and discrimination.  Indeed, she would have been part of a lay off (based on her tool competency and her performance appraisals from 2017 and 2018) except that she had filed a complaint and the compliance team had removed her from the lay off list because of her complaint.  Instead, a male engineer replaced her on the lay-off list and lost his job.  This is not gender discrimination or retaliation.

Therefore, by the Plaintiff's own admissions, evidence, and testimony these harassment claims must be dismissed, and the court should enter a judgment as a matter of law for STC.

### D.   No reasonable jury would have sufficient evidence to find for Cheatham on her constructive discharge claim (Count Four).

Cheatham alleged that her ***voluntary resignation*** was a constructive discharge because STC refused to staff her on rigs, pressured her to accept a demotion, permitted the disclosure of her 2019 discrimination complaint, made it impossible for her to obtain a promotion, allowed sexual harassment and gender discrimination to continue unchecked, and retaliated against her for complaints of harassment and discrimination. FAC at ¶ 219. While her resignation occurred within the limitations period, her discharge claim is mostly based on time-barred claims; none are supported by substantial evidence.

### 1.   Cheatham's constructive discharge claim is partly based on time barred claims.

As discussed *supra*, Cheatham's claims of sexual harassment and gender discrimination are largely time-barred. She has presented no evidence supporting her hearsay-based speculation that STC leaked her September 2019 discrimination

complaint.  Although Cheatham contended that "consistent sexual harassment" led to her constructive discharge, she had not in fact been at work and therefore had not actually been subjected to any harassing work conditions for **nearly four months** at the time of her resignation. FAC at ¶ 133-134; *see also Perret*, 770 F.3d at 339 ("Indeed, [Plaintiff] was on medical leave for the two months prior to his resignation, making it difficult to find that he was subjected to 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'").  She did not allege any harassing conduct within that period of time. Moreover, as set out *supra*, none of the matters Cheatham alleges constitute an actionable hostile work environment.

### 2.         Cheatham lacks evidence of constructive discharge.

The Fifth Circuit evaluates claims of constructive discharge by asking "whether conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336 (5th Cir. 2014). Courts consider the following factors: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not." *Id.* But the determination whether a "reasonable employee" would "feel forced to resign is case-and-fact specific." *Id.* Cheatham did not put forward evidence that STC acted wrongfully regarding her promotion progress, or its staffing decisions, the lateral transfer offer, or that STC retaliated against her for complaints of harassment and discrimination.

Cheatham was not blacklisted—a single client requested for her to be removed from its rigs in a single region because of a safety violation *she admitted to*.  After that, STC made numerous attempts to staff her, which fell through for a variety of reasons, none of which had anything to do with sexual harassment, discrimination, or retaliation.  Second, Cheatham cannot show that she was demoted.  Even if the Alaska offer were a demotion (to the contrary, the Court has heard extensive testimony about how it was a great career opportunity), she never accepted it.  She was still employed as a G9 DX on the verge of a promotion (despite an economic downturn) when she resigned.  STC was still working on options for her.  She was

just impatient, applied for another job, and then resigned after she was offered the other job—this is not a constructive discharge.

Further, none of Cheatham's allegations describe an environment that would substantiate a constructive discharge claim. *See, e.g.*, *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 298-99 (5th Cir. 1994) (failing to staff employees because an economic downturn led to a scarcity of work, such that failure to staff could not be construed as a constructive discharge.); *Boudreaux v. Stranco Field Servs., LLC*, Civ. No. 18-5569, 2019 WL 2142045, at *10-11 (E.D. La. 2019) (finding no constructive discharge after employee's salary pay was converted to hourly.);  *Webb v. Barnes Group Inc.*, No. CA 3:02-2716, 2004 WL 1749619, at *6 (N.D. Tex. Aug. 3, 2004) (finding no constructive discharge when "[i]t is unclear whether her job responsibilities would be significantly reduced," and "[s]he would not have been reassigned to menial or degrading work."); *Grant v. Oceans Healthcare LLC*, Civ. No. 17-00642, 2019 WL 6702421, at *4, *12 (M.D. La. 2019). (finding that when employment status was reduced from full-time because of a downturn in business and a reduction-in-force, the employee was not constructively discharged).

Cheatham has not adduced substantial admissible evidence that STC's inability to accommodate her professional aspirations arose from any reason *other than* a global economic downturn in the oil and gas industry.  No reasonable person would have taken global events personally or felt compelled to resign.

###   E.   Punitive damages are not available under the U.S. Supreme Court case *Kolstad v. American Dental Ass'n*.[13]

Title VII allows punitive damages when an employer acts with malice or reckless indifference to an employee's rights, 42 U.S.C. §1981a(b)(1), but **only** when a managerial employee acts in the scope of employment. *Deffenaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). As is clear from the testimony, none of the individuals involved in Cheatham's claims had the power to promote/demote, discipline, or terminate her employment, and so punitive damages are not available. *See Williams v. Trader Pub*. Co., 218 F.3d 481, 487 (5th Cir. 2000) (holding no managerial employees participated in the alleged discrimination when

---

[13]     *See* STC's Answer to the First Amended Complaint. (Doc. 33, at p. 23-24).

the actors "had no authority to terminate her.").

Even if Cheatham's complaints involved managers, STC is not vicariously liable for punitive damages for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545-56 (1999). STC has a robust EEO Program and a separate, equally robust Harassment-Free Workplace Program, which include a comprehensive, readily available policy, with a user-friendly complaint procedure, onboarding and periodic training, a thorough complaint investigation process, and a wide array of Diversity and Inclusion initiatives.  There can be no question from the testimony that STC made good faith efforts into anti-harassment training, its policies against discrimination and harassment, and its rigorous complaint-response and investigation process.  *See Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 477 (5th Cir. 2002) ("In the present case, Bally's made out the 'good faith' defense to punitive damages. . . Bally's good faith effort to prevent sexual harassment in the workplace, as is evidenced by the fact that Bally's had a well-publicized policy forbidding sexual harassment, gave training on sexual harassment to new employees, established a grievance procedure or sexual harassment complaints, and initiated an investigation of the plaintiff's complaints.  These actions evidence a good faith effort on the part of Bally's to prevent and punish sexual harassment. As a result, an instruction on punitive damages was not required.") (emphasis added).

The only allegation of sexual harassment in this case that was reported to STC was investigated thoroughly, the alleged harasser severely punished with a two-week unpaid suspension and a final written warning.  After the Plaintiff reported Mr. Fusilier's alleged harassment, she never worked with him again and he never had another complaint raised against him—STC's processes and procedures worked.

Plaintiff can argue that the investigation was imperfect, and she may disagree with the discipline that came out of her complaint, but no fact-finding system or disciplinary system is perfect and that is not the standard STC's practices and policies and implementation of the same must be measured against.

Therefore, Cheatham is not entitled to punitive damages, and STC is entitled

to judgment as a matter of law on its Thirty-Eighth Affirmative Defense.[14]

## IV.   CONCLUSION

Reviewing all evidence submitted to the jury, no reasonable jury could find that Cheatham has met the high standard the Fifth Circuit has set for hostile work environment, the even higher standard for constructive discharge. Additionally, she has produced no evidence showing that she was retaliated against nor that any adverse action was taken against her because of her gender.

Therefore, by the Plaintiff's own admissions, evidence, and testimony, the Court should enter a judgment as a matter of law for STC.

**/s/ Cecily L. Kaffer**
Cecily L. Kaffer (Texas Bar No. 24118206;
S.D. Tex. Bar No. 2217940)
THE KULLMAN FIRM, PLC
63 S. Royal Street
Suite 1100, Riverview Plaza
Mobile, Alabama 36602
Telephone: (251) 433-1811
Facsimile: (251) 433-1230
Email: clk@kullmanlaw.com

Samuel Zurik III (Texas Bar No. 24044397;
S.D. Texas Bar No. 557386)
MaryJo L. Roberts (Texas Bar No. 24089105;
S.D. Tex. Bar No. 2220397)
Benjamin P. Kahn (*pro hac vice*)
Benjamin Landau-Beispiel (*pro hac vice*)
THE KULLMAN FIRM, PLC
1600 Poydras St., Suite 1600
New Orleans, Louisiana
Telephone: (504) 524-4162
Facsimile: (504) 596-4114
Email: sz@kullmanlaw.com

---

[14]   *See Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 477 (5th Cir. 2002) ("In the present case, Bally's made out the 'good faith' defense to punitive damages. . . Bally's good faith effort to prevent sexual harassment in the workplace, as is evidenced by the fact that Bally's had a well-publicized policy forbidding sexual harassment, gave training on sexual harassment to new employees, established a grievance procedure or sexual harassment complaints, and initiated an investigation of the plaintiff's complaints.  These actions evidence a good faith effort on the part of Bally's to prevent and punish sexual harassment. As a result, an instruction on punitive damages was not required.").

Email: mlr@kullmanlaw.com
Email: bpk@kullmanlaw.com
Email: blb@kullmanlaw.com

Setara C. Ozan (*pro hac vice*)
THE KULLMAN FIRM, PLC
600 University Park Place, Suite 340
Birmingham, Alabama 35209
Telephone: (205) 871-5858
Facsimile: (205) 871-5874
Email: sco@kullmanlaw.com

**COUNSEL FOR DEFENDANT,**
**SCHLUMBERGER TECHNOLOGY**
**CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 25th day of July 2023, a copy of the foregoing has been sent via electronic mail via the Court's CM/ECF system to counsel of record.

*<u>/s/ Cecily L. Kaffer</u>*
CECILY L. KAFFER